**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| CUTTING EDGE VISION, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:22-CV-00285-ADA |
| | § | |
| TCL TECHNOLOGY GROUP | § | JURY TRIAL DEMANDED |
| CORPORATION, TCL ELECTRONICS | § | |
| HOLDINGS LIMITED, TCL | § | |
| COMMUNICATION TECHNOLOGY | § | |
| HOLDINGS LIMITED, and TCL | § | |
| COMMUNICATION LIMITED | § | |
| | | |
| Defendants. | | |

**<u>DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     PATENTS-IN-SUIT ....................................................................................................... 1

III.    LEGAL STANDARD ..................................................................................................... 2

IV.     DISPUTED CONSTRUCTIONS ................................................................................. 3

        A.      "controller" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ........................ 3

                1.      Section 112 ¶6 Applies to the "Controller" Limitation ........................... 4

                2.      The Specification Fails to Disclose Corresponding Structure to Perform
                        the Claimed Functions ............................................................................. 6

        B.      "instructs" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) .......................... 7

        C.      "the device" ('761 Patent – Claim 1) ................................................................. 8

        D.      "periods without potential cellular network access fees" ('761 Patent – Claim 1)
                ...................................................................................................................... 10

        E.      "upload … pictures …" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ....... 12

        F.      "indication from the local memory" ('761 Patent – Claim 1) ............................ 13

        G.      "group of … pictures" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ......... 14

        H.      "periods without potentially increased cellular network access fees" ('472 Patent
                – Claims 1, 5) ................................................................................................... 15

V.      CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
 CV 16-453-RGA, 2018 WL 456035 (D. Del. Jan. 17, 2018) ................................................10

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
 783 F.3d 1374 (Fed. Cir. 2015) ..........................................................................................3

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
 382 F.Supp.3d 586 (E.D. Tex. 2019) ..................................................................................16

*Digital Retail Apps, Inc. v. H-E-P, LP*,
 6:19-cv-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) .........................5, 7, 8, 14

*Egenera, Inc. v. Cisco Sys., Inc.*,
 972 F.3d 1367 (Fed. Cir. 2020) ..........................................................................................4

*ePlus, Inc. v. Lawson Software, Inc.*,
 700 F.3d 509 (Fed. Cir. 2012) ............................................................................................2

*Function Media, L.L.C. v. Google, Inc.*,
 708 F.3d 1310 (Fed Cir. 2013) ...........................................................................................6

*GE Lighting Solutions, LLC v. Lights of America, Inc.*,
 663 Fed. Appx. 938 (Fed. Cir. 2016) .................................................................................16

*H-W Technology, LC v. Overstock.com. Inc.*,
 973 F.Supp.2d 689 (Fed. Cir. 2013) ..................................................................................10

*Halliburton Energy Servs., Inc. v. M-I LLC*,
 514 F.3d 1244 (Fed. Cir. 2008) .....................................................................................12, 15

*Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*,
 2:16-CV-505, 2017 WL 2672616 (E.D. Tex. June 21, 2017) ..............................................10

*Interval Licensing LLC v. AOL, Inc.*,
 766 F.3d 1364 (Fed. Cir. 2014) ..........................................................................................3

*Lucent Technologies, Inc. v. Gateway, Inc.*,
 525 F.3d 1200 (Fed. Cir. 2008) .......................................................................................9, 10

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 572 U.S. 898 (2014) ................................................................................................. *passim*

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*In re Packard,*
   751 F.3d 1307 (Fed. Cir. 2014) ................................................................8, 14

*Personalized Media Communications, LLC v. Google LLC, et. al,*
   2020 WL 1666462 (E.D. Tex. Apr. 3, 2020) ..............................................9

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ..................................................................3

*Rain Computing, Inc. v. Samsung Electronics America, Inc.,*
   989 F.3d 1002 (Fed. Cir. 2021) ...............................................................5, 6

*Selex Commnc's, Inc. v. Google Inc.,*
   No. 1:09-cv-02927-TWT, 2013 WL 1412334 (N.D. Ga. Apr. 8, 2013) .................................16

*Semcon IP Inc. v. Huawei Device USA Inc.,*
   No. 216CV00437JRGRSP, 2017 WL 2972193 (E.D. Tex. 2017) ........................................16

*Traxcell Tech., LLC v. Sprint Comm'n Co. LP,*
   15 F.4th 1121 (Fed. Cir. 2021) ..................................................................7

