# EXHIBIT F

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Title           :   AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA
Serial. No.     :   16/663,742         Confirmation No.   :   3076
Applicant      :   Jeffrey C. Konicek      TC/A.U.            :   2852
Filed           :   October 25, 2019       Examiner          :   Rodney E. Fuller

Docket No.    :   Torpere-F04-514
Customer No.  :   107554

---

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

### RESPONSE TO NON-FINAL OFFICE ACTION

Dear Examiner:

This submission is responsive to the Non-Final Office Action issued in the above-captioned application dated February 1, 2021. A request for a two month extension of time, together with the required fee, is provided herewith.

**Applicant's Remarks** begin on page 2 below.

CEV-0010970

## REMARKS

Applicant is in receipt of the Examiner's February 1, 2021 Non-Final Office Action ("NFOA").  Claims 21-28 are currently pending.

### I.  Examiner Interview Summary

Counsel of record Justin Lesko, the inventor Jeff Konicek, and the Examiner Rodney Fuller conducted an interview on June 11, 2021.  During the interview, Applicant and the Examiner discussed the NFOA's Section 112 Written Description rejection.  Applicant presented in outline format the explanation for claim support provided in Section II of this response below.

In view of Applicant's explanation, the Examiner agreed that the claims are fully supported and the Section 112 rejection will be withdrawn.  The Examiner indicated that if Applicant submits the explanation for written description support and terminal disclaimers to overcome the double patenting rejections, this application is in condition for allowance.

To obviate the double patenting rejections based on U.S. Patent Nos. 9,936,116 and 10,063,761, Applicant files herewith two Forms PTO/AIA/26 (Terminal Disclaimer to Obviate a Double Patenting Rejection Over a "Prior" Patent), along with the required fees.

### II.  Applicant's Response to the Section 112 Written Description Rejection

 "The subject matter of the claim need not be described literally (i.e., using the same terms or *in haec verba*) in order for the disclosure to satisfy the description requirement." M.P.E.P. 2163.02. Instead, the question is whether the specification conveys with *reasonable* clarity to those skilled in the art that the applicant was in possession of the claimed invention. M.P.E.P. 2163(I)(B), citing *Vas-Cath, Inc.*, 935 F.2d at 1563-64.

"Factors to be considered in determining whether there is sufficient evidence of possession include the level of skill and knowledge in the art, partial *structure*, physical and/or chemical properties, *functional characteristics* alone or *coupled with a known or disclosed correlation between structure and function*, and the method of making the claimed invention. Disclosure of any combination of such identifying characteristics that distinguish the claimed invention from other materials and would lead one of skill in the art to the conclusion that the applicant was in possession of the claimed species is sufficient." See *Eli Lilly*, 119 F.3d at 1568 (emphasis added). Also, the description needed to satisfy the requirements of 35 U.S.C. 112

2

CEV-0010971

"varies with the nature and scope of the invention at issue, and with the scientific and technologic knowledge already in existence." *Capon v. Eshhar*, 418 F.3d at 1357.

Applicant responds to each of the NFOA's points below.

**A. The touchscreen elements are supported.**

*The NFOA asserts:* "The specification sets forth multiple inventions and teaches a 'touch sensitive display' in paragraph 22. The claims correspond to an invention that is set forth in paragraphs 36 - 38. …"; "There is no disclosure of the touch sensitive display used to select an upload option or a user-selectable input related to upload periods"; and "There is no disclosure that the touch sensitive display is used to select photos to be uploaded."

*Applicant's Response:* The specification directly couples known touchscreen LCDs with the functions of camera control and menu selection as claimed.

First, the specification describes the touchscreen LCD allowing the user of the system to "interact with menus, features, and functions displayed on the LCD display" and "control the camera system" through touch:

> **Para. 22** - Another aspect of the present invention provides that the camera LCD display (FIG 1, element 14) employs touch sensitive technology. This technology is well known in the computer art and can be any of resistive, capacitive, RF, etc touch technology. This aspect of the present invention ***allows the user to interact with menus, features and functions*** displayed on the LCD display directly rather than through ancillary buttons or cursor control….

