# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| CUTTING EDGE VISION, LLC | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:22-CV-00285-ADA |
| TCL TECHNOLOGY GROUP CORPORATION, TCL ELECTRONICS HOLDINGS LIMITED, TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, and TCL COMMUNICATION LIMITED | § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | | |

## DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS\

                                                                                                                        Page

I.     "controller" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ........................................ 1

        A.     Section 112 ¶6 Applies to the "Controller Configured to" Context ........................ 1

        B.     The Specification Fails to Disclose Corresponding Structure to Perform the Claimed Functions .................................................................................................. 3

II.    "instructs" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ......................................... 3

III.   "the device" ('761 Patent – Claim 1) ................................................................................ 4

IV.   "periods without potential cellular network access fees" ('761 Patent-Claim 1) ............. 6

V.    "upload … pictures …" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ..................... 8

VI.   "indication from the local memory" ('761 Patent – Claim 1) ........................................... 8

VII.  "group of … pictures" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5) ....................... 8

VIII. "periods without potentially increased cellular network access fees" ('472 Patent – Claims 1, 5) ........................................................................................................................ 9

IX.   CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
  919 F.3d 1320 (Fed. Cir. 2019) ................................................................................................5

*Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.*,
  2019 WL 497902 (E.D. Tex., February 7, 2019) ................................................................2, 3

*Catalina Marketing Intern. Inc. v. Coolsavings. com, Inc.*,
  289 F. 3d 801 (Fed. Cir. 2002), ................................................................................................5

*EPOS Techs. Ltd. v. Pegasus Techs., Ltd.*,
  766 F.3d 1338 (Fed. Cir. 2014) ................................................................................................7

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
  349 F.3d 1373 (Fed. Cir. 2003) ............................................................................................5, 6

*Honeywell Intern., Inc. v. Int'l Trade Comm'n*,
  341 F.3d 1332 (Fed. Cir. 2003) ................................................................................................6

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ............................................................................................6, 9

*Kara Tech., Inc. v. Stamps.com, Inc.*,
  582 F.3d 1341 (Fed. Cir. 2009) ................................................................................................7

*Maxell, Ltd. v. Amperex Tech. Ltd.*,
  No. 21-CV-347-ADA, 2022 WL 16858824 (W.D. Tex., Nov. 10, 2022) ............................5, 8

*Nautilus Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) .................................................................................................................5

*Novo Indus., L.P. v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed. Cir. 2003) ................................................................................................5

*Rain Computing, Inc. v. Samsung Electronics America, Inc.*,
  989 F.3d 1002 (Fed. Cir. 2021). Dkt. 45 ..................................................................................2

*True Chem. Sols., LLC v. Performance Chem. Co.*
  18-cv-78-ADA (W.D. Tex. Sept. 25, 2019) .............................................................................2

*Versata Software Inc. v. Zoho Corp.*,
  213 F. Supp. 3d 829 (W.D. Tex. 2016) ....................................................................................5

Defendants' reply to CEV's proposed claim constructions is set forth below.

I.  **"controller" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)**

   A.  **Section 112 ¶6 Applies to "Controller Configured to" in Context**

CEV admits that the presumption that §112 ¶6 does not apply to a claim limitation when the word "means" is not used is <u>rebuttable</u>. *See* Dkt. 45 at 3. The claim limitation in context is a "controller configured to" perform certain functions (*e.g.*, "receive … a user selection of an upload option that instructs the device to confine automatic picture upload to periods without potential cellular network access fees"). *See* '761 patent at 16:65-17:17. Regardless of whether "controller" is construed to be structure (*e.g.*, a microprocessor) as CEV argues, the presumption is overcome here because the claim term "recites function without reciting <u>sufficient</u> structure for performing that function." *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1348 (2015) (emphasis added).

