# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| CUTTING EDGE VISION, LLC<br><br>    Plaintiff,<br><br>v.<br><br>TCL TECHNOLOGY GROUP CORPORATION, TCL ELECTRONICS HOLDINGS LIMITED, TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, and TCL COMMUNICATION LIMITED<br><br>    Defendants. | Case No. 6:22-CV-00285-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. "controller" ('761 Pat.: 1; '472 Patent: 1, 5). ....................................................... 1

    1. Section 112 ¶6 Does Not Apply. ...................................................................... 1

    2. The Specification Discloses Structure to Perform the Function ................. 2

II. "instructs" ('761 Pat.: 1; '472 Pat.: 1, 5) ............................................................... 3

III. "the device" ('761 Pat.: 1). ..................................................................................... 3

IV. "periods without potential cellular network access fees" ('761 Pat.: 1) ........... 5

V. "upload … pictures …" ('761 Pat.: 1; '472 Pat.: 1, 5) ......................................... 7

VI. "indication from the local memory" ('761 Pat.: 1). ........................................... 8

VII. "group of … pictures" ('761 Pat.: 1; '472 Pat.: 1, 5) .......................................... 8

VIII. "periods without potentially increased cellular network access fees" ('472 Pat.: 1, 5) ................................................................................................. 9

## TABLE OF AUTHORITIES

**Cases**

*Acorn Semi, LLC v. Samsung Electronics Co., Ltd.*,
   No. 2:19-cv-00347-JRG, 2020 WL 6136847 (E.D. Tex. Oct. 16, 2020). .......................... 10

*ACTV, Inc. v. Walt Disney Co.*,
   346 F.3d 1082 (Fed Cir. 2003) ......................................................................................... 7

*Barkan Wireless IP Holdings, L.P. v. Samsung Elecs. Co.*,
   2019 U.S. Dist. LEXIS 20394 (E.D. Tex. Feb. 7, 2019) ...................................................... 1

*Dyfan, LLC v. Target Corp.*,
   28 F.4th 1360 (Fed. Cir. 2022). ................................................................................... 1, 2

*E.I. du Pont de Nemours & Co. v. Unifrax I LLC*,
   921 F.3d 1060 (Fed. Cir. 2019) ........................................................................................ 4

*Flypsi, Inc. v. Dialpad, Inc.*,
   2022 U.S. Dist. LEXIS 149866 (W.D. Tex. 2022).............................................................. 1

*Function Media, L.L.C. v. Google, Inc.*,
   708 F.3d 1310 (Fed Cir. 2013). ........................................................................................ 2

*In re Downing*,
   754 F. App'x 988 (Fed. Cir. 2018) ................................................................................... 9

*Maxell, Ltd. v. Amperex Tech. Ltd.*,
   No. 21-CV-347-ADA, 2022 U.S. Dist. LEXIS 204753,
   (W.D. Tex., Nov. 10, 2022) .............................................................................................. 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)......................................................................................................... 7

*Rain Computing, Inc. v. Samsung Electronics America, Inc.*,
   989 F.3d 1002 (Fed. Cir. 2021) ........................................................................................ 1

*Traxcell Tech., LLC v. Sprint Comm'n Co. LP*,
   15 F.4th 1121 (Fed. Cir. 2021). ........................................................................................ 2

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015). ............................................................................... 1, 2, 3

*WMS Gaming, Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999). ....................................................................................... 2

I.   **"controller" ('761 Pat.: 1; '472 Patent: 1, 5)**

   **1.   Section 112 ¶6 Does Not Apply.**

CEV's Responsive Claim Construction Brief ("CEV's Response") corrected TCL's initial mischaracterization of *Rain Computing, Inc. v. Samsung Electronics America, Inc.* 989 F.3d 1002 (Fed. Cir. 2021) by showing that the term "controller" was not at issue there, and instead, *Rain* held that "module" is a well-known nonce word. *See* Dkt. # 45 at 3-4.

