```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
                     WACO DIVISION

CUTTING EDGE VISION, LLC,     )   Case No. 6:22-CV-00285-ADA
                              )
         Plaintiff,           )   **VIA ZOOM VIDEOCONFERENCE**
                              )
     v.                       )
                              )
TLC TECHNOLOGY GROUP CORP.,   )
ET AL.                        )
                              )
         Defendants.          )
                              )   Thursday, February 2, 2023
_____  )   11:03 A.M.
```

                    TRANSCRIPT OF MARKMAN HEARING
           **BEFORE THE HONORABLE DEREK T. GILLILAND**
                **UNITED STATES MAGISTRATE JUDGE**


APPEARANCES VIA ZOOM VIDEOCONFERENCE:

For the Plaintiff:        Pakis, Giotes, Page & Burleson
                          BY: DAVID N. DEACONSON, ESQ.
                          P.O. Box 58
                          Waco, Texas 76703

                          The Law Offices of Lisa & Lesko, LLC
                          BY: JUSTIN J. LESKO, ESQ.
                          55 East Monroe Street, Suite 3800
                          Chicago, Illinois 60603

                          The Law Offices of Lisa & Lesko, LLC
                          BY: STEVEN G. LISA, ESQ.
                             MICHELLE B. LISA, ESQ.
                          7689 East Paradise Lane, Suite 2
                          Scottsdale, Arizona 85260

For the Defendants:       Rimon Law
                          BY: ERIC C. COHEN, ESQ.
                          980 North Michigan Avenue
                          Suite 1400
                          Chicago, Illinois 60611

2

APPEARANCES VIA ZOOM VIDEOCONFERENCE CONTINUED:

For the Defendants:        Rimon Law
                           BY: JASON XU, ESQ.
                           1990 K Street, NW
                           Suite 420
                           Washington, D.C. 20006

                           Steckler, Wayne, Cherry & Love
                           BY: MARK SIEGMUND, ESQ.
                           8416 Old McGregor Road
                           Waco, Texas 76712


Deputy Clerk:              Melissa Copp
                           United States District Court
                           800 Franklin Avenue, #380
                           Waco, Texas 76701


Transcription Service By:  Dipti Patel, CET-997
                           Liberty Transcripts
                           7306 Danwood Drive
                           Austin, Texas 78759
                           (847) 848-4907
                           www.libertytranscripts.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

3

INDEX

|  | PAGE |
|---|---|
| Case called | 4 |
| Court's Rulings - Motion under advisement | 47 |
| End of Proceedings | 49 |
| Certificate of Transcriber | 49 |

1    **Waco, Texas - Thursday, February 2, 2023**          (11:03 a.m.)

2                    **P R O C E E D I N G S**

3                        ---O0O---

4        THE COURT:  All right.  Good morning, everybody.  We're

5    here for a Markman hearing.  And I'm going to start by asking Ms.

6    Copp to to call the case, please.

7        THE CLERK:  Yes, Your Honor.

8        Calling Case Number WA:22-CV-285, styled Cutting Edge

9    Vision, LLC v. TCL Technology Group Corporation, *et al.,* called

10   for a Markman hearing.

11       THE COURT:  All right.  Can I get announcements

12   starting with the plaintiff?

13       MR. DEACONSON:  Yes, Your Honor.

14       Dave Deaconson, local counsel for Cutting Edge Vision,

15   LLC, part of the trial team and you'll be hearing from Justin

16   Lesko will be taking the lead.

17       Steve Lisa and Michelle Lisa are all here on behalf of

18   the plaintiff Cutting Edge, as well as the inventor and principal

19   of the plaintiff, Mr. Konicek.  I saw him just -- there he is.

20   Obviously, he will be here as a -- just viewing and will not be

21   actively participating.

22       THE COURT:  All right.  Very good.  Well, good to see

23   you, Mr. Deaconson and team.

24       And for defendant.

25       MR. SIEGMUND:  Good morning, Your Honor.  Good to see

5

1    you again.

2            This is Mark Siegmund on behalf of the TCL defendants.

3    With me this morning is Eric Cohen and Jason Xu with Rimon Law.

4    And Mr. Cohen and Mr. Xu will be the main speakers, and we are

5    ready to proceed.

6            THE COURT:  All right, very good.  Well, let me pull my

7    notes up.  But I got a note on the terms that the parties wanted

8    to argue.  I think the order I had was controller, and then the

9    periods to potentially increase fees are the two fee based terms

10   and then device.

11           So if we want, why don't we start with controller?  I

12   think on all of these we went with the plaintiffs proposal of

13   plain and ordinary meanings.  So I say we start with the

14   defendant on them.  And we'll begin with controller, if that

15   makes sense.

16           MR. COHEN:  With the Court's permission, I'd like to

17   share my screen.  It may take me a minute or so to set this up.

18   Is that okay?

19           THE COURT:  That's perfectly fine.

20           MR. COHEN:  All right.  Thank you, Your Honor.  All

21   right.  I want to start with the Williamson case, because I think

22   that's central to our position here.  And I can go up to the part

23   that I want to refer to.  And I'm focusing on this because

24   Williamson made a significant change in the law.

25           And the reason that -- and it changed the law because

6

1    it got rid of the strong presumption that the lack of the word

2    means meant that the Section 112, Paragraph 6 didn't apply.  And

3    it said -- and the court said there, the en banc decision says,

4    "That the use of the strong presumption has shifted the balance

5    struck by Congress in passing 112 Paragraph 6, and resulted in a

6    proliferation of functional claiming, untethered to Section 112,

7    Paragraph 6, and free of this stricture as set forth in the

8    statute."

9           And so in Williamson, which we're going to get into a

10   little bit later, the Court held that the claim term there was a

11   so-called nuanced term, but that's and we're getting Williamson

12   is not restricted to nuanced terms.  So I want to get into -- so

13   the reason why I'm focusing so much on Williamson is because

14   Williamson, not only does it apply to this case, but the claim

15   term at issue, as we shall see, is very similar to the claim

16   terms at issue here.  What we have here is we have a patent there

17   besides a controller configured to perform certain functions.

18          Plaintiff says the controller is a microprocessor.

19   Okay, if the controller is the microprocessor, and the plaintiff

20   says the controller, the microprocessor is connected to a

21   touchpad and it's connected to memory.  Okay.  That makes it kind

22   of like a small general purpose computer.  But that controller or

23   microprocessor can't perform any of the functions, even with the

24   hardware that it's attached to, without being programmed by

25   software.

1          And the patent specification says that the controller

2    is provided with software, but it doesn't explain what the

3    software is or what it does.  And case law, the Federal Circuit

4    case law says under these circumstances, where if you were saying

5    a microprocessor that does these functions A, B, and C, it's not

6    enough.  That's not enough.  You've got to at least provide an

7    algorithm.

8          All right.  So let's look -- let's look a little bit at

9    Williamson and the claims present here.  First of all, let me get

10   the right slide up.  So the -- what we're looking at here is

11   Williamson says that Section 112, Paragraph 6 will apply when the

12   word -- when a claim term lacks the word "means" if -- and this

13   is an or -- if the challenger, one, demonstrates the claim term

14   fails to "recite sufficiently definite structure", or else

15   recites "function without reciting sufficient structure for

16   performing that function."  Okay.

17         And Williamson also says you got to look at the whole

18   claim limitation.  Okay.  And so let's take a look at the

19   limitation in Williamson.  And the limitation in Williamson was a

20   distributed learning control module for doing a bunch of things.