*U.S. Well Servs., Inc. v. Halliburton Co.,*
   No. 6:21-cv-00367-ADA, Dkt. No. 74 (W.D. Tex. Jan. 17, 2022) .......................................16

*Via Transportation, Inc. v. Rideco Inc.,*
   No. 6:21-cv-00457-ADA, Dkt. No. 67 (W.D. Tex. Oct. 11, 2022) .......................................16

*Vstream Technologies, LLC v. PLR Holdings, LLC,*
   2016 WL 6211550 (E.D. Tex. 2016) ...........................................................16

*Williamson v. Citrix Online, LLC,*
   792 F.3d 1339 (2015) (en banc) .............................................................4, 5, 6

*WMS Gaming, Inc. v. Int'l Game Tech.,*
   184 F.3d 1339 (Fed. Cir. 1999) ..................................................................6

**Statutes**

35 U.S.C. §112 ............................................................................ *passim*

Defendants submit their opening claim construction brief regarding the patents-in-suit[1] according to how the patentee used the terms in the patents and how one of ordinary skill in the art would have understood them.

## I.   INTRODUCTION

Plaintiff contends that the asserted claims[2] of the patents-in-suit are entitled to the priority date of the earliest application in the long chain of continuation applications that resulted in the issuance of the patents-in-suit.  To the extent Plaintiff contends that the claims are entitled to the original priority date of the first in the chain of applications, the claims must be interpreted from the point of view of a person skilled in the art ("POSITA") as of October 17, 2005, the date when the first application was filed.  Most of the terms in the claims appear only in the claims and do not occur in the specification.

Defendants believe that several of the terms in the claims are indefinite because they are means-plus-function (MPF) terms without disclosed corresponding structure to perform the claimed functions or because they do not provide "clear notice of what is claimed" from "the perspective of someone skilled in the relevant art *at the time the patent was filed*."  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908-09 (2014) (emphasis in original).

## II.   PATENTS-IN-SUIT

The '761 patent and the '472 patent stem from the same parent application and share almost identical specifications.  Both patents are titled "Automatic Upload of Pictures from a Camera."  Both patents relate to a camera system that uses a controller to store, select, and automatically transmit pictures to a remote server under certain conditions, such as "only at

---

[1] The patents-in-suit are U.S. Patent Nos. 10,063,761 ("'761 patent") and 11,153,472 ("'472 patent").

[2] The asserted claims are claims 1-4 and 16 of the '761 patent and claims 1, 2, 5, and 6 of the '472 patent.

certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access." *See* '761 patent at 12:57-13:1; '472 patent at 12:62-13:7. Figure 3 of both patents discloses a black box showing a "camera controller 40."



FIG. 3

## III.    LEGAL STANDARD

The Court is very familiar with the legal standard for claim construction. OGP 4.2 at 7. Accordingly, Defendants offer only a brief recitation of the claim construction canons relevant to their arguments and focus on the substantive issues unique to this case. *Id.*

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. §112. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus,* 572 U.S. at 910. If it does not, the claim fails §112 and is invalid as indefinite. *Id.* at 901. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent

provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). The standard "must provide objective boundaries for those skilled in the art." *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). In this case, Plaintiff alleges that the effective filing date for the asserted claims is October 17, 2005, the date of the first of the more than ten applications in the chain that resulted in the issuance of the patents-in-suit.

## IV.    DISPUTED CONSTRUCTIONS

### A.    "controller" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning. No construction necessary. | Indefinite, §112 ¶6

Function: "(i) receive, via the touch sensitive display, a user selection of an upload option that instructs the device to confine automatic picture upload to periods without potential cellular network access fees; (ii) automatically connect to a remote picture hosting service and cause an upload of one or more pictures stored in the non-volatile memory to the remote picture hosting service via the cellular interface" ('761 Patent/ 1);

"(i) receive, via the touch sensitive display, a user selection of an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees; (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via |

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| | the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all three of the following conditions are met" ('472 Patent/1);<br><br>"(i) display on the touch sensitive display a user-selectable input that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees; (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all the following conditions are met" ('472 Patent/5)<br><br>Structure: non disclosed (Indefinite) |

### 1.    Section 112 ¶6 Applies to the "Controller" Limitation

To determine whether §112 ¶6 applies to a claim limitation, the Court must first determine whether the disputed limitation uses the word "means." If it does, there is a rebuttable presumption that §112 ¶6 applies. *See Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1348-49 (2015) (en banc). If not, there is a rebuttable presumption that the provision does not apply, which "can be overcome and §112 para. 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1348. Importantly, "[t]he question is not whether a claim term recites any structure but whether it recites sufficient structure—a claim term is subject to section 112(f) if it recites function without reciting sufficient structure for performing that function." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1374 (Fed. Cir. 2020).