> **Para. 31** – **[T]he user can interact with the camera through touch**, voice, and gaze (i.e., sight) to manipulate menus, ***control the camera system***, compose the shot, focus, zoom, enable/disable flash, select macro or panoramic camera modes, etc.

Thus, the specification expressly instructs one skilled in the art to interact via touch technology with menus on the LCD to control camera features and functions. These camera functions include automatic upload functions, as the touchscreen control is not described as being separate or excluded from other camera features. To the contrary, the specification specifically states that the touch input aspects of the invention should be combined with other features for "the control of camera menus, ***camera features***, ***camera options***, camera settings, commanding picture taking, enabling flash, etc."

> **Para. 45** - ***Additionally, not all aspects of the invention need to be practiced together, it is contemplated that subsets of the disclosed aspects of the present invention may be practiced in an embodiment and still be within the scope of***

CEV-0010972

*the present invention*…. Combining various aspects of the invention herein disclosed, such as voice recognition, **touch input,** gaze tracking, etc **for camera control** provides much more natural and human interfacing to the camera system for the control of camera menus, **camera features**, **camera options**, camera settings, commanding picture taking, enabling flash, etc.

The specification even discloses using the LCD display (which is the touch-sensitive display, as described in Para. 22) with cellular upload:

> **Para.37** - In a second preferred embodiment of this aspect of the invention, the inventive camera system is equipped with software and hardware coupled to the camera controller allowing independent communication with a computer network for the primary purpose of communicating its pictures over the internet… Alternatively, the invention contemplates the use of … cellular data networks … as the interconnection technology (FIG. 3, element 46b) used by the inventive camera system…. **The camera system LCD display serves the purpose of displaying internet webpages when the user is navigating the internet in addition to its function as the camera display.  So equipped**, the inventive camera system can now independently upload its pictures to any of the internet-based photo printing services, such as those provided by Walmart.com, Walgreens.com, Kodak.com, etc., without the need for first storing the photos to a computer system and then connecting the computer system to the internet to upload the pictures."

Thus, "so equipped" with the previously described LCD touchscreen display, Para. 36 teaches that "[t]he camera system preferably includes the ability for the user to **indicate** to the camera which pictures to offload so that the camera offloads only those pictures that are so **indicated by the user**," this "indicating" can be the disclosed method of selecting a menu option on a touchscreen to control the camera.

Similarly, Paragraph 38 describes **user instructions** for the upload, which can happen via the disclosed touchscreen. There, the specification says that the system is "**operable for being instructed** to automatically initiate a connection to the internet whenever the predetermined conditions are met and it is in range of the network connection" and "[a]dditionally … **operable** so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc." The specification uses the word "operable" in describing user instructions to the camera system. As explained above, the specification explicitly describes that such instructions are sent via the touchscreen.

Also, in Fig. 3 The LCD touchscreen display 42 is shown as an input to the camera controller 40 that handles "other camera control" 50. In other words, Fig. 3 shows the

4

CEV-0010973

interconnection between the LCD touchscreen input and "other" functions, such as upload functions.



FIG. 3

**B. The specification discloses the claimed conditions for upload.**

*The NFOA asserts:* "The description only supports the automatic connection upload when two conditions are met (1) 'it has a predetermined number of pictures' and (2) 'can so connect'. Thus, the disclosure does not support the conditions of automatic upload set forth in claims 21 and 25."

*Applicant's Response:* The NFOA is incorrect, and all of the claimed conditions for upload are supported.

The specification describes photo offloading as an "aspect of the present invention" and that offloading occurs when "a **set** of predetermined conditions, ***such as*** day, time, number of pictures to offload, ***etc.***, are met."

> **Para. 36** - Once a user of a camera has taken pictures, typically he will wish to print or otherwise develop the pictures for viewing, framing, etc. **Another aspect of the present invention provides for simpler photo offloading from the modern digital camera when <u>a set of predetermined conditions, such as day, time, number of pictures to offload, etc., are met</u>**. The camera system preferably includes ***the ability for <u>the user to indicate to the camera</u> which pictures to offload so that the camera offloads only those pictures that are so indicated by the user***....