CEV argues that that the disclosed structure is sufficient because the controller is a microprocessor and "the 'controller' is configured to communicate with the touch sensitive display, memory, and cellular interface." Dkt. 45 at 4. None of those devices, either together or alone, can perform the functions that the controller is "configured to" do without an algorithm.[1] *See* Dkt. 45-1 at ¶49. The Federal Circuit has "consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor. * * * We

---

[1] The two patents and RSC-164i processor CEV relied on through incorporation by reference have not shown to be programed to perform the recited functions and appear to be used in other contexts. *See* Dkt. 45, n3; Dkt. 45-1 at ¶¶41-42. [2] *Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.,* 2019 WL 497902 (E.D. Tex. Feb. 7, 2019) was decided prior to the Federal Circuit's decision in *Rain*. It is inconsistent with the principles stated in *Rain* and therefore not good law. In any event, it is not controlling precedent for this Court. *Barkan* also relied on Federal Circuit precedent decided prior to *Williamson*, which changed the law and rendered prior decisions regarding specific claim terms suspect. *True Chem. Sols., LLC v. Performance Chem. Co.*, 18-cv-78-ADA at 11-13 (W.D. Tex. Sept. 25, 2019) is inapposite because the claim term at issue there was a "controller in communication with each pump," not a controller "configured to" perform certain functions, which rebuts the §112 ¶6 presumption. *Flypsi, Inc. v. DialPad, Inc.*, 2022 U.S. Dist. LEXIS 149866, at *18 (W.D. Tex. 2022) did not construe controller and instead referred to the *Barkan* decision.

require that the specification disclose an algorithm for performing the claimed function. * * * [T]he algorithm may be expressed as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Williamson*, 792 F.3d at 1352.

There is no merit to CEV's attempt to distinguish *Rain Computing, Inc. v. Samsung Electronics America, Inc.*, 989 F.3d 1002 (Fed. Cir. 2021). Dkt. 45 at 3. In *Rain,* the Court held that "a user identification module *configured to*" perform specific functions was a means-plus-function limitation because it conveyed no structure for performing those functions. *Id*. The Court stressed that the phrase "configured to" was sufficient to invoke §112 ¶6 because "the purely functional claim language reciting what the 'user identification module' is configured to do provides no structure." 989 F.3d at 1006. For support, the Court cited another decision in which it had construed "a mechanical control assembly ... configured to actuate ..." as a means-plus-function limitation. *Id.*, citing *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1343 (Fed. Cir. 2019). The Court ultimately held that the claim was indefinite because the disclosure of computer-readable media or storage devices was not sufficient in the absence of the disclosure of an algorithm. *Rain*, 989 F.3d at 1007, 1008. The same is true here.

There is no merit to CEV's reliance on the cases it cites on page 2 of its brief under the sub-heading "Means-Plus-Function." Each case either preceded and is inconsistent with the Federal Circuit decisions in *Williamson* or *Rain* or is factually distinguishable.[2] Further as this

---

[2] *Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.,* 2019 WL 497902 (E.D. Tex. Feb. 7, 2019) was decided prior to the Federal Circuit's decision in *Rain*. It is inconsistent with the principles stated in *Rain* and therefore not good law. In any event, it is not controlling precedent for this Court. *Barkan* also relied on Federal Circuit precedent decided prior to *Williamson*, which changed the law and rendered prior decisions regarding specific claim terms suspect. *True Chem. Sols., LLC v. Performance Chem. Co.*, 18-cv-78-ADA at 11-13 (W.D. Tex. Sept. 25, 2019) is inapposite because the claim term at issue there was a "controller in communication with each pump," not a controller "configured to" perform certain functions, which rebuts the §112 ¶6 presumption. *Flypsi, Inc. v. DialPad, Inc*., 2022 U.S. Dist. LEXIS 149866, at *18 (W.D. Tex. 2022) did not construe controller and instead referred to the *Barkan* decision.

2

Court stated in *MonkeyMedia, Inc. v. Apple, Inc.*, the "mere fact a similar or even identical term has been construed one way in a given patent does not control construction in a later suit over an entirely different patent." 2013 WL 12076550, at *5 (W.D. Tex. Feb. 22, 2013).