In response, TCL again mischaracterizes *Rain,* which did not "stress" that the phrase "configured to" invokes §112 ¶6. *See* Dkt. #46 at 2. Rather, *Rain* held "configured to" was *not* sufficient to *remove* from §112 ¶6 a claim term that used the nonce word "module" with "purely functional claim language . . . that provides no structure." 989 F.3d at 1006. Thus, *Rain* did not hold that "configured to" was sufficient to convert an otherwise well-known class of structures such as "a controller" into a "nonce" word like "module." TCL's reliance on *Rain* to distinguish relevant "controller" precedents fails.[1]

TCL also continues to crop structure from the claims, and then incongruously argues that the presumption against §112 ¶6 is overcome because the structure TCL cropped is no longer there. *See, e.g.,* Dkt. #46 at 1. TCL's decision to crop/ignore additional structure recited in the claims is yet another reason TCL fails to overcome the §112 ¶6 presumption. *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1369 (Fed. Cir. 2022).

TCL also argues, "None of those devices, either together or alone, can perform the

---

[1] CEV's cases recognize "controller" as a known class of structures and not a "nonce" word. Dkt. #45 at 2. *Barkan* is not inconsistent with *Rain* or *Williamson,* because *Barkan* addresses a different term: "controller" (not "module"). *Flypsi* expressly relied upon *Barkan*, concluding: "the term 'switch' is analogous to the 'controller' in that both represent broad and varied classes of structures." *Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-CV-642-ADA, 2022 U.S. Dist. LEXIS 149866, at *18 (W.D. Tex. 2022). CEV does not rely on "the mere fact" that these cases hold "controller" is a structure; CEV also relies on testimony of Dr. Hughes. Dkt. #45-1 at ¶¶35-48.

functions that the controller is 'configured to' do without an algorithm." Dkt. #46 at 1 (*citing* Dkt. #45-1 ¶49). TCL mischaracterizes Dr. Hughes's declaration at ¶49: it never mentions an "algorithm." Moreover, no claim recites an algorithm, and whether the specification discloses an algorithm is not an issue in step one of the 112 ¶6 analysis. *Dyfan*, 28 F.4th at 1367-69.

TCL fails to provide any cogent response to CEV's arguments, cited law, or Dr. Hughes's testimony (or its own expert's admission) that a controller is a well-known class of structures, not a nonce word. Dkt. #45-1 at ¶¶35-48. This ends the §112 ¶6 analysis.

**2. The Specification Discloses Structure to Perform the Functions.**

TCL's arguments on the second half of the §112 ¶6 analysis are without merit. First, all of TCL's arguments relating to an "algorithm" are premised on the assertion that "CEV's proposed expert admitted that the recited hardware cannot perform those functions unless the microprocessor is programmed with an algorithm to do so. See Dkt. 45-1 at ¶49." Dkt. #46 at 3. In fact, Dr. Hughes makes no such admission and never mentions an "algorithm," and TCL makes no effort to show that the claim recites an algorithm.

Second, TCL's "algorithm" case law is off-point. In *WMS*, the claim expressly recited an algorithm without structure. *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999). In *Function Media*, the parties agreed the term was "a piece of software." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1317 (Fed Cir. 2013). In *Traxcell*, the "function" recited complex data analysis operations and the only "structure" disclosed was an algorithm. *Traxcell Tech., LLC v. Sprint Comm'n Co. LP*, 15 F.4th 1121, 1128, 1134 (Fed. Cir. 2021). In *Williamson*, the court held the "module cannot be implemented in a general purpose computer, but instead must be implemented in a special purpose computer." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015). TCL made no effort to show those facts exist here.

## II. "instructs" ('761 Pat.: 1; '472 Pat.: 1, 5)

TCL wrongly asserts that the claims require a "passively" selected item to "actively" instruct. Dkt. #46 at 3. But, the claims do not recite "active" or "passive." TCL fails to rebut the testimony of Dr. Hughes (and admissions by TCL's expert) establishing that a user selection of an option in fact *does* serve to instruct. Dkt. #45-1 at ¶¶55-66. TCL's belated argument for '472 Patent claim 5 (which does not recite "option") is illogical and fails for the same reasons.