21   And the last phrase was, "and for coordinating the operation of

22   the streaming data module."  And the court en banc said that the

23   district court found the specification failed to disclose

24   structure corresponding to the coordinating function, and the

25   Federal Circuit agreed.

1          So now look at the Williamson claim term on the left.

2    "Distributed learning control module for receiving" blah, blah,

3    blah, "and for coordinating the operation of the streaming data

4    module."  Okay.  Look at the '472 Patent limitation, which is

5    similar enough to the '761 limitation, I'm only going to discuss

6    the '472 limitation because the with respect to the controller

7    limitation, the differences aren't significant.

8          So we have controller configured to and then it's

9    configured to do what.  "Display on the touch sensitive screen

10   and user selected input that instructs the camera system to

11   confine automatic picture upload to periods without potentially

12   increased cellular network access fees."

13         Well, can a microprocessor do that without programming?

14   No, it can't.  "Automatically connect to a picture hosting

15   service during any period in which all the following conditions

16   are met."  Can a microprocessor do that by itself without

17   programming?  No.  So what happens if you replace controller if

18   -- looking on the right over here -- what happens if you replace

19   controller with a microprocessor?

20         And notice that in the Williamson claim limitation, it

21   said, "a distributed learning control module for receiving."  And

22   here we have instead of for we have configured to, but in the

23   Rain case that we cited, the court -- the Federal Circuit said,

24   well, changing "for" to "configure to" doesn't get you out of

25   Section 112, Paragraph 6.  Basically saying, "configure to" and

9

1    "for" under the circumstances of that case didn't make a

2    difference.  And we submit it doesn't make a difference here.

3              And so then if we've changed the form of the word, this

4    from display to displaying, and automatically connect to

5    automatically connecting, you've got -- you've basically got a

6    means -- you've got a form that's pretty darn close to means plus

7    function by just changing the tense of these words.

8              And so we submit that if you look at these functions,

9    first of all, the functions can't perform without a

10   microprocessor -- by a microprocessor without programming.  And

11   there is no disclosure whatsoever in this patent of any algorithm

12   for doing any of this.  And so that's why we say that this

13   controller configured to perform all these functions should be

14   interpreted as a means plus function.  And that it's indefinite

15   because the specification does not disclose an algorithm.

16             And it's pretty clear, and we set this forth in our

17   briefs.  It's pretty clear that if you have a microprocessor or a

18   computer that does something, and it does something, you know, a

19   specific task, that you got to disclose some software for doing

20   that task.  Otherwise, it's going to be indefinite.

21             So I just want to point to a couple of other things

22   here.  Dr. Hughes, their expert, pointed to this structure.  And

23   I'm going to see if I can blow this up.  So Dr. Hughes pointed to

24   the structure in Figure 3.  And he said, look, the camera's

25   connected to a touchpad device, it's connected to storage media,

10

1    it's connected to a cellular interface, and the controller is a

2    microprocessor.

3         He said somebody -- a person of ordinary skill in the

4    art would understand it to be a microprocessor.  Well, great.

5    Looking at that diagram, if you substitute microprocessor for

6    controller, you basically have a little computer, right?  I mean,

7    that's what it is.  It's a small computer.  But it only works if

8    it's got software, and it doesn't disclose again, any software

9    for performing these functions.

10        And if we look at Dr. Hughes' description of the

11   function -- he doesn't basically -- he avoids completely the

12   issue of what causes the controller to perform these functions.

13   He says, well, it -- the controller is connected to the touch

14   sensitive display, the (indiscernible) memory, the cellular

15   interface and the camera system all work together with the

16   controller to carry out the operations that defendants challenges

17   allegedly function.  Okay, sure they do, but it -- they have to

18   have software to do it.  Because the microprocessor by itself

19   doesn't do anything.  And so that's our point.

20        Our point is that this claim is very much like the

21   claim that was at issue in Williamson.  Judge, we put the rest in

22   our brief.  We have a couple -- we recited a couple of other

23   Federal Circuit decisions, explaining Williamson and explaining

24   that -- you know, that Williamson was -- it basically, you have

25   to look at the test in Williamson as an either or test.  And here

1  we have the second part of the test.

2           And that is, the claim recites functions, and doesn't

3  provide any structure for performing those functions.  And unless

4  Your Honor has any questions about this part of the argument, I

5  think I'd like to reserve time for rebuttal.

6           THE COURT:  Okay.  Let me ask you, Mr. Cohen.  From of

7  course with the Williamson case we've got a control module.  And

8  with most of the cases it appeared that were cited by defendant

9  in their brief, they all got to the means plus function analysis

10 through a term that included a phrase.  I think almost all of

11 them referred to a module of some kind or another.

12           And so I did not see and wanted to know if you could

13 point me to a case that found the phrase controller itself to

14 still invoke means plus function that failed to disclose

15 sufficient structure, or do all the terms have some -- like,

16 control module I understand is close, but it's still not the

17 exact same phrase?

18           MR. COHEN:  Well, I want to answer that question in two

19 ways.  One, if the Federal Circuit had decided for a specific

20 patent, that controller as used in a claim term for that patent

21 was means plus function, we would say that under Phillips that

22 would not inform whether the use of controller in this patent is

23 means plus function.  Because Phillips says you have to interpret

24 the claims, and we all know this.

25           You have to interpret the claims based on the claim

1   language itself, the specification, and the prosecution history.

2   So you can have the same term that could have a meaning in one

3   case for one patent and a different meaning in another case for

4   another patent.  And it depends on the claim language and the

5   specification of that particular patent.

6          In answer to your question, no, we did not find any

7   case in which controller had been interpreted.  I would submit,

8   however, that if you look at the structure of the claim itself,

9   and we have controller configured to perform a bunch of

10  functions.  So instead of the word controller, you could have

11  microprocessor configured to perform these functions.  You can

12  have module configured to perform these functions.  And it really

13  wouldn't change the meaning of the claim term as a whole.

14         If you look at controller, the only description you

15  have of controller is basically Figure 3.  That's a description

16  of controller.  Now, we have the argument by the expert that

17  well, the patent incorporates another patent by reference, and so

18  you would know it would be a certain type of microprocessor.  But

19  the claim recites, broadly controller.

20         And so maybe it's that microprocessor, maybe it's a

21  microprocessor.  But even if it is, under the second prong of

22  Williamson, even if it uses a word and we know what the word

23  means, if that word, for example, microprocessor, if that alone

24  isn't sufficient structure to perform the claim functions, then

25  it's indefinite.  It's Section 112 -- it falls under Section 112,

13

1    Paragraph 6.

2         If the claim language recites functions and recite

3    --doesn't recite sufficient structure to perform those functions.

4    And here, even though it doesn't use a nice word like module, it

5    uses a word microprocessor.  That is structure.  But under the

6    second part of that test, it's not sufficient structure to

7    perform these claim functions.  And that's why we say it falls

8    under Section 112, Paragraph six.

9         THE COURT:  Okay.  Thank you, Mr. Cohen.  I understand.

10   Let me hear from whoever wants to address this for plaintiff.

11        MR. COHEN:  Do you want to hear from -- if you want to

12   hear from the plaintiff, do you want me to -- I should stop

13   sharing my screen.  Sorry to interrupt.

14        THE COURT:  Yeah, that'd be great.  That'd be great.

15   Thank you, Mr. Cohen.  Okay.  Thank you.

16        MR. LESKO:  Good morning, Your Honor.  Justin Lesko on

17   behalf of the Plaintiff Cutting Edge Vision.  I'll wait for the

18   screenshare here.

19        MR. COHEN:  Yeah, just let me figure let me out how to

20   do that.  Oh, here we go.  Okay.