The claims recite "(f) a controller" that is "configured to" perform certain functions set forth in the table above, *e.g.*, "receive, via the touch sensitive display, a user selection of an upload option that instructs the device to confine automatic picture upload to periods without potential cellular network access fees." *See* '761 patent at 16:65-17:17.

The presumption against the application of §112 ¶6 is overcome here because the word "controller" is used in the claims as a "nonce word" that "sets forth the same black box recitation of structure for providing the same specified function as if the term 'means' had been used." *Williamson,* 792 F.3d at 1350. The asserted claims recite "controller" that is "configured to" perform a sequence of functions. Claim terms using similar language have been found to be subject to §112 ¶6. *See Rain Computing, Inc. v. Samsung Electronics America, Inc.,* 989 F.3d 1002, 1006 (Fed. Cir. 2021) (there is no substantive difference between "controller *configured to*" perform certain functions and "controller for performing certain functions"; rejecting the argument that "replacing 'for' with 'configured to' removed the means-plus-function").

As of October 17, 2005, a POSITA would not have understood the phrase "controller configured to" to have sufficient definite meaning. Although the specification indicates that a controller can be a "microprocessor," *see* '761 patent at 12:31-34[3], such generic example is no different from a "distributed learning control module" or "first communication module," which were found to be subject to §112 ¶6. *Williamson*, 792 F.3d at 1349-51; *Digital Retail Apps, Inc. v. H-E-P, LP*, 6:19-cv-00167-ADA, 2020 WL 376664, at *4 (W.D. Tex. Jan. 23, 2020). Even if a POSITA may know how to program the controller to perform the functions, "the fact that one of skill in the art could program [the controller] to perform the recited functions cannot create structure where none otherwise is disclosed." *Williamson*, 792 F.3d at 1351. Nor can the recited

---

[3] The '472 patent contains similar language in claims 1 and 5 and thus the analysis and citations for the '761 patent equally apply to the '472 patent.

claim functions somehow be characterized as "structure" because the functions are result-oriented and confusing themselves. Garlick Decl., ¶¶40, 42. Because the specification is silent as to what the "controller" is in the context of the claimed invention, a POSITA would not have understood the "controller" to connote sufficient structure in light of the claim as a whole.

### 2. The Specification Fails to Disclose Corresponding Structure to Perform the Claimed Functions

Because "controller configured to" is subject to §112 ¶6, the next steps are to (1) identify the claimed functions, and (2) "determine what structure, if any, disclosed in the specification corresponds to the claim function." *See Williamson*, 792 F.3d at 1351; *Rain Computing*, 989 F.3d at 1007. Where, as here, "the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). It is equally "well settled that simply disclosing software without providing some detail about the means to accomplish the function is not enough." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed Cir. 2013). Moreover, even if a POSITA "would know exactly how to program" the controller to perform the functions, "the fact that one of skill in the art could program [the controller] to perform the recited functions cannot create structure where none otherwise is disclosed." *Williamson*, 792 F.3d 1351.

In this case, the specification of the patents-in-suit does not disclose any structure, algorithms, or software for performing the claimed functions that the controller is "configured to" do. Like the "module" in the *Williamson* case, the patents-in-suit merely depict the "controller" as an empty rectangle box ("camera controller 40") without any structural detail (*e.g.*, '761 patent at Fig. 3). Entirely absent from the disclosure—and necessary under the law—

6

is a description of algorithms, routines, or instructions by which to perform the claimed functions, such as "receive a user selection of an upload option that instructs the device to confine automatic picture upload to periods without potential cellular network access fees" and "automatically connect to a remote picture hosting service and cause an upload of one or more pictures . . . after receiving" certain data.  Garlick Decl., ¶41.  Even if CEV may try to hypothesize how the claimed functions might be implemented by the black box "camera controller 40," the Federal Circuit has rejected such similar attempts.  *See Traxcell Tech., LLC v. Sprint Comm'n Co. LP*, 15 F.4th 1121, 1133-34 (Fed. Cir. 2021) (regarding the "means for receiving said performance data and suggest[ing] corrective actions obtained from a list of possible causes for said radio tower based upon the performance data and the corresponding location associated with said at least one wireless device" term, the Federal Court found that, because the patent owner "had not explained how . . . structure in the specification **actually** provides location-based corrective actions but had instead offered speculation about how location data **might** be used," the means-plus-function phrase at issue there was indefinite.) (emphasis added).