5

Thus, the specification expressly states that upload is dependent on a *set* of conditions.

Under the broadest reasonable interpretation, a "set" of conditions is certainly not limited to just two conditions, and can include 3, 4, 5 or even 10+ conditions. Therefore, the number of conditions would be limited to two conditions *only* if the specification expressly limited the scope of the term "set" in some way. But the specification describes the "set" expansively, consistent with its BRI.   Specifically, the inventor confirms that the "set of predetermined conditions" clearly includes greater than two conditions by: (1)  expressly introducing the list with "such as", (2) listing *three* examples of conditions (different from the two in the NFOA), and (3) adding the *open-ended* phrase  "etc." Moreover, as discussed below, the specification expressly describes numerous additional conditions associated with the upload process in Paragraphs 36 ("day, time, number of pictures to offload, etc.," "user … indicate[s] to the camera which pictures to offload"), 37 (upload over the cellular network), 38 ("whenever the predetermined conditions are met,"  "it is in range of the network connection," "confine[d]...to periods of cheaper network access") and 48 ("time, date, status of equipment, etc.").

As to the user "designation" of photos being a condition, as shown above, the user designating photos is discussed right next to the discussion of conditions in para. 36. In that embodiment, "the camera offloads *only* those pictures that are so indicated by the user."  Thus, "designation" of pictures is *in fact* a condition for upload (and discussed in that section) because if no pictures are designated, no upload will occur.

Para. 37 describes this same upload "aspect of the invention" in which the pictures are uploaded over the cellular network:

> **Para. 37** - In a second preferred embodiment of *this aspect of the invention*, the inventive camera system is equipped with software and hardware coupled to the camera controller allowing independent communication with a computer network for the primary purpose of communicating its pictures over the internet.… [T]he invention contemplates the use of … *cellular data networks*, etc. as the interconnection technology (FIG. 3, element 46b).…

Para. 38 describes this "aspect of the invention" too, emphasizing that "the inventive camera system is operable for being instructed to automatically initiate a connection to the internet, LAN, printer, etc. *whenever the predetermined conditions* are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc)." As this is an "enhancement" to the "above-disclosed" upload "aspect" (of Para. 36), Para. 38 is certainly *not* limiting automatic upload to just two conditions, as suggested by the Examiner. Instead, Para. 38

6

CEV-0010975

of the specification clearly refers to and further explains the expansive "predetermined *conditions*" (plural) referenced in Para. 36.

Para. 38 also describes that upload can be "*confine[d]*...to periods of cheaper network access." Without doubt, a person of skill in the art would readily understand that the upload is *conditioned* upon (i.e., confined to) the current status of the network costs. This also is clearly one of the possible "conditions" for upload, even if it is not explicitly called a "condition" in para. 36 above. In other words, network access fees are one of the "etc." conditions contemplated by the specification.

Par. 48 emphasizes again that the set of predetermined rules or conditions for automatic upload is expansive and includes "status of equipment" (which can be used to determine if the device is in one of the periods without potentially increased cellular network access fees) as one of the upload conditions:

> It is further contemplated that certain aspects of the presently disclosed invention have application beyond those disclosed herein.... ***As an example, automatically connecting to the internet when a set of predetermined rules or conditions (such as time, date,*** <u>***status of equipment, etc***</u>***) is met*** would be useful for the download/upload of information from/to the internet, like music, video, etc. for processing, storage, transmission to another party, etc..

Thus, in fact, all four of the conditions set forth in the claim are expressly supported and described in the specification.

**C. The specification discloses "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and "the controller has confirmed that the camera system is within a period without potentially increased cellular network access fees, as determined using data from the cellular interface."**

*The NFOA asserts:* "There is no disclosure of determining a period based on data from the cellular Interface."

*Applicant's Response:* The NFOA is incorrect.