CEV cites no authority to support its argument that its statement in the prosecution history that it did not intend for its claim limitations to be construed as means-plus-function is relevant in claim construction. *See* Dkt. 45 at 5. Indeed, even an examiner's statement to that effect would not save a claim term from being construed under §112 ¶6 if such a construction were otherwise justified. *See Rain*, 989 F.3d at 1006 ("To the extent the examiners … understood that a means-plus-function term cannot be nested in a method claim, they were incorrect.").

### B. The Specification Fails to Disclose Corresponding Structure to Perform the Claimed Functions

CEV reiterates its argument that the display, memory, cellular interface and camera system "all work together with the 'controller' to carry out the purported 'functions' that TCL challenges." Dkt. 45 at 6. But CEV's proposed expert admitted that the recited hardware cannot perform those functions unless the microprocessor is programmed with an algorithm to do so. *See* Dkt. 45-1 at ¶49. Because the patent specification does not disclose an algorithm or equivalent for performing the recited functions, this claim limitation is indefinite. *See* Dkt. 44 at 6-7.

## II. "instructs" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)

CEV argues that "an option is not passive," then admits that an option "is something that is selected"—*i.e.*, a purely passive function. *See* Dkt. 45 at 7. The evidence cited by CEV at best shows that a user—not the selected option (if any)—provides an instruction because a passively selected item cannot actively instruct.[3] *See id.*; Dkt. 45-1 at ¶¶50-64. Thus, the term "instruct" is indefinite in the context of the claims.

---

[3] The same error applies to claim 5 of the '472 patent because passive user input data does not instruct. *See* Dkt. 45, n.6.

3

### III.   "the device" ('761 Patent – Claim 1)

CEV concedes that the term "the device" lacks antecedent basis. *See* Dkt. 45 at 7. Defendants explained in their opening brief that "the device" could be several different structures disclosed in the specification. *See* Dkt. 44 at 8-10. It is not Defendants' burden to identify which of those structures *is* "the device," and CEV failed to demonstrate that the only reasonably ascertainable possible meaning of "the device" is the "camera system." *See id.* at 9.

First, CEV argues that "the recited operation for 'the device' is 'to confine automatic picture upload to periods without potential cellular network access fees,' and the user selection of an upload option '*instructs* the device' to carry out that operation." *See id.* at 7-8 (emphasis in original). However, the claim describes that operation in connection with "a controller" is similarly situated as the "camera system." *See* '761 patent at 16:65-17:17. CEV also admits that "the device" can be a "camera," which is different from the "camera system." *See* Dkt. 45 at 8. Thus, "the device" could refer at least equally to the controller, the camera, or the camera system, and there is nothing to inform a POSITA whether the recited operation must be performed by the controller or can be performed by another device within the camera or camera system.

Second, CEV argues that its response to the USPTO's enablement objection regarding then claim 21 happened to include the word "device." *See* Dkt. 45 at 9. However, then claim 21 not only was not described as confining picture uploading to periods without cellular network access fees but also recited using a "WIFI interface" to upload pictures. *See* Dkt. 45-5 at CEV-0030673-74. It was a different "device." Thus, the prosecution history sheds no light on what the "device" of claim 1 refers to.

Third, CEV argues that the claims of the '472 patent support its rewritten scope of "the device" in claim 1 of the '761 patent. *See* Dkt. 45 at 9. The word "device," however, does not appear in the '472 patent claims. Further, the claims are different in scope: claim 1 of the '761 patent limits automatic uploading to "periods without potential network access fees," while claims

4

1 and 5 of the '472 patent limit automatic uploading to "periods without potentially increased cellular network access fees." *Compare* '761 patent at 16:67-17:2 *with* '472 patent at 17:15-19, 18:13-15. CEV admits that the two recited "periods" are different. *Compare* Dkt. 45 at 10-14 *with id*. at 18-20. CEV cites no case law supporting the proposition that a claim term in one patent should be interpreted to mean the same thing as a different term in a related patent. Different terms in different claims are presumed to have *different* meanings. *See Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.,* 533 F.3d 1362, 1371 (Fed. Cir. 2008). CEV knew how to use a specific claim term to define the corresponding scope but chose not to do so here, thus supporting a conclusion of indefiniteness. *See Maxell, Ltd. v. Amperex Tech. Ltd.*, No. 21-CV-347-ADA, 2022 WL 16858824, at *21 (W.D. Tex., Nov. 10, 2022) ("But, despite knowing how to draft a claim that allow for two options, both of which could have included Co, Plaintiff chose not to do so for this claim term, thus supporting the Court's conclusion of indefiniteness.").