## III. "the device" ('761 Pat.: 1)

TCL's conclusion for "the device" tacitly admits that the Court can indeed correct "the device" to "the camera system" when the claim's meaning is not "subject to reasonable debate based on consideration of the intrinsic record." Dkt. #46 at 5-6. That is exactly the situation here: the only possible conclusion from the intrinsic record (including overwhelming evidence in the specification *and* prosecution history) is that "the device" is "the camera system." TCL identifies *nothing* in the intrinsic record indicating that "the device" refers to another claim element.

TCL provides no rebuttal to CEV's explanation that the '761 Patent at 12:64-13:1 (cited as claim support) describes directly that the "camera system" is *in fact* the device that carries out the claimed operation "to confine automatic picture upload." Dkt. #45 at 8, Dkt. #45-1 at ¶¶70-73.

In response to CEV's proof that the specification describes only the camera system as the device "instructed" consistent with the claim (Dkt. #45 at 8, Dkt. #45-1 at ¶¶74-75), TCL illogically complains that the reference to a "camera" is different from a "camera system." Dkt. #46 at 4. But, Dr. Hughes states they are the same (Dkt. #45-1 at ¶75), and the specification uses "camera" and "camera system" interchangeably.[2] Also, the claim recites a "camera system" but

---

[2] *See, e.g.*, '761 Patent at 5:26-32 ("[T]he voice recognition camera system … understand[s], for example, any of "shoot", "snap", "cheese", and a whistle to indicate to *the camera system* that a picture is to be taken. In another example, perhaps the phrase and word "watch the birdie" and "click" instruct *the camera* to take the picture.")

does not separately refer to a "camera" in any element. Thus, TCL's unsupported argument requires the Court to dismiss Dr. Hughes's testimony and interpret "the device" as introducing a new element, "the camera," which is somehow different from the already recited antecedent "camera system." TCL's interpretation is not credible and does not raise any *reasonable* debate.

TCL argues "the claim describes that operation in connection with 'a controller' [*sic*] is similarly situated as the 'camera system.'" TCL again ignores that the specification describes only the camera system: (1) operating to confine automatic picture upload, and (2) being "instructed." Dkt. #45 at 7-9, Dkt. #45-1 at ¶¶70-75. TCL also fails to present any evidence whatsoever that a POSITA would conclude the controller actually is "the device" recited in the claim.

The '472 Patent claims contain parallel language that correctly recites "the camera system" instead of "the device." Dkt. # 45 at 9. The parallel claims further prove that "the device" is "the camera system"[3] and that CEV is entitled to that claim scope. TCL tries to dismiss the point by arguing about differences in the '472 and '761 Patent claims. Dkt. #46 at 4-5. However, even TCL treats the "parallel" claim terms of the '472 and '761 Patents together in its claim construction charts, proving there are no claim differences relevant to this issue. TCL also argues the parallel claims show that "CEV knew how to use a specific claim term to define the corresponding scope but chose not to do so here." *Id.* at 5. That argument is illogical because use of "the device" in the claim is admittedly a drafting error: CEV did not "choose" the error (but the meaning of "the device" is understandable *despite* the error).

Next, TCL tries to undermine CEV's reference in the prosecution history to "the device" as the "camera system" by asserting the then-pending claim was not *exactly* '761 Patent claim 1. Dkt. #46 at 4. TCL misses the point: CEV described during prosecution the claimed "camera

---

[3] Related patents with common subject matter are considered intrinsic evidence. *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1070-71 (Fed. Cir. 2019).

system" (that included many of the same elements) as "*the device* claimed," adding to uncontradicted intrinsic evidence that "the device" is "the camera system." Dkt. #45-1 at ¶76-78.

Finally, TCL attempts to bolster its weak position by raising a belated, ninth construction argument that CEV "forc[es] the preamble to be limiting." Dkt. #46 at 5. However, TCL never made that argument for the '472 claims, and regardless of whether or not the preamble is limiting, the uncontradicted intrinsic evidence shows that "the device" is the "camera system."