21        THE COURT:  All right.  Mr. Lesko, whenever you're

22   ready.

23        MR. LESKO:  One second.  Let me just try to share my

24   screen here.  Good morning, Your Honor.  May it please the Court.

25   Justin Lesko on behalf of Cutting Edge Vision here.  There's a

14

1    first point.  This Court's preliminary constructions are all

2    correct.  TCL has the burden to prove by clear and convincing

3    evidence that these terms are indefinite, and it simply does not

4    meet that burden.

5         And with respect to controller, TCL is not providing

6    anything today to change this Court's finding -- that should

7    change this Court's finding that the controller is not a means

8    plus function element in these claims.

9         As a first point, looking at -- listening to the

10   argument just now from Mr. Cohen.  It's clear that what TCL is

11   trying to do is confuse the first and the second steps of the

12   means plus function analysis.  So there's a lot of talk about

13   algorithms and programming.

14        And Williamson did not change.  And I think Your Honor

15   correctly recognize this, based on your question.  Williamson did

16   not change the fact that the first step of the analysis is

17   whether any language even exists in the claim that would put it

18   in the category of means plus function.

19        And then, if that were the case, there might be some

20   discussion about whether the algorithm or the programming

21   disclosed was appropriate for the functions, but we don't get

22   there because there's nothing in this claim that would turn it

23   into a means plus function claim or a means plus function

24   element.

25        And we cited a case on that point that's Dyfan v.

1    Target Corp.  And what that case says quite clearly, that's

2    decided after Williamson by the Federal Circuit, and it says

3    quite clearly, that step one and step two of the means plus

4    function analysis are separate issues.

5            And here, Mr. Cohen admitted there's no case that says

6    a controller would invoke means plus function.  And instead,

7    there's a plethora of cases that Mr. Cohen chose not to address

8    that, in fact, do say repeatedly that a controller is not a means

9    plus function element and should not be interpreted that way

10   because a controller refers to a known class of structures.

11           All these cases are decided after Williamson.  Even as

12   recently as 2022, this Court has said that a controller refers to

13   a broad and varied class of structures.  And excuse me, Your

14   Honor, in the relevant POSITA in all these cases is from 1999

15   through 2017.  So in our case here, we're at 2005.

16           So you know, repeatedly courts, including this Court,

17   have said that controller is a structural element.  It does not

18   invoke a means plus function analysis, and that is where the

19   inquiry ends here.  If you look at what this patent says about

20   the controller, there's no reason to diverge from this Court's

21   prior holdings and the other courts prior holdings that a

22   controller is a structural element.

23           If you look at what the specification says, it says

24   directly that the controller is preferably a microprocessor.  And

25   a microprocessor is a known structural element.  Dr. Hughes

1    opines on that point, and even Dr. Garlick at deposition admitted

2    that a microprocessor is something structural.

3            Again, what counsel and Mr. Cohen is trying to say, and

4    what TCL tried to do in their briefs is say, oh, but we need to

5    talk about, you know, what algorithms are specifically disclosed

6    for this microprocessor.  But that's step two of the means plus

7    function analysis.

8            That has nothing to do with step one; i.e. whether

9    there's any language in the claim that would invoke means plus

10   function analysis in the first place.  And because the controller

11   here in the spec is structural, we know that we're not talking

12   about means plus function claim elements here.

13           If you look at what the claim says, as well, there's

14   other known structures that interact with a controller.  There's

15   a touch sensitive display.  There's a cellular interface, and

16   it's used to carry out those operations.  But again, if the

17   controller is coupled, if you look at '472 Patent, specifically

18   Claim 1 and Claim 5, that says that the controller is coupled to

19   all of these other known structures.

20           And so that again indicates that it's a structural item

21   that's coupled with other structures.  And when you look at

22   Figure 3, you'd reach the same conclusion.  Defendant tries to

23   call Figure 3, you know, the controller is a black box.  I mean,

24   that's a mischaracterization.

25           The controller in Figure 3, of course it's in a box,

1  because it's a block diagram.  But what it shows in Figure 3, is

2  that there's various structural devices, hardware devices and

3  structures that are all, you know, connected to this central

4  controller that is itself a structure.

5         In addition to what's in the claims, there's a touch

6  sensitive display.  There's the cellular interface of the claims.

7  There's gaze trackers that are structures.  There's all kinds of

8  structures that are shown as interconnected to this central

9  structure, the controller that communicates with all these other

10 structures.  So again, it's all hardware when you look at Figure

11 3, and a POSITA looking at that immediately knows that.

12        And then finally, here, there's no -- if you look at

13 the extrinsic evidence, it's clear that in the relevant time

14 period, a controller refers to a known class of structures.

15 There's various technical definitions and other authorities that

16 are cited by Dr. Hughes.  There's the same authorities that the

17 courts have relied upon in previous cases showing that it's a

18 structural element and it is not something functional.

19        With respect to the cases cited, Your Honor is

20 absolutely correct.  The cases cited by TCL address totally

21 different terms, modules in each case, or in the case of the

22 Engera v. Cisco case, I think it was logic was the term.  And

23 modules and logic are completely different from controller, a

24 known structural device, and a known hardware device.  So those

25 cases are simply just not on point here.

1       And then finally, if you look at Rain, I think TCL in

2   its brief and a little bit less so today, but certainly in its

3   brief tries to sort of mislead the Court with the focus on the

4   words configured to in Rain.  And the issue in Rain was

5   absolutely clear.

6       The module in Rain was a structure -- I'm sorry, it was

7   a means plus functionality, because it says module, right, not

8   anything like a controller.  And the only thing the court said --

9   what the court said about configured to was plaintiff tried to

10  argue that, despite the fact that the term says module, that, you

11  know, the configured to language might save the module from being

12  something functional.  And the court in Rain rejected that

13  argument.

14      That's not plaintiffs argument here at all.  The

15  controller is itself a structure and something that -- it's a

16  structural device that can be configured.  And so the claim is

17  not means plus function.  And if Your Honor has any questions,

18  I'm happy to take those now.

19      THE COURT:  Yeah.  Let me ask you, Mr. Lesko.  The one

20  thing that I am somewhat curious about is defendant's argument

21  that without a disclosed algorithm or program, then it's

22  indefinite.  Do we even get to -- in your view, do we even get to

23  evaluating whether it discloses an algorithm or program for

24  performing the functions?

25      Do we even arrived at that step if we decide that

19

1    controller by itself has sufficient structure, and it's not means

2    plus function?  I guess I'd say it another way, we only get down

3    to look into see whether there's disclosure of an algorithm or

4    program, if we've decided that it is subject to means plus

5    function.

6           MR. LESKO:  That's absolutely right, Your Honor.  And

7    so we never have to get to that discussion because it's not

8    subject to means plus function.

9           THE COURT:  Okay.  Okay.  All right.  Thank you, Mr.

10   Lesko.

11          Mr. Cohen, I know you had reserved some time to

12   respond.  So I'll let you use that now.

13          Mr. Lesko, if you wouldn't mind.  There you go.

14          MR. COHEN:  Okay.  Give me a second.  Wish I was faster

15   at this, but.  All right.  Can you see my screen?

16          THE COURT:  I can.  Is that the Williamson case, again,

17   I think?

18          MR. COHEN:  Yes, because what I want to focus on here

19   is -- see if I can blow this up and move it over.  Okay.  Okay.