Since the patents-in-suit fail to define any structure or algorithm for a "controller" configured to perform the stated functions, the term is invalid for indefiniteness as it fails to inform with reasonable certainty what is claimed.  *Nautilus*, 572 U.S. 898 at 910; *Digital Retail Apps, Inc.*, 2020 WL 376664, at *7.

**B.**     **"instructs" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning.  No construction necessary. | Indefinite |

The asserted claims recite an "upload option that <u>instructs</u> [a component] to confine

automatic picture upload to periods without potential [or potentially increased] cellular network access fees." The word "instructs" appears only in the claims, but not in the specification. The specification is devoid of (1) any disclosure whatsoever to indicate what the instructions might be, and (2) any description of any structure that "instructs." The claims recite that the subject that "instructs" is an "option," but an "option" is something passive, generally meaning something being chosen. *See* Ex. A, https://www.merriam-webster.com/dictionary/option ("something that may be chosen"). A POSITA would be left to wonder how something that is passively being chosen can actively instruct others to perform. As a result, the term is invalid for indefiniteness as it fails to inform with reasonable certainty what is claimed. *See Nautilus*, 572 U.S. 898 at 910.

### C.    "the device" ('761 Patent – Claim 1)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| "The device" is "the camera system," and the plain and ordinary meaning of "the camera system" applies so no further construction is necessary. | Indefinite |

Claim 1 of the '761 patent is indefinite because "the device" lacks antecedent basis. Indeed, the claim does not refer to any "device" before "the device" term was introduced. *See In re Packard*, 751 F.3d 1307, 1310, 1314 (Fed. Cir. 2014) (affirming finding of indefiniteness based on limitations that "lacked an antecedent basis"); *Digital Retail Apps, Inc.*, 2020 WL 376664, at n.6 ("The use of the article 'the' rather than 'a' is significant. … Specifically, the first time a noun is mentioned, the article 'a' is used, while thereafter the article 'the' or 'said' is used to refer back to the antecedent basis."), n.7 ("Claims 3-5 … depend from Claim 1 and recited 'the purchase information.' However, Claim 1 does not disclose 'purchase information.' Therefore, 'the purchase information' in Claims 3–5 lack an antecedent basis, rendering those

claims invalid").

Because a "device" can be "any element … or component designed for a specific use for purpose," a POSITA would not have understood what "the device" refers to in the context of the claims.  *See* Ex. B, Academic Press Dictionary of Science and Technology (1992), p. 622; Garlick Decl., ¶46.  A POSITA would have to speculate whether "the device" refers to "controller," "camera," "camera system," "cellular interface" or any of the claimed components recited prior to the introduction of "the device."  Garlick Decl., ¶¶46-47.  The specification would be of no help.  Indeed, every time the word "device" is used in the '761 patent specification, it is in conjunction with an adjective component, such as "camera input device," "detection device," "optically sensitive device," "light emitting device," "gaze tracking device," "touch sensitive input device," "light detecting device," and "cellular communication device."  *See, e.g.*, '761 patent.  Thus, the scope of "the device" would not be reasonably ascertainable by a POSITA.  *See Personalized Media Communications, LLC v. Google LLC, et. al*, 2020 WL 1666462, at *18 (E.D. Tex. Apr. 3, 2020) ("There is no antecedent reference to "storage locations" or "identified storage locations" supporting "said identified storage locations" in the wherein clause … thus the meaning of the claim, is not reasonably certain.")