The specification expressly describes that upload can be confined to "periods of cheaper network access," that the device can be a cellular phone with known structures for accomplishing that task, and that "status of equipment" is used by the cellular phone to make the upload determination, as previously confirmed by the Examiner.

7

In a related application, Applicant addressed the disclosure in para. 38, and the Examiner agreed that a similar claim element was supported.  Specifically, during prosecution of Application No. 15/188,736 (US Patent No. 9,936,116), Applicant amended the claims to recite:

> (f) the controller configured to...(ii) receive, via the touch sensitive display, a user selection of *an upload option that instructs the device to confine automatic picture upload* to periods without potential cellular network access fees; and
>
> (iii) automatically upload designated pictures...only if predetermined conditions are met, the predetermined conditions including at least the controller receiving: (1) *an indication from the cellular interface that the upload is acceptable* based on the selected upload option;

Applicant explained that para. 38 supports these elements, which distinguish the prior art, and the Examiner agreed.  *See* December 5, 2017 Interview and December 11, 2017 Amendment.

Para. 38 says explicitly that picture transmission is confined to "periods of low network usage or periods of cheaper network access."

> In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed *to automatically initiate a connection to the internet*, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc)... Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., *so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc*....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (*when he is on vacation*, for instance), etc. In this way, valuable pictures are immediately backed-up and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

CEV-0010977

Applicant's disclosure also ties the above-referenced automatic upload embodiment to cameras in cellular phones, while acknowledging the fees charged by cellular service providers. The specification says at Para. 44:

> Additionally, *other aspects of the present invention taught for the improved camera system are applicable to the improved cell phone* herein disclosed.... The aspect of the invention allowing for automatic connection to a LAN or the internet is also contemplated for use with *cell phone cameras*. This aspect of the invention ameliorates the prior art storage space limitation which severely hampers the utility of the cell phone camera. *Cellular service providers typically charge a fee for internet access* or emailing and so an automatic feature to connect to the net or send email for the purposes of transmitting pictures can improve revenue generation for these companies.

Thus, the specification describes that (1) the cellular device can be instructed to confine uploads to "periods of cheaper network access" and (2) cell service providers charge network fees.

In addition, para. 48 of applicant's specification emphasizes "status of equipment" (e.g., network equipment) as one of the possible conditions for upload:

> It is further contemplated that certain aspects of the presently disclosed invention have application beyond those disclosed herein.... *As an example, automatically connecting to the internet when a set of predetermined rules or conditions (such as time, date, <u>status of equipment, etc</u>) is met* would be useful for the download/upload of information from/to the internet, like music, video, etc. for processing, storage, transmission to another party, etc.

"Periods of cheaper network access," as discussed in Para.38, can be determined via "status of equipment" because the device receives cellular network information from equipment on the cellular network. As an example at the time of the invention (known to a PHOSITA), equipment on the network indicates to the cellular phone (through its cellular interface) that the device is roaming on a more-expensive non-provider network. This roaming period would ***not*** be "one of the periods without potentially increased cellular network access fees," and upload is prevented during this particular period.

Thus, as previously found by the Examiner for a similarly-worded claim, there is express support in the specification for the language of claim 21. Moreover, it is established law that in *haec verba* disclosure is not required and the question is whether the specification conveys with reasonable clarity to those skilled in the art that the applicant was in possession of the claimed invention," as explained above.

9

III.  **Conclusion**

In view of the above, Applicant believes that claims 21-28 are in condition for allowance. If the Examiner has any questions, please contact the undersigned.

Respectfully Submitted,

/Justin J. Lesko/

Justin J. Lesko
Reg. No. 69,643

The Law Offices of Lisa & Lesko, LLC
55 East Monroe Street Suite 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

Dated: June 11, 2021

CEV-0010979



UNITED STATES PATENT AND TRADEMARK OFFICE

OPAP AKMA-5
FEB 1 2 2021
PATENT & TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/663,742 | 10/25/2019 | Jeffrey C. Konicek | Torpere-F04-514 | 3076 |