Lastly, because the term "camera system" only occurs in the preamble of claim 1 of the '761 patent, CEV is effectively forcing the preamble to be limiting so that it can provide the antecedent basis "the device" term lacks. The preamble here, however, is not limiting because the body of claim 1 recites a "structurally complete invention," including a lens, a cellular interface, an image sensor, a non-volatile memory, a touch sensitive display, and a controller configured to automatically upload designed pictures during periods without potential cellular network access fees. *See Catalina Marketing Intern. Inc. v. Coolsavings. com, Inc.*, 289 F. 3d 801, 808 (Fed. Cir. 2002). Given that the preamble merely introduces a camera system that comprises these recited structures but nothing more, it does not recite any essential structure that is not positively recited in the claim itself. *See Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1329 (Fed. Cir. 2019).

What CEV asks the Court to do is not to correct a "clerical error" as it contends, *see* Dkt. 45 at 10, because the meaning of the claim language is subject to reasonable debate based on

5

consideration of the intrinsic record. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003). Thus, in fact, CEV is asking the Court to rewrite the claim in order to assign meaning that is not apparent from the claim language itself. This the Court may not do.

**IV.   "periods without potential cellular network access fees" ('761 Patent-Claim 1)**

CEV cannot explain away the fact that the term is context-dependent, which makes it indefinite. CEV's reliance on the distinction between system and method claims is misplaced, *see* Dkt. 45 at 10-11, 13, because courts have found claim terms in apparatus/system claims to be indefinite. *See, e.g.*, *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014); *Versata Software Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829 (W.D. Tex. 2016).

There is no merit to CEV's argument that the word "potential" somehow shows that the claim is "user and plan *independent*." *See* Dkt. 45 at 13 (emphasis in original). Regardless of the word "potential," the same phone may infringe or not infringe the claims depending on the cellular network plan for which the phone is configured, which is the "epitome of indefiniteness." *See Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) (claim indefinite because "a given embodiment would simultaneously infringe and not infringe the claims, depending on the particular bacteria chosen for analysis"); *Honeywell Intern., Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1337 (Fed. Cir. 2003). In *Halliburton Energy Servs., Inc. v. M-I LLC*, the Federal Circuit held that the claim limitation "fragile gel" was indefinite because a skilled artisan "would not know from one well to the next whether a certain drilling fluid was within the scope of the claims because a wide variety of factors could affect adequacy." 514 F.3d 1244, 1254-55 (Fed. Cir. 2008). This case is like *Halliburton* because a POSITA would not know from one phone to the next whether that phone was configured to upload pictures during the required period due to each phone's different cellular network plan. *See id.* at 1255 (when "proposed construction requires that an artisan make a separate infringement determination for every set of circumstances … and when such determinations are likely to result in differing outcomes

(sometimes infringing and sometimes not), that construction is likely to be indefinite.").

Further, adding the term "potentially" into the mix renders the claim indefinite. The arguments below relating to a similar term—"periods without potentially increased network access fees"—apply here as well. *Infra*, § VIII. The intrinsic record does not provide guidance on the meaning of *potentially* not having network access fees. Because of the unknown and undefined "potentiality" of not charging fees, a POSITA is not on notice of the metes and bounds of the claims. *See Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1374 (Fed. Cir. 2014) (requiring "clear notice of what is claimed, thereby appris[ing] the public of what is still open to them" for definiteness).