## IV. "periods without potential cellular network access fees" ('761 Pat.: 1)

TCL misdirects focus to end-user plans rather than the claimed system. CEV does not assert method claims or assert that TCL induces customers to infringe by using TCL's systems. Rather, TCL's systems directly infringe by including an option (if elected) that instructs the system to *not* automatically upload pictures during periods with potential cellular network access fees, allowing a user to choose to avoid the potential fees. Dkt. #45 at 12-13, Dkt. #45-1 at ¶100.

It is undisputed that a POSITA knows that potential network access fees exist for certain upload periods (*e.g.*, roaming). Dkt. #45 at 12-13, Dkt. #45-1 at ¶¶91-92. The claimed system provides an option that a user can elect to avoid known potential fees, without requiring the system manufacturer to know if the fees are *actually* incurred under *every* user's plan or *all* varied circumstances. The claim is worded specifically to remove the need for manufacturers to consider *each* user's plan details. Dkt. #45 at 13, Dkt. #45-1 at ¶100. TCL's statement that "the same phone may infringe or not infringe the claims depending on the cellular network plan" (Dkt. #46 at 6) is simply untrue. The determination for infringement is whether a system includes the user-selectable option, not whether every user needs to use it.

TCL compares this case to *Halliburton* and says, "[A] POSITA would not know from one phone to the next whether that phone was configured to upload pictures during the required period

due to each phone's different cellular network plan." *Id*. The comparison is inapt because TCL's statement is divorced from the claim, which does *not* refer to "whether [a] phone was configured to upload pictures during the required period." The question for a POSITA is whether a system includes the option, not whether the user selects it or pays fees. Dkt. #45-1 at ¶¶109-11.

TCL also argues (Dkt. #46 at 7, emphasis added): "The intrinsic record does not provide guidance on the meaning of *potentially not having* network access fees. Because of the unknown and undefined '*potentiality*' of *not charging fees*, a POSITA is not on notice of the metes and bounds of the claims." However, the claim does not refer to "potentially not having," "potentiality," or "not charging." TCL creates its own confusing misstatements rather than identifying anything confusing in the *actual* claim language. The claim language is clear on its face in context.

TCL argues that CEV departs from plain and ordinary meaning because "'network access fees' are not limited to 'data upload fees' or 'data roaming fees.'" Dkt. # 46 at 7. TCL also says that CEV "import[s] limitations from both the intrinsic record and other patents …." *Id*. Those statements are mischaracterizations.

Dr. Hughes concludes, from the plain meaning of the claim language in context, that the term "periods without potential cellular network access fees" refers to fees from picture *uploads* that exist only in certain periods. Dkt. #45-1 at ¶84. First, Dr. Hughes points out that the claim refers to *periods* without potential fees: in contrast to fixed monthly plan charges that do not vary from one upload *period* to the next (and therefore, cannot be avoided by confining uploads to certain periods). *Id*. at ¶84.b. Second, Dr. Hughes explains that the claim refers to "data from the cellular interface used by the controller to determine that the upload is allowed based on the selected upload option." Again, fixed monthly plan charges are not determined from information

received via the cellular interface. *Id.* at ¶84.c. Thus, the claim itself, in context, is self-limiting and refers to fees resulting from uploads, not fixed monthly plan charges. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of … terms").

TCL completely ignores context and asks the Court to consider three words in a vacuum, stating that "'*network access fees*' are not limited to 'data upload fees' or 'data roaming fees.'" Dkt. #46 at 7. Here, TCL ignores the very words TCL itself selected for construction "periods without potential cellular." TCL also fails to address context or identify any error by Dr. Hughes.

TCL also asserts that "cheaper network access," as described at 12:64-13:1, cannot encompass an absence of fees because a provider "provides network access … to make money - not for free." *Id.* at 7-8. This argument is irrelevant because it ignores that the claim in context refers to potential fees that may be incurred from *uploads* during certain *periods*, as explained above. Dkt. #45-1 at ¶84. The claim thus does not require the device to avoid all possible provider fees and is consistent with the specification at 12:64-13:1. Dkt. #45 at 12-13.