20   The point -- the last point that Mr. Lesko made I disagree with.

21   "To determine whether Section 112, Paragraph 6 will apply, the

22   challenger must demonstrate either that the claim term fails to

23   recite sufficiently definite structure, or else recites function

24   without reciting sufficient structure for performing that

25   function."

1          So I disagree with Mr. Lesko, to the extent he says you

2    don't look at the function unless you -- unless if there's a term

3    in the claim that describes structure, you don't have to look at

4    the function.  That's not the test.  That's not the test in

5    <u>Williamson</u>.  The test is an either or test.

6          And if you look at this claim term as a whole, which we

7    showed before, it recites these functions, and even if the

8    microprocessor -- even if the controllers and microprocessor and

9    its structure, it doesn't -- it's not sufficient structure for

10   performing the functions in the claim.  And that's why Section

11   112, 6 applies.  That's point number one.

12         Point number two, there was a decision by Judge Sparks

13   from this district.  And Judge Sparks said in his decision, this

14   is something that I think we all probably know but he articulated

15   it.  "The mere fact a similar or even identical term has been

16   construed one way in a given patent.  It does not control

17   construction in a later suit, over in entirely different patent."

18         And that's why we say that the cases cited by Mr. Lesko

19   and discussed in his argument today are not relevant, because

20   they just simply -- they just simply don't -- and I'm trying to

21   stop sharing.  Here we go.  They simply aren't relevant because

22   they're construing different patents.  And Judge Sparks, you

23   know, recognized this previously.

24         There's also the dissent in the <u>Phillips</u> case also

25   recognized this in passing, and the dissent in <u>Phillips</u>, I think,

1    had to do with whether -- they were still debating whether claim

2    construction was an issue of law, or how much -- you know,

3    whether it involved fact finding.

4         But I think this is a pretty well-established

5    principle.  That you don't look to other cases, you don't look to

6    the construction of a claim term in another case, involving a

7    completely different patent with a different specification.  So

8    those are the only two points I would like to make in rebuttal to

9    Mr. Lesko.

10         THE COURT:  Okay.  I appreciate it.  Appreciate the

11    argument, Mr. Cohen and Mr. Lesko.  Well-presented and well done.

12    At this time, I'm going to stay with the Court's preliminary

13    construction, and I hold that in this patent and in this case,

14    that controller does demonstrate or describe a known class of

15    structures with a definite structure to it.  And the evidence is

16    not sufficient to overcome the rebuttable presumption that this

17    is not a means plus function term.

18         And just for the party sake as well, the one case we

19    found in addition to those cited by the parties, is there's one

20    out of the District of Delaware, Seismic Corp. (phonetic).  It's

21    at 2021 WL 1259710.  A very analogous case, where Judge Burke

22    analyzed a very similar patent with a controller programmed to

23    perform things and came to a similar result.

24         So in light of the parties arguments and the case law

25    cited, as well as adding to it the Seismic Corp. case out of

1    Delaware, I'm going to stay with the preliminary construction and

2    find that controller is not subject to means plus function.  And

3    we will give it its plain and ordinary meaning.

4            MR. COHEN:  Thank you, Your Honor.

5            THE COURT:  Let's see.  Sorry, flipping back over.  So

6    now we've got periods without potential cellular network access

7    fees and periods without potentially increased cellular network

8    access fees.  Which are two separate terms, but I think they both

9    involve the same or similar arguments.  So and again, with those

10   I believe we went with plaintiffs proposals.  So let me hear from

11   defendant first on those.

12           Would that be you, Mr. Xu?

13           MR. XU:  Yes, Your Honor.  So I apologize in advance,

14   because the place I stay lost power, so I moved to a public

15   library.  And now it's one for technologies for Zoom.  But if you

16   hearing the background noises with the kids, I'm hoping to keep

17   it as limited as possible.

18           THE COURT:  I don't hear any background noise.  And I

19   did think it was awful smart of you to pick up a spot where I see

20   nonfiction in the background too.  So just sort of a subliminal

21   endorsement.  But I understand and that is one of the benefits of

22   Zoom is that we're able to do all of this without travel, which

23   might have been difficult to Waco this week.

24           So whenever you're ready, Mr. Xu.

25           MR. XU:  Let me share my screen.  Can the Court see my

23

1    screen?

2              THE COURT:  Yes, sir.

3              MR. XU:  Actually, I can't.  I'm having an issue.  Now.

4    Yes, Your Honor.  So I would address the two terms, the two terms

5    that starts with a periods.  Since these two terms share similar

6    issues, so we group them together for efficiency purposes.

7              We would want to focus the arguments on two main

8    issues, and so that we will not be repeating many of the

9    arguments we have already made in our briefs.  As an initial

10   matter, we want to address is plaintiff seems to argue that

11   there's -- because the terms here -- because the claims here are

12   apparatus claims not method claims.

13             So definitely this argument should not apply here.  But

14   we submitted that there are case law out there has found both

15   apparatus claims and method claims be indefinite.  So the type of

16   claims should not matter in terms of deciding whether a term or

17   claim is indefinite.

18             And in particular here, we cited on this page 19 of our

19   slides in the complaint, the plaintiff actually alleges that this

20   TCL infringes by making and by using the infringing devices.  So

21   if the plaintiff is accusing that TCL using the devices then so

22   the usage of these devices is relevant to this case.

23             So then the next we want to focus on is our first main

24   argument is that both of these terms are contextual terms, that

25   were based on an individual plans, individual cellular phone

1   plans on each device.  And we cite here, the Federal Circuit

2   opinion in <u>Halliburton</u> saying that a term would be found

3   indefinite, if a skilled artisan "would not know from one well to

4   the other, whether a certain fluid was within the scope of the

5   claim", because other factors would impact the determination.

6        We submit that this is exactly the case here.  Because

7   from one phone to another, the individual plans on that phone

8   would impact whether that phone is within or is within the scope

9   of the claim, or outside the scope of the claim.  And this is not

10  just defendant's argument.  We submitted that this is actually an

11  admission from the plaintiff.

12       On page 20 of the slides we are showing that you can

13  see the top, Dr. Hughes, which is plaintiffs own expert saying

14  that for these -- for Claim 1 of the '761 Patent, "The data from

15  the cellular interface used by the controller has to determine

16  that the upload is allowed based on the selected upload options."

17  And what is the selected upload options?  In the context of the

18  Claim 1 of the '761 Patent, that is the period without

19  potentially cellular network access fees.

20       So then, in plaintiffs own brief, we cited in both

21  briefs, Docket 45 is plaintiffs response construction brief.  And

22  Docket 47 or 48 is plaintiffs surreply brief.  In both briefs,

23  they said that -- one second -- a monthly fixed plan charge on a

24  provider plan does not depend on information received via their

25  cell phone -- cellular interface.

1        And then it further says, "Because the fixed monthly

2   plan charges are not determined from the information received via

3   the cellular interface, the claim itself is self-limiting, not

4   fixed monthly plan charges."

5        So if you look at what plaintiff is saying, they're

6   saying that look, if a phone has a fixed monthly plan, it's not

7   within the claim scope.  But if a phone has a non-fixed monthly

8   plan, it may within the claim scope.  So it's plaintiffs own

9   admission, they're saying that from one phone to another,

10  depending on whether the plan on that phone is a fixed monthly

11  plan, that this phone may or may not within the claim scope.

12       The next slide is the claim for the similar limitations

13  periods without potentially increased cellular network access

14  fees.  This is for the '472 Patent.  Plaintiffs making the same

15  arguments.  So for both patents for this group of terms that

16  starts with the periods, it's plaintiffs own admission, saying

17  that it's contractually based on a cell phone plan on each phone.