Realizing the ambiguity, CEV tried to fix the claim through its construction by rewriting "the device" to be "the camera system."  However, this directly flouts governing law, as the Federal Circuit "has repeatedly held that courts may not redraft claims to cure a drafting error made by the patentee, whether to make them operable or to sustain their validity."  *See Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) (collecting cases).  "To do so 'would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention.'"  *Id*. (quoting *Hoganas AB v. Dresser Industries, Inc.*, 9

F.3d 948, 951 (Fed. Cir. 1993)).  CEV's attempt to rewrite the claim here should be rejected because a POSITA would find different, equally reasonable interpretations of "the device," such as "the controller," "the camera system," or "the camera," which means that this is not a "obvious typographical error."  *See H-W Technology, LC v. Overstock.com. Inc*., 973 F.Supp.2d 689, 694-95 (Fed. Cir. 2013).  If "the device" were the "camera system" as CEV alleged, claim 1 of the '761 patent would require the "device"/"camera system" to include a "cellular interface."  *See* '761 patent at 16:58-60 ("A camera system comprising: … a cellular interface.")  But, there is no cellular interface (or *any* networking interface) in the functional block diagram of the claimed camera system in Figure 3 of the '761 patent or anywhere else in the specification. Garlick Decl., ¶48.  Accordingly, the Court should refuse to rewrite CEV's claim and should instead find the claim to be indefinite.  *See, e.g.*, *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, 2:16-CV-505, 2017 WL 2672616, at *15–16 (E.D. Tex. June 21, 2017) (finding a claim indefinite where plaintiff's request to insert the phrase "to be included" in the claim would "substantively change[] the meaning of the claim"); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, CV 16-453-RGA, 2018 WL 456035, at *8 (D. Del. Jan. 17, 2018) (finding a claim indefinite, explaining the court "cannot rewrite the patent").

**D.**      **"periods without potential cellular network access fees" ('761 Patent – Claim 1)**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| plain and ordinary meaning | Indefinite |

The claim term "periods without potential cellular network access fees" in claim 1 of the '761 patent is indefinite because a POSITA has no way to determine from the conflicting intrinsic evidence whether it refers to periods with no cellular network access fees at all or encompasses periods with merely reduced cellular network access fees.

On the one hand, the plain meaning of "without . . . fees" seems to require that there be no cellular network access fees at all.  Whereas claim 1 of the '761 patent refers broadly to "periods without potential cellular network access fees," claims of the '472 patent refer more narrowly to "periods without *potentially increased* cellular network access fees."  '472 patent at 17:18-19, 18:15-16 (emphasis added).  Because claim 1 of the '761 patent omits the word "increased," the claim language suggests there must be no fees at all.

On the other hand, though, the specification only refers to decreased cellular access fees rather than the complete absence of such fees.  Garlick Decl., ¶52.  Indeed, the specification's only discussion related to the "cellular network access fee" of claim 1 is the following:

> the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends … so as to confine picture transmission to … periods of **cheaper network access**.

'761 patent at 12:64-13:1 (emphasis added).  This conflicts with the apparent plain meaning of the claim language itself.  This ambiguity would leave a POSITA to wonder what the proper scope of this term should be, which makes the term indefinite by failing to inform with reasonable certainty what is claimed.  *See Nautilus*, 572 U.S. 898 at 910.

Further, the term "periods without potential cellular network access fees" is context-dependent, which separately confirms that the term is indefinite.  In *Versata Software Inc. v. Zoho Corp.*, the Court found that the term "space constrained" was indefinite because "whether a certain user is infringing the asserted claims is context-dependent, and a context-dependent infringement determination is likely indefinite." 213 F. Supp. 3d 829, 838 (W.D. Tex. 2016).  Here, the term at issue depends on a user's cellular network plan:  a fixed-price cellular network plan may not have any potential network access fees, while a non-fixed-price cellular network plan may.  Garlick Decl., ¶53.  In fact, the patent specification acknowledges this, stating that "an automatic feature to connect to the net … for the purposes of transmitting pictures" is related

11

to the "cellular service providers" because they may "charge a fee for internet access" to "improve revenue generation." *See* '761 patent at 14:31-35. Thus, using the exact same system to perform the exact same steps will have a different outcome for each different user, which makes the term indefinite. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) (when "proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the [system] may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.").

E.    "upload … pictures …" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| plain and ordinary meaning | Indefinite |

The "upload … pictures" term is indefinite because a POSITA would not be able to ascertain with reasonably certainty what specific pictures are uploaded under what scenarios.