107554        7590        02/01/2021
JUSTIN LESKO
LAW OFFICES OF LISA & LESKO, LLC
C/O INTELLEVATE, LLC.
900 Second Ave S. Suite 600
MINNEAPOLIS, MN 55402

| EXAMINER |
|---|
| FULLER, RODNEY EVAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2852 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/01/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

CEV-0010981

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 16/663,742 | Konicek, Jeffrey C. |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | RODNEY FULLER | 2852 | No |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>10/25/2019</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**   2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s)  <u>21-28</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>21-28</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on <u>10/25/2019</u> is/are:  a) ☑  accepted or  b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**   c) ☐ None of the:
      1. ☐  Certified copies of the priority documents have been received.
      2. ☐  Certified copies of the priority documents have been received in Application No. _____.
      3. ☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
   ** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date <u>10/25/2019, 03/11/2020, 08/27/2020, 09/29/2020</u>

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

CEV-0010982

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.        The present application is being examined under the pre-AIA first to invent

provisions.

### *Claim Rejections - 35 USC § 112*

2.        The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the
> invention, and of the manner and process of making and using it, in such full, clear, concise,
> and exact terms as to enable any person skilled in the art to which it pertains, or with which it
> is most nearly connected, to make and use the same, and shall set forth the best mode
> contemplated by the inventor or joint inventor of carrying out the invention.

> The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly
> connected, to make and use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

3.        Claims 21-28 rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first

paragraph, as failing to comply with the written description requirement. The claim(s)

contains subject matter which was not described in the specification in such a way as to

reasonably convey to one skilled in the relevant art that the inventor or a joint inventor,

or for applications subject to pre-AIA 35 U.S.C. 112, the inventor(s), at the time the

application was filed, had possession of the claimed invention.

        a.        Claim 21 states "(i) receive, via the touch sensitive display, a user

        selection of an upload option that instructs the camera system to confine

        automatic picture upload to periods without potentially increased cellular network

        access fees" and Claim 25 states "(i) display on the touch sensitive display a

CEV-0010983

user-selectable input that instructs the camera system to confine automatic

upload periods without potentially increased cellular network access fees". The

specification sets forth multiple inventions and teaches a "touch sensitive display"

in paragraph 22. The claims correspond to an invention that is set forth in

paragraphs 36 – 38. Paragraph 38 states: "Additionally, the inventive camera

system is preferably operable so that the automatic connection is made only at

certain times of the day or weekends, etc., so as to confine picture transmission

to periods of low network usage or periods of cheaper network access, etc.".

There is no disclosure of the touch sensitive display used to select an upload

option or a user-selectable input related to upload periods.


b.      Claim 21 states "automatically connect to the picture hosting service"…

when "all three of the following conditions are met: (1)"… "within one of the

periods without potentially increased cellular network access fees…",

(2)…"connected to internet via the cellular interface…", "and (3) at least one"…

"picture"…"has been designated through the touch sensitive display"… "to be

uploaded…".   Claim 25 states "automatically connect to a picture hosting

service…"during any period"… "in which all the following conditions are met: (1)

the controller has received from a display a  selection"… "to confine"… "uploads

to periods without potentially increased cellular network fees; (2) controller has

confirmed"… "system is within a period".. "as determined using data from the

cellular interface; (3) they system has connection to the internet…"; and (4) at

least one image"… "has been designated through the touch sensitive display" …

to be uploaded…". Paragraph 38 states: "In the second embodiment, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect…". Thus, the description only supports the automatic connection upload when two conditions are met (1) "it has a predetermined number of pictures" and (2) "can so connect". Thus, the disclosure does not support the conditions of automatic upload set forth in claims 21 and 25.

c.      Claim 21 sets forth the limitation "within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface". Claim 25 sets forth the limitation "within a period without potentially increased cellular network access fees, as determined using data from the cellular interface". Paragraph 38 states:  "Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc.". There is no disclosure of determining a period based on data from the cellular interface.