Although CEV initially stated that this term should have its plain and ordinary meaning, CEV now tries to limit the term to mean "times and situations when the customer is not being charged a data upload fee." *See* Dkt. 45-1 at ¶95. CEV relies on examples of avoiding roaming fees to support its narrow construction. *See* Dkt. 45 at 11-12. However, "network access fees" are not limited to "data upload fees" or "data roaming fees." CEV's attempt to limit the scope of the claims by importing limitations from both the intrinsic record and other patents is contrary to well-settled claim construction principles. *See, e.g., Kara Tech., Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *EPOS Techs. Ltd. v. Pegasus Techs., Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014). Thus, the Court should ignore CEV's strained attempt to save this term from indefiniteness.

CEV is unable to propose a credible claim construction because the claim term is confusing and ambiguous to a POSITA in view of the specification: periods with a complete absence of fees or just something cheaper? CEV tries to dismiss the apparent contradiction with an attorney argument that "cheaper network access" can encompass the complete absence of fees. *See* Dkt. 45 at 12-13. CEV's argument, which is without expert support, is illogical and not supported because when a network provider provides "cheaper network access," it still provides network

7

access service to make money - not for free. *See* '761 patent at 14:31-35; Dkt. 44 at 11; Dkt. 44-1 at ¶52.

## V. "upload … pictures …" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)

CEV appears to agree that this term covers uploading a set of pictures where only one or more pictures from the set have been designated for uploading. *See* Dkt. 45 at 14-15; Dkt. 45-1 at ¶¶132-133. CEV's expert opines that the "camera system *preferably* includes the ability for the user to indicate to the camera which pictures to offload so that the camera offloads only those pictures that are so indicated by the user." Dkt. 45-1 at ¶142 (emphasis in original). His phrasing suggests that the claim also covers non-preferred situations in which the camera uploads pictures that were *not* selected by the user. However, the specification does not describe any such situations. *See id*. at ¶¶142-146. The claim term is ambiguous because it is unclear whether the proper scope of the term is to upload *only* designated pictures *or* to cover uploading pictures that are not designated (and, if so, which ones). *See* Dkt. 44 at 13.[4]

## VI. "indication from the local memory" ('761 Patent – Claim 1)

CEV's response focuses on the word "indication" in isolation and fails to rebut the ambiguity surrounding "indication from the local memory" as a whole. *See* Dkt. 45 at 15-16. CEV seems to suggest that "indication" means "some sort of proof in the form of an electronic signal of a met condition." Dkt. 45 at 16. CEV does not explain how such an indication can come from memory. As commonly understood, memory stores data and does not send "indications." Dkt. 44 at 14. Nothing in the specification explains this claim term. It is ambiguous.

## VII. "group of … pictures" ('761 Patent – Claim 1; '472 Patent – Claims 1, 5)

CEV's response confirms Defendants' point that "group of … pictures" is amorphous,

---

[4] CEV's reliance on the *Maxell* case is inapposite. *See* Dkt. 45 at 15. The *Maxell* court, in a footnote, expressed its reservation that the defendant there was arguing that a particular chemical compound was not expressly recited in the specification. In contrast, the issue here is a POSITA's uncertainty about the proper scope of a claim term in view of the specification.

uncertain, and without guidance on how to determine which pictures are part of the "group." *See* Dkt. 45 at 17 ("the group contains at least one picture designated through the specified process in the claim, the group can include additional pictures that are not necessarily designated through the specified process in the claim, and the group can (but is not required to) include every picture in the local memory at the time the upload occurs."). The ambiguity is compounded by the lack of antecedent basis for "<u>the</u> group of pictures" in the claims of the '761 patent. CEV argues that the antecedent basis is found in the phrase "upload of one or more pictures stored in the non-volatile memory," Dkt. 45 at 18, but that phrase does not use the term "group" or describe forming photos into a group.

**VIII. "periods without potentially increased cellular network access fees" ('472 Patent – Claims 1, 5)**

CEV's arguments ignore the contextual nature of this disputed term, which is indefinite for the reasons explained above in section IV—*i.e.*, because whether there are "potentially increased cellular network access fees" depends on the cellular network carrier and the particular plan to which the phone is subscribed.