V. **"upload … pictures …" ('761 Pat.: 1; '472 Pat.: 1, 5)**

TCL's reply confirms that the parties and the experts *all* agree, from the plain language of the claims, that the controller is configured to upload a group of pictures that includes at least one picture designated through the specified process in each claim, but can also include additional pictures. Dkt. #46 at 8; Dkt. #45 at 16-17; Dkt. #45-1 at ¶¶126-29, 131-41;. Dkt. #44-1 at ¶56; Dkt. #45-8 at 194:6-195:3; Dkt. #44 at 12. That agreement meets and exceeds the requirement for a claim to "inform those skilled in the art about the scope of the invention with *reasonable* certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

With definiteness settled, TCL argues that the specification does not describe "situations

{CUEDVI/00003/00658027}                                        7

in which the camera uploads pictures that were not selected by the user." Dkt. #46 at 8. However, written description is not the subject of claim construction.[4] Dkt. #45 at 15. Moreover, TCL disregards the specification's many examples of uploading pictures *other than* those designated via the touchscreen as enumerated by Dr. Hughes. Dkt. #45-1 at ¶¶142-146.

## VI. "indication from the local memory" ('761 Pat.: 1)

TCL's unsupported attorney argument fails to mention or rebut Dr. Hughes's testimony that explains exactly how an indication can come from memory with specific reference to a block diagram and to the admissions of TCL's expert. *See*, Dkt. #45-1 at ¶¶147-59.

## VII. "group of … pictures" ('761 Pat.: 1; '472 Pat.: 1, 5)

CEV explained "the group contains at least one picture designated through the specified process in the claim, … can include additional pictures that are not necessarily designated through the specified process in the claim, and … can (but is not required to) include every picture in the local memory at the time the upload occurs." Dkt. #45 at 17, *citing* Dkt. #45-1. TCL calls this proof that the element is "amorphous, uncertain, and without guidance on how to determine which pictures are part of the 'group'" (Dkt. #46 at 8-9), but TCL fails to actually identify anything that is "amorphous" or "uncertain" about it. TCL does not meet its burden to prove indefiniteness.

As explained in Section V, everyone agrees on what the "group" includes based on plain meaning. CEV is not required to specify *exactly* how *every* picture becomes part of the group. Further, it is standard claim drafting to include the modifier "at least one" in a claim element.

Regarding antecedent basis in '761 Patent claim 1, CEV's Response (pp. 17-18) and expert (Dkt. #45-1 at ¶¶126-27) explained why a POSITA would understand that "the group" of element (f)(ii)(3) simply refers to the pictures stored in the local memory to be uploaded to the remote

---

[4] *Maxell, Ltd. v. Amperex Tech. Ltd.*, No. 21-CV-347-ADA, 2022 U.S. Dist. LEXIS 204753, at *46-47 (W.D. Tex., Nov. 10, 2022) applies: TCL focuses squarely on support, not indefiniteness.

picture hosting service in element (f)(ii). In response, TCL argues that (f)(ii) "does not [1] use the term 'group' or [2] describe forming photos into a group."[5] Dkt. #46 at 9.

TCL does not deny that the "one or more pictures" the controller is configured to upload (in element (f)(ii)) are properly characterized as a "group," consistent with the claim's later use of "group" (in (f)(iii)). Dkt. #45-1 at ¶¶126-27. Element (f)(ii) refers to the controller's ability to "cause an *upload* of one or more pictures … to *the remote picture hosting service*," and (f)(ii)(3) contains parallel language "the group … *to be uploaded to the remote picture hosting service*." Thus, there is no lack of antecedent basis: the reference to "one or more pictures" is the antecedent basis for "the group." Also, TCL does not explain why element (f)(ii) must describe "forming photos into a group." Element (f)(iii) already states "a user has elected an option to designate at least one picture" from the group. Repeating that in (f)(ii) would be redundant.

**VIII.    "periods without potentially increased cellular network access fees" ('472 Pat.: 1, 5)**

CEV does not repeat here its Section IV rebuttal to TCL's same arguments (Dkt. #46 at 9) for this term.[6] TCL's additional arguments specific to this disputed term are also incorrect.