18  And based on whether that plan is fixed monthly plan or not, it's

19  within the claim scope, or outside of the claim scope.

20       So we submit that under the Federal Circuit controlling

21  case law, and based on plaintiffs own admission, and also the

22  arguments we made in the brief, that the term and these two terms

23  are contractual terms, and therefore should be found as

24  indefinite.

25       And that second argument, in addition to the fact that

1   the terms are indefinite, because they are contractual, we submit

2   that to both terms use the word potential.  In '761 Patent is

3   potential.  And in '472 Patent it's potentially.  These words are

4   unbounded and fluid.  It does not provide any guidance to a

5   person of art that is skilled in the art by reading the intrinsic

6   record what this potential editing might be.

7         For example, in the '472 Patent, when we talk -- when a

8   person talks about potential or potentially, that means something

9   might happen in the future, right?  It can happen under any

10  conditions, or no conditions at all.  It's a thing that will

11  happen to the future that no one knows in advance.  So in here,

12  what does the potentially increased mean?  What's the boundary of

13  it?  Well, so how much increase would that be?  How would you

14  measure?  What's the triggering event for this potentially

15  increase?

16        These are all the questions unanswered and cannot be

17  found in the intrinsic record by a person skilled in the art by

18  reading them.  Apparently, plaintiff realized this issue.  So

19  they supplement their plain and ordinary meaning saying that

20  potentially increased should mean a increase from compared to a

21  normal fees.

22        But the plaintiffs supplemental definition of this term

23  is also indefinite, because the normal fee, what does -- what's

24  the boundary of the normal fee?  It can change from one week to

25  another.  It can change from one month to another, or it can

27

1    change based on the conditions.  And also normal fee is kind of

2    subjective to each person because I might find a fee normal, but

3    another person may find a fee not normal.

4           So I submit that the usage or the use of the term

5    potential/potentially in these two terms make -- also make the

6    term indefinite.  So I will stop here and answer any questions

7    that Your Honor might have.

8           THE COURT:  I do not have any questions at this point,

9    Mr. Xu.

10          MR. XU:  Thank you.  So I'll stop sharing.

11          MR. LESKO:  So Your Honor, Justin Lesko here again.

12   I'll be handling this argument as well, on behalf of the

13   Plaintiff CEV.  Let me just get my screen share working.  So Your

14   Honor, I'd like to just respond briefly to the few points raised

15   today by Mr. Xu, rather than sort of repeating what's in our

16   briefs here.

17          First, Mr. Xu points out that the complaint refers to

18   TCL using the device or make using -- making, using, and selling

19   the accused devices.  But that is not relevant.  It's not a

20   relevant issue here.  We're not -- the point of us discussing end

21   user plans, which is TCL's primary focus, is that the claims

22   don't require in the end some user to actually receive some

23   charge or to carry out some method where the user receives some

24   charge.  And there's not any inducement claim that, you know, TCL

25   induces them and causes them to carry out some method that

1   results in them receiving some charge.

2           What the claim is actually referred to is a system.

3   And we're not we're also not saying that either that, you know,

4   system claims can't be considered indefinite.  That's  obviously

5   a ridiculous proposal that we would not make.  What matters,

6   though, is what the claims say here.

7           They refer to a camera system that has a certain

8   provided option on it, an upload option.  And that the upload

9   option instructs the device to either confine automatic picture

10  upload periods without potential cellular network access fees or

11  periods without potentially increased cellular network access

12  fees.

13          And a POSITA reading this language immediately knows

14  what types of fees we're referring to.  There are certain fees

15  that exist.  They're known to have the potential to cause either

16  upload charges or upload charges beyond the usual upload charges.

17  And for example, the example we provided during prosecution in

18  fact, is data roaming.

19          So the fact of the matter is, when you know what those

20  fees are, and a POSITA knows what those fees are, and the claim

21  recites a system with an option to avoid them.  Any manufacturer

22  can immediately know whether the device it's making and selling

23  infringes the claim, or it doesn't.  So either the infringer

24  provides the upload option, or it doesn't provide it.  And that's

25  the question on infringement here.

1          And that's why this whole discussion about end user

2     plans by TCL is simply not relevant.  What the claim says is

3     potential or potentially increased network cellular network

4     access fees.  And you know, whether each individual user actually

5     faces those charges, or doesn't face those charges, or actually

6     gets charged in the end or not, really just does not matter to

7     this claim.

8          And I think the second point raised by Mr. Xu here was

9     that somehow what they're trying to argue that our briefing

10    somehow is an admission that that there's contextual issues, but

11    the briefing doesn't say that any devices with a fixed monthly

12    fee in general are somehow exempt from infringing the claims or a

13    device that's purchased by a user and then put on a fixed monthly

14    fee plan is somehow exempt from the claims.

15         The point of Dr. Hughes' testimony and what CEV argued,

16    and I think what Your Honor understood, is that the fees, those

17    monthly fees that are base fees, whether they exist where they

18    don't exist, how much they are, they just don't matter to the

19    claim, because what the claim focuses on is fees that result from

20    uploads.  It focuses on the fact that those are known potential

21    fees that may result from the uploads.

22         And you know, the element that says it uses data from

23    the cellular interface to make the determination, just provides

24    further clarity to the fact that these particular fees in this

25    claim are upload related fees, and the option described in this

30

1    claim -- in these claims is an option to avoid those types of

2    fees.

3              So the argument that we've somehow admitted that any

4    device with a fixed plan is exempt is completely wrong.  Either

5    an infringer, like I said, provides the system with the disclosed

6    option and the user can use it however they want to use it or not

7    use it, that doesn't matter.  Or the infringer doesn't.  And

8    that's what the claims say.

9              I think the last argument here is that -- by TCL, was

10   that potential or potentially raises some uncertainty.  But it

11   doesn't.  In fact, it makes it absolutely certain that what we're

12   talking about in this case are fees that may result from uploads

13   and the provided example during prosecution was possible roaming

14   fees.  And the examiner absolutely understood that provided

15   example.

16             And we weren't -- nobody here is suggesting that we're

17   deviating from plain and ordinary meaning either.  What we're

18   saying is that these terms have a plain and ordinary meaning

19   that's known.  It's known to POSITA.  It was known to the

20   examiner.

21             What we explained during prosecution was exactly

22   consistent with what the plain and ordinary meaning of these

23   claims say.  What we said during prosecution is that these claims

24   cover certain uploads that a user might face in certain periods

25   such as data roaming.  The claims do not cover, you know, timer

1    based uploads at a certain time that were disclosed in the prior

2    art.

3            And in the '472, that was during prosecution of the

4    '761 Patent.  And during prosecution of the '472 Patent, CEV

5    actually faced a specific 112 rejection where the examiner asks

6    where's the support for this element.  And we explained exactly

7    what the claim language says.  That you determine whether you're

8    in one of the periods that can potentially have these increased

9    fees or not, and then you decide -- the device decides whether to

10   make the upload or not if the option is selected.

11           So the option that's provided gives the user when you

12   turn it on, you have the option to tell the device to then

13   monitor the cellular network status through the cellular

14   interface and decide whether it's an appropriate time to upload

15   or not.

16           And then, finally, I think the last point raised by Mr.

17   Xu has to do with, you know, the increase.  What is the amount of

18   the increase or what is the amount of the base fee.  But again,

19   when a POSITA knows what a potentially increased fee is, and that

20   it exists such as data roaming, it doesn't matter if a specific

21   user plan has its base fee as X or Y or Z.  It doesn't matter if

22   a specific user plans, you know, the increase could be one cent,

23   the increase could be $1.  None of that matters.