Asserted claims of both patents recite similar situation for "upload … pictures." *See* '761 patent, claim 1 ("upload … one or more pictures stored in the non-volatile memory … after … a user … designate at least one picture from the group of pictures stored in the local memory to be uploaded to the remote picture hosting service."); '472 patent, claims 1, 5 ("upload … a group of image sensor-captured pictures  … during any period … in which ... at least one image sensor-captured picture … has been designated … as part of the group of pictures to be uploaded to the picture hosting service.").

On its face, a POSITA would have understood the scope of the term to broadly cover uploading all or any pictures from a set of pictures when one or more pictures from the set have been designated for uploading. *See* Garlick Decl., ¶56. However, the only relevant portion of the specification is the following:

camera system … includes the ability for the **user to indicate to the camera which pictures to offload so that the camera offloads only those pictures that are so indicated by the user**.

'761 patent at 11:64-12:1 (emphasis added).  This section at best only supports uploading the designated pictures, but not uploading all or any pictures that have not been designated for uploading.  In view of this intrinsic record, a POSITA would be left to wonder whether the term is limited to uploading *only* designated pictures *or* can cover uploading pictures that are not designated, which does not have intrinsic evidence support.  *See* Garlick Decl., ¶¶57, 58.  Either way, uncertainty abounds.

Because a POSITA would not be able to ascertain the proper scope of the term, the term is invalid for indefiniteness by failing to inform with reasonable certainty what is claimed.  *See Nautilus*, 572 U.S. 898 at 910.

### F.    "indication from the local memory" ('761 Patent – Claim 1)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| plain and ordinary meaning | Indefinite |

The specification fails to shed light on the meaning of the disputed claim term "indication from the local memory."

The word "indication" is used once in the specification, but not in connection with "local memory."  *See* '761 patent at 6:4-7 ("another aspect of the present invention contemplates that the camera system or a remote device, or both, preferably provide an indication that a voice command was or was not understood.").  Even when similar words such as "indicate" or "indicating" are used in the specification, they are also not used in connection with "local memory."  The term "indication" otherwise is used only in the claims.  *See id.* at 17:11 ("an indication that the system is connected to the internet"); 17:13-14 ("an indication from the local memory that a user has elected an option to designate at least one picture from the group of

pictures stored in the local memory").

An "indication" can refer to "something (as a signal, sign, suggestion) that serves to indicate."   *See* Ex. C, Merriam-Webster's Unabridged Dictionary, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/indication. Memory is like a digital storage system whose contents can be retrieved, but a storage system does not provide indications.   A POSITA would wonder what, exactly, is that "something" from a passive memory storage that can serve to indicate.

### G.   "group of … pictures" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| plain and ordinary meaning | Indefinite |

For both patents, the word "group" appears only in the claims, but not at all in the specification.  *See, e.g.*, '761 patent; '472 patent.  The term "group" generally refers to multiple things classified together due to their commonality, but a POSITA has no way of knowing what constitutes the "group of … pictures" recited in the claims: whether all of the pictures stored in the memory (which the claims say might be only a single picture) or an unspecified subset of those stored pictures.  The specification provides no clarification, and the term is indefinite.

Further, the asserted claims of the '761 patent recite "an indication from the local memory that a user has elected an option to designate at least one picture from the group of pictures stored in local memory," but there is no antecedent basis for the phrase "**the** group of pictures."   It is thus unclear whether this "group" includes all of the "one or more pictures" in local memory or just a subset.  The term in the '761 patent claims is indefinite for this separate reason.  *See In re Packard*, 751 F.3d at 1310, 1314; *Digital Retail Apps, Inc.*, 2020 WL 376664, at n.7.

### H.    "periods without potentially increased cellular network access fees" ('472 Patent – Claims 1, 5)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| plain and ordinary meaning | Indefinite |

First, a POSITA would not have understood the proper scope of the phrase "potentially increased." The word "potentially" has to be given meaning, but what does it mean for an access fee to be "potentially" increased? How would one measure that? What are the circumstances that would trigger this potential increase? The intrinsic record simply offers no guidance.

Second, "periods without potentially increased cellular network access fees" is context-dependent and vague, which confirms that the term is indefinite. *See Versata Software Inc.* 213 F. Supp. 3d at 838. For example, it is not clear "increased network access fees" are compared to what? Does it mean the highest fees of the day? Higher than average? Higher than a threshold? Or would a period in which the fees are one penny higher than the cheapest period of the day qualify? There is simply no guidance.