d.      Claim 21 sets forth the limitation "at least one"…"picture"… "has been designated through the touch sensitive display as part of the group of pictures to be uploaded…". Claim 25 sets forth the limitation "at least one".. "picture"… "has

been designated through the touch sensitive display as part of the group

of"...."pictures to be uploaded". The specification sets forth multiple inventions

and teaches a "touch sensitive display" in paragraph 22. Paragraph 36 states

"The camera system preferably includes the ability for the user to indicate to the

camera which pictures to upload so that the camera offloads only those pictures

that are so indicated by the user." There is no disclosure that the touch sensitive

display is used to select photos to be uploaded.

e.    Claims 22-24 depend from claim 21 and therefore include the deficiencies

of claim 21.

f.    Claims 26-28 depend from claim 25 and therefore include the deficiencies

of claim 25.

### Double Patenting

4.    The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

CEV-0010986

Application/Control Number: 16/663,742                                          Page 6
Art Unit: 2852

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on nonstatutory

double patenting provided the reference application or patent either is shown to be

commonly owned with the examined application, or claims an invention made as a

result of activities undertaken within the scope of a joint research agreement. See

MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for

applications not subject to examination under the first inventor to file provisions of the

AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application

in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26,

PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may

be filled out completely online using web-screens. An eTerminal Disclaimer that meets

all requirements is auto-processed and approved immediately upon submission. For

more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

5.      Claims 21 and 25 are rejected on the ground of nonstatutory double patenting as

being unpatentable over claim 1 of U.S. Patent No. 9,936,116. Although the claims at

issue are not identical, they are not patentably distinct from each other because the

current claims are broader and thus fully met by claim 1 of U.S. Patent No 9,936,116.

6.      Claims 21 and 25 are rejected on the ground of nonstatutory double patenting as

being unpatentable over claims 1 and 17 respectively of U.S. Patent No. 10,063,761.

Although the claims at issue are not identical, they are not patentably distinct from each

other because the current claims are broader and thus fully met by claims 1 and 17 of

U.S. Patent No. 10,063,761.

### *Conclusion*

7.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure:

> i.      Kusaka, Yosuke et al.       US 20050001024 A1 discloses
>
> automatically uploading images from a cellphone (See paragraph 0477)
>
> ii.      Ma; David Yin-Shur et al.   US 20060031126 A1 discloses a mobile
>
> phone that can automatically upload photo data (see paragraph 0049) and
>
> described the cost of cellular networks in uploading photos (see paragraph
>
> 0009).
>
> iii.      Anderson; Eric C.    US 20060013197 A1 discloses automatically
>
> uploaded images (see abstract)
>
> iv.      Slater, Michael et al.       US 20020087546 A1 discloses a digital
>
> photo management system that automatically uploads photos (See
>
> paragraph 0013)
>
> v.      Montulli, et al.   US 2006/0189349 discloses a system for automatic
>
> uploading of cell phone images (See abstract)

Application/Control Number: 16/663,742                                      Page 8
Art Unit: 2852

> vi.     Paul, et al.  US 2005/0266839 discloses automatically sending
>
>         images at a predetermined time (See claim 6)
>
> vii.    Kahn, et al.  US2004/0004737 discloses automatically sending
>
>         photos to a printing service (See abstract)
>
> viii.   Bateman, et al. (US 2002/0194414) discloses transferring data
>
>         such as images over a cellular network (See paragraphs 0020, 0040)

8.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to RODNEY FULLER whose telephone number is

(571)272-2118.  The examiner can normally be reached on 8:00 am - 4:30 pm, Monday

- Friday.

        Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Clayton Laballe can be reached on 571-272-1594.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see https://ppair-

CEV-0010989

Application/Control Number: 16/663,742                                          Page 9
Art Unit: 2852

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

If you would like assistance from a USPTO Customer Service Representative or access

to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-

272-1000.