CEV now retreats from its "plain and ordinary meaning" proposal and attempts to limit the term to mean "times and situations when the customer is not being charged a data upload fee above and beyond their normal data upload fee." *See* Dkt. 45 at 19; Dkt. 45-1 at ¶106. This new definition, which imports limitations from the prosecution history and other patents, violates well settled claim construction principles. *See supra*, § IV. Further, CEV's definition refers to the "normal data upload fee," which itself depends on a phone's cellular network plan. The phrase "normal data upload fees" is also vague and ambiguous and does not provide a meaningfully precise claim scope. For example, is it a normal fee for a month, a week, a year, or something else? Is it a normal fee for a particular provider or all providers? What if a plan provides for a range of upload fees that apply under different conditions? CEV's own construction demonstrates

the indefiniteness of this term.

Further, adding the term "potentially" to the term "increased cellular network access fees" renders the claim indefinite. *See* Dkt. 45 at 20. The term suggests that there is uncertainty about whether increased access fees will apply, with no guidance on what might cause the uncertainty or how to resolve it. The intrinsic record also provides no guidance on (1) what are the situations where increased fees might *potentially* happen or (2) how to measure the *potential* increase in fees and compare them to the supposedly "normal" fees. *See* Dkt. 44 at 15-16; Dkt. 44-1 at ¶65. Because the patentee chose to claim some future unknown and undefined "potential" increase in fees, a POSITA is not on notice of the metes and bounds of the claims. *See Interval Licensing*, 766 F.3d at 1374. Courts have found that adding similar terms, such as "generally," to a limitation renders a claim indefinite in similar conditions. For example, in *Acorn Semi, LLC v. Samsung Electronics Co., Ltd.*, the court considered the term "generally dependent" in a claim limitation that recited a "specific contact resistance that is generally dependent on the work function of the conductor." No. 2:19-cv-00347-JRG, 2020 WL 6136847, *17 (E.D. Tex. Oct. 16, 2020). The court found that the term was an indefinite term of degree because the specification did not "provide sufficient guidance for determining the degree." *Id.* at *18. The court noted that that "there is no description of what it means for the height to 'generally depend' on any characteristic" and found that while the concepts of "independent" and "dependent" are distinct from each other, the "the import of 'generally' is not clear from this distinction." *Id.* at *18–19. Here, like the term "generally dependent" in *Acorn*, the term "potentially" in the phrase "increased … fees" results in indefiniteness because there is a lack of guidance on the degree of "potentiality" covered by the claims.

### IX. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court construe the above-identified terms in accordance with Defendants' proposals by finding them to be indefinite.

10

| | |
|---|---|
| Dated: December 27, 2022 | Respectfully submitted, |

By: _/s/ Mark D. Siegmund_

**Steckler Wayne Cherry & Love PLLC**
Gregory Phillip Love
P.O. Box 948
Henderson, TX 75653
Telephone: (903) 212-4444
Fax: (903) 392-2267
Email: greg@swclaw.com

Mark D. Siegmund
8416 Old McGregor Rd.
Waco, TX 76712
Telephone: 254-651-3690
Fax: 254-651-3689
Email: mark@swclaw.com

**RIMON P.C.**
Thomas Fawell
Texas State Bar No. 24118098
700 Milam Street, Suite 1300
Houston, TX 77002
Telephone/Facsimile: (832) 404-2051

Jason Liang Xu (*PHV admitted*)
DC Bar No. 980531
1990 K Street NW, Suite 420
Washington, D.C. 20006
Telephone/Facsimile: (202) 470-2141

Eric Cohen (*PHV admitted*)
2530 Meridian Parkway, #300
Durham, North Carolina 27713
Telephone/Facsimile: (919) 241-7495

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a copy of the above-referenced document on the December 27, 2022, via electronic mail upon all counsel of record.

                                              /s/ *Mark D. Siegmund*
                                              Mark D. Siegmund