First, the plain meaning of "increased" covers *any* increase above what is normal for an upload. Dkt. #45 at 19-20, Dkt. #45-1 at ¶116. TCL's reply that "[t]he phrase 'normal data upload fees' is… vague and ambiguous" is an off-point attorney argument that is wholly unsupported.

A POSITA knows that increased network access fees are potentially associated with certain uploads, such as in data roaming periods. Dkt. #45-1 at ¶¶91-92, 106, 113. To account for this and *remove* the need to consider plan-to-plan or user-to-user variations, the claims include an option

---

[5] TCL wrongly emphasizes form over substance. *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018) (no indefiniteness if "the claim apprises one of ordinary skill in the art of its scope").

[6] As with the term in Section IV, this term is not "plan-dependent" because the claims recite a system with a user-selectable option, and CEV does not depart from plain and ordinary meaning.

to avoid such periods of potentially increased fees. It does not matter, according to the claims, whether *every* user would ultimately be charged the fees (the phrase says "potentially") or whether the *normal* fee for an upload varies from one plan to another. Regardless of TCL's concocted scenarios, "potentially increased cellular network access fees" exist in upload periods (such as roaming periods), and the claim provides a user option to avoid them.

TCL also asserts that "potentially" in the claim introduces uncertainty and the intrinsic record provides no guidance as to "where increased fees might potentially happen" and "how to measure the potential increase." Dkt. #46 at 10. Again, TCL is wrong.

An advantage of the claimed system is that it does not require knowledge of an individual user's plan. TCL's alleged "uncertainty about whether increased access fees will apply" is instead claim language reflecting the reality that not all provider plans are the same. The claim accommodates plan variance by providing a user-selectable option referring to "periods without *potentially* increased cellular network access fees." TCL understands this and provides that same option for the same reason. Also, TCL's "no guidance" assertions are false: the intrinsic record includes data roaming as an example of a "period of potentially increased cellular network access fees" beyond normal fees. Dkt. #45 at 20. An exact "measurement" of the fee difference is not necessary for a POSITA to understand the claim language or that clear example.

Finally, TCL compares the disputed term to "generally dependent" in A*corn Semi, LLC v. Samsung Electronics Co., Ltd.*, No. 2:19-cv-00347-JRG, 2020 WL 6136847 (E.D. Tex. Oct. 16, 2020). But *Acorn* is not on point: "generally dependent" was held to leave open *how much* dependency is required. In contrast, a period either has some potential for increased fees or it has no potential: it is a binary "yes" or "no" decision, not a term of degree. The claim does not require determining an "amount" of potential or "amount" of increase. Dkt. # 46-1 at ¶¶114-116.

Respectfully submitted on January 9, 2023, by:

    /s/ *Justin J. Lesko*

Justin J. Lesko
IL Bar No. 6306428
*Admitted Pro Hac Vice*
Law Offices of Lisa & Lesko, LLC
55 East Monroe Street, Suite 3800
Chicago, IL 60603
Tel.: (774) 484-3285
JustinLesko@patentit.com

Steven G. Lisa
IL Bar No. 6187348
*Admitted Pro Hac Vice*
Law Offices of Lisa & Lesko, LLC
55 East Monroe Street, Suite 3800
Chicago, IL 60603
Tel.: (480) 442-0297
SteveLisa@patentit.com

Eamon Kelly
IL Bar No. 6296907
*Admitted Pro Hac Vice*
SPERLING & SLATER, PC
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
Tel.: (312) 641-3200
Fax: (312) 641-6492
ekelly@sperling-law.com

*Lead Counsel for Plaintiff*

*And*

*David N. Deaconson*
*Texas Card Bar #05673400*
*PAKIS, GIOTES, PAGE & BURLESON, P.C.*
*P.O. Box 58*
*Waco, TX 76703-0058*
*(254) 297-7300 Phone*
*(254) 297-7301 Facsimile*
*deaconson@pakislaw.com*
*Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

  A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 9th day of January 2023.

                */s/ Justin Lesko*
                Justin Lesko