24           All that would matter is that the system provides the

25   option recited in the claim that gives the -- you know, the user

1    has the opportunity to turn on this option and avoid these types

2    of fees.  Whether maybe some users don't want to use the option.

3    Maybe for some users, it doesn't matter.  But the option is there

4    and every system a manufacturer makes can be made with the same

5    option, regardless of whether any end user decides they want to

6    use it or they need to use it or regardless of whether they

7    eventually get charged for these types of uploads.

8           With that, Your Honor, I submit this Court should

9    maintain its construction of plain and ordinary meaning of this

10   term.  And if Your Honor has any questions, I'd be happy to take

11   those now.

12          THE COURT:  Yeah.  I guess the -- really the only thing

13   that I was curious about and you kind of touched on it in one of

14   the slides, but explain to me how you believe this is different

15   from the situation in the <u>Halliburton</u> case cited by defendant

16   where in that case -- and I forgotten the exact phrase, but it

17   had to do with well fluid that was affected by many different

18   factors; bore size, the material in the well, et cetera.  And the

19   court found that term to be indefinite.  How is what we're

20   dealing with different than what the court dealt with in the

21   <u>Halliburton</u> case?

22          MR. LESKO:  Your Honor, I think was the term in the

23   <u>Halliburton</u> you're referring to, was it high pressure?

24          THE COURT:  It was not.  I don't believe it was a high

25   pressure.  Let me pull it back up here and see if I can find it.

33

1   It may have been the fragile gel.  I'm scrolling quickly through

2   it.  Let me look at my --

3           MR. LESKO:  Oh, I think I recall.  Fragile gel.

4           MR. COHEN:  Page 19 of defendants slide where it says

5   fragile gel.

6           THE COURT:  Okay.  Thank you, Mr. Cohen.

7           MR. LESKO:  Thank you.  Yes, looking at -- so fragile,

8   the difference here is fragile is subjective.  And there's no way

9   any POSITA would know what exactly fragile means.  I mean, here,

10  we're talking about potential and we're talking about an

11  increased or potentially increased, you know, objectively, is

12  there any potential at all?  You can figure that out.  If there's

13  an increase of any amount, that's a yes or no question.

14          So does the potential exist?  That's a yes or no

15  question.  What's the amount of the increase?  Does it matter?

16  Yes or no.  Was there an increase?  And furthermore, a POSITA

17  here, it clearly knows about the existence of these fees.  And it

18  was understood during prosecution that data roaming is a perfect

19  example where potential exists for there to be an increase.  And

20  even, you know, all the experts even agreed on that.  When we

21  deposed Mr. Garlick, he said that data roaming has the potential

22  to result in additional fees beyond regular charges.

23          THE COURT:  Okay.  I think I understand your position.

24  If I follow, I'm just going to restate it to make sure I'm

25  following it correctly.  But it's your argument that in the

34

1    <u>Halliburton</u> case, dealing with fragile gel, there were just so

2    many things that would factor into it that it was hard to tell

3    when something might infringe and when they wouldn't.  Whereas in

4    the present situation that potentially increased is really

5    binary.  It either is or it isn't.  And it's a straightforward

6    analysis versus the multi-factored analysis that created the

7    indefiniteness in <u>Halliburton</u>.

8         MR. LESKO:  That's right, Your Honor.  It's two words

9    that are a yes or no question.  Potential is a yes or no

10   question.  Increase is a yes or no question.  Fragile is

11   subjective and requires all kinds of other factors to figure out

12   whether something is fragile or not.

13        THE COURT:  Okay.

14        Mr. Xu, would you like to respond to any of the points

15   raised?

16        MR. XU:  If I can just address briefly.  I want to

17   share my screen again.

18        MR. LESKO:  I just stopped.  I'm sorry, Jason.  There

19   you go.

20        MR. XU:  Is the sharing screen okay?

21        THE COURT:  Yes, sir.  I see it just fine.

22        MR. XU:  Thanks, Your Honor.  I just want to briefly

23   address two points.  One is I understand I heard Mr. Lesko

24   argument that the plaintiff is not accusing that inducement

25   infringement in this case, and therefore, the arguments that the

35

1    claims are contextually should not matter.

2           But I submit that this is the complaint.  As you can

3    see, it actually in the complaint the plaintiff is saying that

4    from inducing or contributing to the infringement of any such

5    claims by others.  So plaintiff in this case is actually alleging

6    inducement infringement, which contradicts what plaintiffs or

7    plaintiff counsel just argued that whether a claim -- whether a

8    term is contextual matters -- has any relevance in this case.

9    That's point number one.

10          And point number two is I want to address Your Honor's

11   question regarding the Halliburton case from the Federal Circuit.

12   We disagree that the distinction that Mr. Lesko has made because

13   the case there, it's not just one Halliburton case.  In their

14   follow up cases that cites to the Halliburton case, the

15   determination there is whether there are factors that would

16   impact the scope of the claims, so that the determination on

17   infringement can fall can -- can be fall within or outside of the

18   claim scope based on those factors.

19          And those factors can be multi-factors, as in the

20   Halliburton case, but those factors can also be just like a

21   simple -- no, not simple -- single factors that will also impact

22   infringement determination whether it's within or outside of

23   scope.  And so whether the factors that impacts the contextual

24   claims are actually multi-factor or single factor should not

25   matter in terms of the -- to determine whether a claim is

36

1    indefinite under the Halliburton Federal Circuit's precedents.

2    THE COURT:  Okay.  Thank you, Mr. Xu.  I think on this

3    one, it's the Court's belief that at least, even though there's

4    an element of degree with potentially increased fees, we believe

5    that it's not such a degree that a person of skill in the art

6    could not understand the scope of the term with reasonable

7    certainty.  And as such, I do not believe it's indefinite.  And

8    we're going to stay with the Court's preliminary construction.

9    And then I've got the last term left is the device, if

10   I have that right.  So who would like to -- and we went with

11   plaintiffs construction on the device and equated it to the

12   camera system.  But let's hear from defendant on that.

13   Will that be you Mr. Xu or Mr. Cohen addressing?

14   MR. XU:  It will still be me, Your Honor.  Let me share

15   my screen again.  See whether this one works.  Is the share

16   screen okay?

17   THE COURT:  Yes, sir.  I see it.  I see it just fine.

18   MR. XU:  Okay.  Your Honor, so I will be addressing the

19   last term, the device.  I think there are two points that the two

20   parties are actually in agreement.  One is that the phrase "the

21   device" lacks antecedent basis, because the word device does not

22   occur before the phrase "the device" occur in the claim.  I think

23   the plaintiff admitted that.

24   And the second point is that we list so the device --

25   the word device is a broader term, it has a broader scope.  It

37

1    can be as I put it on the slide, it can be any element or

2    components designed for a specific use or purpose. So what we're

3    trying to figure out is whether a person of ordinary skill in the

4    art by reading the claims, by reading the specifications, by

5    reading other intrinsic record, can figure out what the device

6    actually refers to.

7            If whether it only refers to the camera system, as what

8    plaintiff is arguing, or as there are multiple options or

9    alternatives so that it's not just limited to only one option, so

10    that's the term is indefinite.

11           And we want to submit that there are at least two to

12    three options that the device can point -- can be. The first is

13    that it's the controller. On the slide, plaintiff is arguing

14    that whatever this device is, it needs to meet at least two

15    requirements. The first is the device has to "Operating to

16    confine automatic picture upload." And number two of the

17    requirement is that the device has to be instructed to confine

18    automatic picture upload.