Further, this term contextually depends on a user's cellular network plan – a fixed-price cellular network plan may not have any potentially increased network access fees, while a non-fixed-price cellular network plan may. *See supra* §IV.D. Thus, using the exact same system to perform the exact same steps will have a different outcome for each different user, which makes the term indefinite. *See* Garlick Decl., ¶66; *Halliburton Energy Servs., Inc.*, 514 F.3d at 1255.

Lastly, the term is a subjective term of degree for which the specification provides no guidance or objective baseline regarding the scope of "potentially increased … fees." The phrase is found only in the claims. The closest specification disclosure is as follows:

> Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access

'472 patent at 13:3-7.  But this portion of the specification provides no guidance for (1) what situations qualify as "potentially increased," and (2) measuring and determining how much potential increase of the fees is needed.  Thus, the specification does not provide any indication or boundary regarding "potentially increased … fees" to a POSITA.  *See* Garlick Decl., ¶65.

Many courts, including ones in this district, have found similar terms of degree to be indefinite under similar circumstances.  *See U.S. Well Servs., Inc. v. Halliburton Co.,* No. 6:21-cv-00367-ADA, Dkt. No. 74, at 9–18 (W.D. Tex. Jan. 17, 2022) (finding "high pressure" to be indefinite); *Via Transportation, Inc. v. Rideco Inc.*, No. 6:21-cv-00457-ADA, Dkt. No. 67 (W.D. Tex. Oct. 11, 2022) (finding "high demand area(s)" indefinite when the patent specification does not provide guidance and boundary on the term, which may correspond to "increased demand"); *U.S. Well Servs.*, Dkt. No. 74, at *18 (finding "high pressure" indefinite for "failing to inform, with reasonable certainty, those skilled in the art about the scope of the invention"); *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F.Supp.3d 586, 610 (E.D. Tex. 2019) (finding "more convenient" to be indefinite); *Vstream Technologies, LLC v. PLR Holdings, LLC*, 2016 WL 6211550, *6-*8 (E.D. Tex. 2016) (finding "sufficiently correct" to be indefinite); *Semcon IP Inc. v. Huawei Device USA Inc.*, No. 216CV00437JRGRSP, 2017 WL 2972193, *24–25 (E.D. Tex. 2017) (finding the term "relatively short messages" was indefinite because the patent did not provide objective guidance was to what was "short" but only contrasted it with "inordinately long"); *Selex Commnc's, Inc. v. Google Inc*., No. 1:09-cv-02927-TWT, 2013 WL 1412334, at *14 (N.D. Ga. Apr. 8, 2013) (finding claim indefinite because "with respect to 'high cost number,' there is no standard by which a person having ordinary skill in the art could determine with a degree of certainty that a dialed number is a 'high cost number'"); *GE Lighting Solutions, LLC v. Lights of America, Inc.*, 663 Fed. Appx. 938 (Fed. Cir. 2016) (finding

"elongated" to be indefinite because the specification provided no objective boundary to define it).

For all of these reasons, the claim is indefinite.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court construe the above-identified terms in accordance with Defendants' proposals by finding them to be indefinite.

Dated: November 21, 2022                    Respectfully submitted,

                                            By:  */s/Mark D. Siegmund*
                                            Mark D. Siegmund
                                            State Bar No. 24117055
                                            Gregory P. Love
                                            State Bar No. 24023060
                                            **STECKLER WAYNE CHERRY & LOVE,
                                            PLLC**
                                            8416 Old McGregor Road
                                            Waco, Texas   76712
                                            Telephone:  (254) 651-3690
                                            Facsimile:  (254) 651-3689
                                            mark@swclaw.com
                                            greg@swclaw.com


                                            **RIMON P.C.**
                                            Thomas Fawell
                                            Texas State Bar No. 24118098
                                            700 Milam Street, Suite 1300
                                            Houston, TX 77002
                                            Telephone/Facsimile: (832) 404-2051

                                            Jason Liang Xu (*PHV admitted*)
                                            DC Bar No. 980531
                                            1990 K Street NW, Suite 420
                                            Washington, D.C. 20006
                                            Telephone/Facsimile: (202) 470-2141

                                            Eric Cohen (*PHV admitted*)
                                            2530 Meridian Parkway, #300
                                            Durham, North Carolina 27713
                                            Telephone/Facsimile: (919) 241-7495

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 21st day of November 2022.

/s/ *Mark D. Siegmund*
MARK D. SIEGMUND