/RODNEY E FULLER/
Primary Examiner, Art Unit 2852

January 29, 2021

| | | | | | | |
|---|---|---|---|---|---|---|
| ***Notice of References Cited*** | | | Application/Control No.<br>16/663,742 | | Applicant(s)/Patent Under Reexamination<br>Konicek, Jeffrey C. | |
| | | | Examiner<br>RODNEY FULLER | | Art Unit<br>2852 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20050001024-A1 | 01-2005 | Kusaka, Yosuke | G06F3/041 | 235/375 |
| * | B | US-20060031126-A1 | 02-2006 | Ma; David Yin-Shur | G06Q30/0601 | 705/26.1 |
| * | C | US-20060013197-A1 | 01-2006 | Anderson; Eric C. | H04W12/062 | 370/352 |
| * | D | US-20020087546-A1 | 07-2002 | Slater, Michael | G06F16/48 | 1/1 |
| * | E | US-20060189349-A1 | 08-2006 | Montulli; Louis J. | H04N1/00204 | 455/556.1 |
| * | F | US-20050266839-A1 | 12-2005 | Paul, Glenn | H04N1/00244 | 455/418 |
| * | G | US-20040004737-A1 | 01-2004 | Kahn, Philippe R. | H04N1/00151 | 358/1.15 |
| * | H | US-20020194414-A1 | 12-2002 | Bateman, John | G06F1/1632 | 710/303 |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)              **Notice of References Cited**              Part of Paper No. 20210129

CEV-0010991

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | | |
|---|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | | |
| Serial. No. | : | TBD | Confirmation No. | : | TBD |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. | : | TBD |
| Filed | : | October 24, 2019 | Examiner | : | TBD |

| | | |
|---|---|---|
| Docket No. | : | Torpere-F04-514 |
| Customer No. | : | 107554 |

---

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

### PRELIMINARY AMENDMENT

Dear Sir:

  **Amendments to the Specification** begin on page 2 below.

  **Amendments to the Drawings** begin on page 3 below.

  **Amendments to the Claims** begin on page 4 below.

  **Applicant's Remarks** begin on page 7 below.

CEV-0015411

## AMENDMENTS TO THE SPECIFICATION

Applicant herewith submits a substitute specification including 1) a new TITLE of the invention, 2) a cross-reference to related applications, and 3) a brief description of the several views of the drawings as required by 37 CFR 1.74 and 1.77(b)(7). The substitute specification is submitted with markings and accompanied by a clean version without markings in compliance with 37 CFR 1.52, 1.121(b)(3) and 1.125. In accordance with 37 CFR 1.125(b), Applicant believes that the substitute specification contains no new matter.

CEV-0015412

## AMENDMENTS TO THE DRAWINGS

Please replace Figures 1, 2, 3, 4, and 5a-c with replacement Figures 1A, 1B, 2, 3, 4, 5A, 5B, and 5C. The replacement figures are included on sheets 1/8 through 8/8 submitted herewith and identified as "Replacement Sheets." Applicant believes that the replacement sheets contain no new matter.

CEV-0015413

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application.

1 – 20. (Canceled).

21. (New) A camera system comprising:

(a) a lens;

(b) a cellular interface;

(c) an image sensor that is coupled to the lens and operable to capture pictures;

(d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;

(e) a touch sensitive display;

(f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:

(i) receive, via the touch sensitive display, a user selection of an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;

(ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all three of the following conditions are met:

(1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,

(2) the system is connected to the internet via the cellular interface; and

(3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service.

22. (New) The camera system of claim 21, wherein the picture hosting service includes printing services.

4

CEV-0015414

23.  (New) The camera system of claim 21, wherein the controller is configured to automatically connect to the picture hosting service and enable the upload immediately at any time the three conditions are met.

24. (New) The camera system of claim 21, wherein the controller is configured to automatically independently connect to the picture hosting service and enable the upload.

25. (New) A camera system comprising:

    (a) a lens;

    (b) a cellular interface;

    (c) an image sensor that is coupled to the lens and operable to capture pictures;

    (d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;

    (e) a touch sensitive display;

    (f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:

        (i) display on the touch sensitive display a user-selectable input that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;

        (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all the following conditions are met:

            (1)  the controller has received from the display a selection of the user-selectable input that instructs the camera system to confine automatic picture uploads to periods without potentially increased cellular network access fees;

            (2) the controller has confirmed that the camera system is within a period without potentially increased cellular network access fees, as determined using data from the cellular interface;

            (3) the system has a connection to the internet via the cellular interface; and

CEV-0015415

(4) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of image sensor-captured pictures to be uploaded to the picture hosting service.