19           But if we look at the claims on the screen, this is

20    screen one of '761 Patent, it's the controller, it's

21    automatically caused an upload of the pictures to the remote

22    picture hosting. And when that happened, it's when the upload is

23    allowed, based on the selected upload options.

24           And the selected upload options in the '761 Patent,

25    Claim 1, is the period without potential cellular network access

1  fees.  So in here, controller meet requirement number one from
2  plaintiff.  If controller is operating to confine automatic
3  picture upload.

4          And number two, if you look at the blue underline here,
5  the controller is to determine that the upload is allowed based
6  on the selected upload options.  So here, it tells you that the
7  selected upload options instructs the controller to determine
8  that whether the upload is allowed.  If it's allowed, then go
9  upload.

10          So here, the controller is also being instructed to
11  confine automatic picture upload.  So for both of these
12  requirements that proposed by the plaintiff that a device,
13  whatever the device needs to meet, controller meets it.  So
14  controller is one of the options that what that device can be.

15          And the second option, in plaintiffs brief, was that at
16  Docket 45, I think it's the plaintiffs response brief, they said
17  that the specification repeatedly uses and instructed only in
18  connection with the camera system or the camera.  So plaintiff is
19  arguing that because remember the requirement plaintiff said the
20  device has to be instructed.  So their argument is that look, in
21  the specification when the word instruct or instructed is used
22  its connection with the camera system, or the camera.  So either
23  both camera system or the camera can be the device.

24          But the camera and camera system are two different
25  terms.  They are two different devices.  We put in here US

1    7,697,827 Patent.  This is the parent patent after two patents in

2    suit.  And in here in Claim 1 is that in there it says a system

3    comprising a camera, and also other components.  So it makes

4    clear that in the context of the patents in suit, a camera system

5    is a different device from the camera.

6            So if it's based on plaintiff's own arguments that both

7    camera and camera system can be the device, and they are two

8    different devices, though the camera can also be one of the

9    options to fit the bill for the device.  So now at least have

10   three options, where the device is a controller, which fits

11   perfectly under plaintiffs own requirements, or it can be a

12   camera, or it can be a camera system.  But let's take a look at

13   the camera system.

14           That's the last point and we want to make.  The camera

15   system -- a camera system, this phrase only occurs in the

16   preamble of Claim 1 of '761 Patent.  And if we replace the device

17   phrase with the camera system, then the antecedent basis of the

18   device only refers to camera system showed up in the preamble.

19           This then means that it basically forces the preamble

20   to be limited.  But that is contradictory to the Federal Circuit

21   case law, because if you look at the claim structure of this

22   Claim 1, a camera system comprising all the necessary components

23   already.

24           So the phrase camera system in the preamble does not

25   impute or add any other additional features of what the claim has

40

1    already got.  So that the claims here is a structurally complete

2    invention.  So the preamble here, a camera system should not be

3    limited.

4              Now, but based on plaintiff's argument, if the device

5    is the camera system, it forces the preamble to be limiting,

6    which it can't be.  So that creates a contradiction, which means

7    that the -- for the options here, the device should not be the

8    camera system.  I will stop here and answer any questions if the

9    Court has.

10             THE COURT:  I do not have any questions at this time,

11   Mr. Xu.  Let me hear from plaintiff on this one.

12             MR. XU:  Okay.

13             THE COURT:  All right, Mr. Lesko.  And I'm especially

14   curious about one, the last point Mr. Xu made in that the -- you

15   know, would this require the preamble to be limiting and two,

16   how, as they stated in their brief, do we know that the device is

17   not referring to some other component within that claim aside

18   from the entire apparatus?

19             MR. LESKO:  Okay.  Of course, Your Honor.  I'm sorry,

20   one second.  I'm just having technical difficulties here.  So let

21   me address what Your Honor asked first.  So what you asked was

22   starting with the preamble issue, so CEV is not at all requesting

23   -- this was addressed in our brief, but I'm happy to discuss it

24   again here.

25             CEV is not at all address -- asking for the Court to

41

1   make the preamble itself limiting.  It doesn't matter if the

2   preamble is limiting or not here.  We don't even need to address

3   that issue.  The claim -- what we're saying is that in

4   referencing the device, when you review the intrinsic evidence,

5   it's clear that the referenced device is the camera system that

6   is recited in the preamble.

7          And therefore the claim element is of course limiting,

8   because it says that, you know, the camera system is what's

9   instructed to combine automatic picture uploads.  But you don't

10  have to take it to the next step where you're debating whether

11  that, you know, the recitation in the preamble is limiting in

12  some way.

13         The other point is that the '472 Patent claims; Claim 1

14  and 5 of the '472 Patents specifically already say that the

15  camera system is the device that has been confined, you know,

16  it's instructed to confine automatic picture uploads in certain

17  periods.  So clearly, the examiner and the PTO understood that

18  and I believed CEV is entitled to that claims go in here.

19         TCL never raised any issue with the way that claim is

20  worded for that specific term.  So there's no argument that

21  that's indefinite some way or that it matters, or has some --

22  raises some issue with whether the preamble should be limiting or

23  not.  TCL could have raised that argument, but it didn't.  And

24  neither did the examiner.  The examiner knew exactly what we were

25  talking about and said we were entitled to that claim scope.  So

42

1    I think that's really just a non-issue and a red herring raised

2    by TCL in this case.

3            Turning back to Your Honor's other question is why is

4    it not the controller or something else in the claim?  I think --

5    well, first of all, this Court's well aware that lack of, you

6    know, antecedent basis is in itself fatal.  And the other, you

7    know, established law, we all know, is, of course, that the

8    question is whether a claim in light of the intrinsic evidence

9    informs a POSITA with reasonable certainty.

10           And here, at best, TCL can raise an argument that other

11   devices exist in the claim, or other devices exists in the

12   specification, but there's nothing really in the intrinsic record

13   that would indicate that one of those other devices is the device

14   recited in his claim.

15           They didn't provide anything on that point.  And if you

16   look at both the specification and the prosecution history, it's

17   abundantly clear that what the device in this claim is the camera

18   system consistent with the other claims that will be '472 Patent.

19           Here on the screen, you can see this is from the '761

20   Patent specification that 12:64-13:1.  This is the direct support

21   for this claim element and CEV cited this support during

22   prosecution.  And what it says is in the spec itself, the

23   inventive camera system is preferably operable.  So that the

24   automatic connection is made only at certain times of the day or

25   the weekends, et cetera.  So as to confine picture transmission

43

1    to periods of cheaper network access, et cetera.

2            So right there in the spec, if a POSITA was wondering

3    what did you mean by the device?  You pull up the spec and the

4    answer is right there.  The event of camera system, camera

5    system.  And then you look back at the claim.  And that's exactly

6    what's in the claim.  And in the preamble, there's a camera

7    system there.  That really ends the inquiry.  There's nothing

8    contradictory in the specification.

9            And what we cited in addition to that was, you know,

10   the word instructs, again, in the specification, repeatedly

11   refers to a camera or camera system, being instructed.  And when

12   you look at TCL tried to, you know, cite some new evidence today

13   to show that there's some conflict between the camera and the

14   camera system.

15           But that's just not on point at all.  What they pulled

16   up was an '827 Patent, Claim 1.  That's a completely different

17   invention described in that claim.  It has nothing to do with

18   uploads.  Nothing to do with automatic uploads, first of all.