26. (New) The camera system of claim 25, wherein the picture hosting service includes printing services.

27.  (New) The camera system of claim 25, wherein the controller is configured to automatically connect to the picture hosting service and enable the upload at any time the conditions are met.

28. (New) The camera system of claim 25, wherein the controller is configured to automatically independently connect to the picture hosting service and enable the upload.

.

6

CEV-0015416

**REMARKS**

In this preliminary amendment, Applicant has amended the title of the invention and the specification to cross-reference related applications. Applicant has also amended the drawings to show the features of the invention specified in the claims. In the claims, Applicant cancels claims 1 – 20 and adds new claims 21 – 28 (2 independent claims and 6 dependent claims).

Independent claims 21 and 25 are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of related U.S. Patent Nos. 9,936,116 and 10,063,761 in this family. For example, claim 21 element (f)(i) recites:

> "a controller… configured to… receive, via the touch sensitive display, a user selection of *an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees*."

(emphasis added). And claim 21 (f)(ii) recites:

> "a controller… configured to… *automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service*, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during *any period detected by the controller in which all three of the following conditions are met*:
>
> (1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,
>
> (2) the system is connected to the internet via the cellular interface; and
>
> (3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service."

(emphasis added). Elements (f)(i) and (f)(ii) of independent claim 25 include similar limitations.

The claimed invention allows uploads to be turned off during periods with potentially increased cellular network access fees, yet the camera will *automatically* (1) connect and (2) enable upload to the picture hosting service of the group of pictures designated for upload in any period (*i.e.*, without regard to a specified time) *without* such fees. The system avoids potentially increased cellular network access fees, such as fees associated with data roaming, but without the need for the user to set a timer or decide in advance a specific time for upload. When the conditions are met, the camera takes advantage of the opportunity to upload to the picture hosting service on the internet by immediately backing up valuable pictures. Applicant's disclosure at Paragraph 38 describes advantages of such a system while traveling:

7

In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed *to automatically initiate a connection to the internet*, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc). Once the transmittal of the pictures is complete, the inventive camera system preferably terminates the connection. Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., *so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc*....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (*when he is on vacation*, for instance), etc. *In this way, valuable pictures are immediately backed-up* and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

As explained in the information disclosure statement provided herewith, none of the references of record discloses or suggests "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees." Furthermore, none of the references describes, as a condition for upload, that the controller determines "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met. Thus, all of the pending claims are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family.

The remaining dependent claims are allowable as depending from the allowable independent claim and for their own additional limitations.

Applicant believes that no new matter has been added. In addition, Applicant has taken care to prepare the claims in a manner that does not fall within 35 U.S.C. Section 112, Para. 6. Specifically, Applicant has undertaken to draft the claims in a manner that recites structure, material, or acts in support of the various operations. Applicant requests that the Examiner inform Applicant if he believes that any claim falls within 35 U.S.C. Section 112, Para. 6, so that appropriate amendments can be made.

8

CEV-0015418

Applicant has also taken care to prepare the claims in compliance with 35 U.S.C. § 101 requiring claims to be directed to specific patentable subject matter. Applicant requests that the Examiner inform Applicant if he believes any claim is directed to any unpatentable subject matter so that appropriate amendments can be made.

Applicant also expressly reserves the right to swear behind and antedate art references (including those references identified in the various Information Disclosure Statements filed herein) pursuant to 37 C.F.R. § 1.131.

In view of the above, Applicant believes that claims 21-28 are in condition for allowance. If the Examiner has any questions or believes an interview would expedite prosecution of this case, please contact the undersigned.

Respectfully Submitted,

/Justin J. Lesko/

Justin J. Lesko
Reg. No. 69,643

Dated: October 25, 2019

Law Offices of Steven G. Lisa, Ltd.
55 East Monroe Street Suite 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

9

CEV-0015419