19           Second of all, if you look at what it said, it says in

20   the preamble that there's a system, and then the system to

21   camera.  There's no conflict between whether there's a difference

22   between a camera system and a camera, because of that.  It just

23   says a system.  I mean, the system could be all kinds of

24   components.  There could be a server in the system.  There could

25   be a computer in the system outside of the -- you know, the --

44

1  what the camera is.  So a system is a broad term, right?  And it

2  can cover all kinds of things.

3        And that doesn't mean it doesn't say camera system, or

4  raise any conflict between whether the camera in the spec is

5  different from the camera system in the spec.  And I'll reiterate

6  again, that's sort of a secondary argument for CEV.  When you

7  look at the main support for this claim on it, it says explicitly

8  that the camera system is the thing that is operable for being

9  confined, consistent with the way the claim is set up in the

10  claim language.  So I think that's really all I have to say.

11        I mean, there's also, of course, there's other evidence

12  in the prosecution history that CEV cited.  Specifically there

13  was during prosecution of the '761 Patent, there were claims

14  pending that said a camera system, and CEV said to the examiner,

15  you know, in responding to her objection that the device claimed,

16  has certain features and is supported in certain ways.

17        And of course, again, that's just consistent with when

18  you read the spec, and you read the history here, they're

19  consistent that the device in this instance is the camera system.

20  And with that, Your Honor, I'll just ask if you have any other

21  further questions for me to answer?

22        THE COURT:  I do not at this time.  Well, actually, let

23  me ask you on the -- so with the '761 Patent since it was a

24  continuation in part.  And I know we've got the argument that

25  '472 Patent is parallel claims.  But you know, it's kind of one

1     of those where it's got parallel claims that uses the camera

2     system instead of the device.

3              How going back to the '761 were they -- the claims in

4     the '761, this Claim 1, was it a new claim to this application

5     when it was filed?  Or is it carried forward from a prior

6     application?

7              MR. LESKO:  If you don't mind, Your Honor, I just want

8     to make sure the record is clear.  So the 76 -- the '472 Patent

9     is later filed.  These are all continuations and not

10    continuations in part of, you know, that original '827 Patent

11    that he put on the screen.  So I just want to make sure Your

12    Honor is aware of that so there's no confusion.

13             And then the claims in the '761 Patent were drafted as

14    new claims during prosecution, and then the '472 Patent, which

15    was a later continuation, those were new claims drafted at that

16    time as well.

17             THE COURT:  Okay.  And I guess what I was curious

18    about, to kind of word it slightly differently to make sure that

19    I'm trying to make it as clear as I can.  But I see a parallel,

20    obviously, between the claim language -- and it's discussed in

21    the brief -- a parallel between the claim language in the '761

22    and the later filed '472.  Are there any parallels to any of the

23    claims in the earlier file, the patents filed before the '761

24    Patent?

25             MR. LESKO:  There are not parallels -- well, there are

46

1    actually.  No, the parallel, there's one parallel patent that was

2    pending at the same time as the '761 Patent.  That was the '116

3    Patent.  And I think we've cited that file history, and we sort

4    of explained that relationship in our brief.

5          Those two were pending at the same time in the -- I

6    believe, the -- I'm not -- I don't recall the filing order.  But

7    I know that the claims were -- you know, both applications were

8    pending together.  And the issue, the '116, though had the same

9    antecedent basis problem.  It mistakenly referred to the device.

10          So you know, there's no other parallel language where

11   the claim referred to the camera system instead of the device

12   except for the '472 Patent, to answer Your Honor's question.

13          THE COURT:  Okay.  Okay. Thank you, Mr. Lesko.

14          Mr. Xu, would you like to respond?

15          MR. XU:  Yes, if I can have a few minutes?

16          THE COURT:  Certainly.

17          MR. XU:  Okay.  I can't get to Zoom.  Okay.  Thank you,

18   Your Honor.  I just want to address a few points that actually

19   relate to Your Honor's question, and also opposing counsel's

20   response.  Your Honor asked what plaintiff's response to the

21   preamble or arguments that TCL made.  And I submit that this is

22   the only paragraph in the surreply brief that the plaintiff tried

23   to address the preamble.

24          And actually it did not even address because all it

25   says is that never made that argument for the '472.  And as the

47

1    Court understand, the '472 and '761 Patent are two different

2    patents.  And the preamble issue is in this for the Claim 1 of

3    the '761 Patent is because of the lack of antecedent basis of the

4    phrase "the device" for '761 Patent.  But the device was not --

5    that phrase was not used in the '472 Patent, and therefore,

6    there's no antecedent basis to trigger any preamble issues for

7    the '472 Patent.

8            So these two patents are situated differently, and

9    because of what -- because of the different claim languages after

10   two different patents, and so the -- and the lack of antecedent

11   basis of the word -- of the phrase "the device" that triggers the

12   preamble conflict for Claim 1 of the '761 Patent.

13           And plaintiff does not have a response to that because

14   they can't.  And a preamble in one of the '761 Patent is not

15   limiting.  But if we have to take plaintiffs position that the

16   device is the camera, then it forces the preamble of Claim 1,

17   '761 to be limited, which is not the case here.  That's point

18   number one.

19           And the second point I want to make clear is that

20   plaintiff never addressed TCL's argument that controller can be

21   the device, as we have argued in our briefs and also made into

22   today's oral argument that for all the requirements that

23   plaintiff has argued that the device has to meet, controller

24   meets it -- meets all those requirements.

25           And in plaintiffs response briefs and surreply briefs,

48

1    they totally ignored -- try to rebut this argument that

2    controller can be the device here.  And they -- all plaintiffs

3    argue is that the camera system should be the device.  But in

4    here, there are other perfectly situated alternatives and options

5    that can also be the device.  And that's why because of the lack

6    of antecedent basis, one of ordinary skill in the art would not

7    be able to determine what the device is in Claim 1 of the '761

8    Patent.

9              THE COURT:  All right.  Thank you, Mr. Xu.  Let me go

10   off the record just briefly.

11             MR. XU:  Thank you.

12        (Off the record)

13             THE COURT:  Okay.  We're back on the record.  And while

14   I think this one is a very close call, I do think that there's

15   enough in the patent that a person of skill in the art would

16   understand what the device is referencing.  And while it's not

17   used much in the spec, at least, it appears to me that two times

18   that the phrase the device is used in the specification, it's

19   referring to the system as a whole.

20             And so with that, we're going to find that the device

21   is used in Claim 1 -- and what was it, Claim 1 and 5 or 17 of the

22   '761 Patent refers to the camera system and is not indefinite.

23   And so I think that takes care of everything that we needed to

24   address this morning, but let me start with Mr. Xu.

25             You're in the center of my screen or Mr. Siegmund,

49

1  you're right there beside him.  So is there anything else we need

2  to take up for defendant today?

3          MR. SIEGMUND:  Nothing further from defendant, Your

4  Honor.  Thank you very much for your time.

5          THE COURT:  Okay.  Anything else for plaintiff, Mr.

6  Lesko or Deaconson?

7          MR. DEACONSON:  No, Your Honor.  Thank you very much.

8          THE COURT:  All right.  Thank you all very much and we

9  will be adjourned.

10          MR. LESKO:  Thank you, Judge.  Have a good one.

11      (Proceedings adjourned at 12:32 p.m.)

12                          ---oOo---

13

14

15                    **C E R T I F I C A T E**

16      I, DIPTI PATEL, court approved transcriber, certify that the

17  foregoing is a correct transcript from the official electronic

18  sound recording of the proceedings in the above-entitled matter.

19

20

21  *Dipti Patel*

22  _____

23  DIPTI PATEL, CET-997

24  LIBERTY TRANSCRIPTS                    Date: February 27, 2023

25