# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| CUTTING EDGE VISION, LLC | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:22-CV-00285-ADA |
| | § | |
| TCL TECHNOLOGY GROUP | § | JURY TRIAL DEMANDED |
| CORPORATION, TCL ELECTRONICS | § | |
| HOLDINGS LIMITED, TCL | § | |
| COMMUNICATION TECHNOLOGY | § | |
| HOLDINGS LIMITED, and TCL | § | |
| COMMUNICATION LIMITED | § | |
| | | |
|    Defendants. | | |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
THAT THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT
ARE INVALID UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

I. Introduction ..................................................................................................................1

II. The Asserted Claims of the Patents-in-suit ................................................................1

    A. Asserted Claims ..............................................................................................1

    B. Relevant Specification and Prosecution History.............................................4

III. LEGAL STANDARD ..................................................................................................5

    A. Judgment On the Pleadings Through Rule 12(c)............................................5

    B. Patent Eligibility under 35 U.S.C. § 101 .........................................................6

IV. Argument......................................................................................................................6

    A. Under Alice Step 1, The Asserted Claims Are Directed To Abstract Ideas ......6

        1. Automatically uploading chosen pictures only when certain conditions are met is an abstract idea ......................................................................6

        2. The claims do not improve computer technology................................11

    B. Under Alice Step 2, the Claims of the Asserted Patents Recite No Inventive Concept ..........................................................................................................12

V. Conclusion..................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Tex., LLC v. Directv, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)................................................................................... 9, 10, 12

*Alice Corp. Pty. v. CLS Bank Int'l,*
  573 U.S. 208 (2014) ................................................................................................ 1, 6, 12, 13

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
  967 F.3d 1285 (Fed. Cir. 2020)............................................................................................. 8

*Apple, Inc. v. Ameranth, Inc.,*
  842 F.3d 1229 (Fed. Cir. 2016)............................................................................................. 6

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
  687 F.3d 1266 (Fed. Cir. 2012)............................................................................................. 5

*Bilski v. Kappos,*
  561 U.S. 593 (2010).............................................................................................................. 5

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018)........................................................................................... 10

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014)............................................................................................. 5

*Customedia Techs., LLC v. Dish Network Corp.,*
  951 F.3d 1359 (Fed. Cir. 2020)............................................................................................. 7

*Electric Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016)............................................................................................. 6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
  955 F.3d 1317 (Fed. Cir. 2020)............................................................................................. 8

*Finjan Inc. v. Blue Coat Sys.,*
  879 F.3d 1299 (Fed. Cir. 2018)........................................................................................... 12

*Guidry v. American Public Life Ins. Co.,*
  512 F.3d 177 (5th Cir. 2007) ................................................................................................ 5

*In-Depth Test LLC v. Maxim Integrated, Products, Inc.,*
  2018 WL 6617142 (D.Del. Dec. 18. 2018).................................................................... 5, 8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
  850 F.3d 1332 (Fed. Cir. 2017)............................................................................................. 7

# TABLE OF AUTHORITIES CONT'D

Page(s)

**Cases**

*Mortage Application Tech., LLC v. MeridianLink, Inc.*,
    839 Fed. Appx. 520 (Fed. Cir. 2021) ......................................................................... 5

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) .................................................................................. 12

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ............................................................................ 7, 11

*SkillSurvey, Inc. v. Checkster LLC*,
    178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir.
    2017) ........................................................................................................................ 13

*Synopsis, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ................................................................................ 13

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .............................................................................. 7, 13

*USC IP Partnership L.P. v. Facebook, Inc.*,
    576 F.Supp.3d 446 (W.D. Tex. 2021) (Albright, J.) ...................................... 1, 10, 13

*WhitServe LLC v. Dropbox, Inc.*,
    854 Fed. Appx. 367 (Fed. Cir. 2021) ....................................................................... 11

**Statutes**

35 U.S.C. § 101 ................................................................................................... *passim*

**Other Authorities**

F.R. Civ. P. 12(c) ....................................................................................................... 1, 5

Rule 12(b)(6) .................................................................................................................. 5

I.      INTRODUCTION

Defendants move for judgment on the pleadings pursuant to F.R. Civ. P. 12(c) that the asserted claims of the patents-in-suit are invalid under 35 U.S.C. § 101.

The focus of the asserted claims is directed to an abstract idea of automatically uploading chosen pictures when certain conditions are met, such as only during periods without "potential cellular network access fees" or "potentially increased cellular network access fees." Not surprisingly, there is no disclosure in the patent specification that informs a person of ordinary skill in the art ("POSITA") how pictures are uploaded without "potential cellular network access fees" or "potentially increased cellular network access fees." The claims fail to recite any improvement to computer technology, instead reciting only generic and well-known components such as "camera," "lens," and "memory" for practicing the abstract idea.

Under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) and prior Supreme Court precedent, abstract ideas are not patentable under § 101 because they are 'the basic tools of scientific and technological work.'" *See USC IP Partnership L.P. v. Facebook, Inc.*, 576 F.Supp.3d 446, 450 (W.D. Tex. 2021) (Albright, J.). The asserted claims are patent ineligible under the *Alice* two-factor framework because they (a) are directed to abstract ideas, and (b) involve only "well understood, routine [and] conventional activities previously known in the industry." *Alice*, 573 U.S. at 225.

II.     THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT

A.      Asserted Claims

Plaintiff Cutting Edge Vision LLC ("CEV") asserts claims 1-4 and 16 of U.S. Patent No. 10,063,761 ("the '761 patent") and claims 1, 2, 5 and 6 of U.S. Patent No. 11,153,272 ("the '272 patent"). The asserted independent claims are reproduced below:

**'761 Patent, Claim 1**:

> 1. A camera system comprising:
> (a) a lens;
> (b) a cellular interface;
> (c) an image sensor configured to take pictures;
> (d) a non-volatile local memory configured to store one or more pictures;
> (e) a touch sensitive display;
> (f) a *controller configured to*:
>> (i) receive, via the touch sensitive display, a user selection of an upload option that *instructs* the device to confine automatic picture upload to periods *without potential cellular network access fees*;
>> (ii) automatically connect to a remote picture hosting service and cause an *upload* of one or more *pictures* stored in the non-volatile memory to the remote picture hosting service via the cellular interface, after receiving:
>>> (1) data from the cellular interface used by the controller to determine that the upload is allowed based on the selected upload option,
>>> (2) an indication that the system is connected to the internet via the cellular interface; and
>>> (3) an indication from the local memory that a user has elected an option to designate at least one picture from the *group of pictures* stored in the local memory to be uploaded to the remote picture hosting service.

[Annotation: Claim terms defining standard camera with well-known components]

**'472 Patent, Claim 1**

> 1. A camera system comprising:
> (a) a lens;
> (b) a cellular interface;
> (c) an image sensor that is coupled to the lens and operable to capture pictures;
> (d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;
> (e) a touch sensitive display;
> (f) a *controller* coupled to the cellular interface, the non-volatile memory and the touch sensitive display, and *configured to*:
>> (i) receive, via the touch sensitive display, a user selection of an upload option that instructs the camera system to confine automatic picture upload to *periods without potentially increased cellular network access fee*s;
>> (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a *group of image sensor-captured pictures* stored in the local memory, during any period detected by the controller in which all three of the following conditions are met:

[Annotation: Claim terms defining standard camera with well-known components]

2

(1) the upload is allowed because the system is within one of the period *without potentially increased cellular network access fees*, as determined using data from the cellular interface,
(2) The system is connected to the internet via the cellular interface; and
(3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the *group of pictures* to be uploaded to the picture hosting service.

**'472 Patent, Claim 5**

> Claim terms defining standard camera with well-known components

5. A camera system comprising:
(a) a lens;
(b) a cellular interface;
(c) an image sensor that is coupled to the lens and operable to capture pictures;
(d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;
(e) a touch sensitive display;
(f) a *controller* coupled to the cellular interface, the non-volatile memory and the touch sensitive display, and configured to:
   (i) display on the touch sensitive display a user-selectable input that instructs the camera system to confine automatic picture upload to *periods without potentially increased cellular network access fees*;
   (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all the following conditions are met:
      (1) the controller has received from the display a selection of the user-selectable input that instructs the camera system to confine automatic picture uploads to periods *without potentially increased cellular network access fees*;
      (2) the controller has confirmed that the camera system is within a period without *potentially increased cellular network access fees*, as determined using data from the cellular interface;
      (3) the system has a connection to the internet via the cellular interface; and
      (4) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of image sensor-captured pictures to be uploaded to the picture hosting service.

As is evident from the above, the asserted independent claim terms recite the elements of a common camera system that permits pictures to be uploaded when certain conditions are met, such as only during periods "without potential network access fees" or "without potentially increased network access fees." This is akin to saying, "I want to send pictures when it's not going to cost me anything or when it's not going to cost me a lot of money," an abstract idea rooted in the real-world scenarios of a human problem.

All the asserted dependent claims describe minor variations of the abstract idea. *See, e.g.*, '761 patent, claim 2 (pictures are uploaded to a place associated with email), claim 3 (pictures are chosen to be uploaded by recognizing human voice); and claim 4 (pictures are uploaded to a place that can be printed), claim 16 (pictures can be further transmitted after being uploaded); '472 patent, claims 2, 6 (pictures are uploaded to a place that can be printed).

### B.    Relevant Specification and Prosecution History

Both patents share a common specification, tracing their lineage to application no. 11/163,391, filed on October 17, 2005. *See* '761 patent at 2; '472 patent at 2. Both patents are the 10th continuation or divisional of the 2005 application. The applications for the '761 patent and the '472 patent were filed on November 24, 2015 and October 25, 2019, respectively, well over 10 years after the date the original application was filed. It is common knowledge that ten years is an eternity in the digital camera, telecommunications, and Internet industries.

The portion of the specification that relates in some way to the asserted claims bridges column, 11, line 65 through column 13, line 24. The specification discloses that a "camera system is internally equipped with wireless interface technology" which is "known in the art." *See* '761 patent at 12:3-7.[1] The specification goes on to say that "the inventive camera system is operable for being instructed to automatically initiate a connection to the internet, LAN,

---

[1] All references to the specification are to the '761 patent. The specification of the '472 patent is identical, but the line numbers are a little different.

printer, etc. whenever the predetermined conditions are met" and that "the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc." *Id*. at 12:57-13:1.

### III. LEGAL STANDARD

#### A. Judgment On the Pleadings Through Rule 12(c)

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss…[t]he plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Guidry v. American Public Life Ins. Co*., 512 F.3d 177, 180 (5th Cir. 2007). On a motion for judgment on the pleadings for patent eligibility, this Court may consider the asserted claims, specification, and prosecution history of the patents-in-suit. *See Mortage Application Tech., LLC v. MeridianLink, Inc.*, 839 Fed. Appx. 520, 525 (Fed. Cir. 2021) (affirming district court finding of patent ineligibility under section 101 and considering prosecution history).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Courts may properly decide this threshold issue by way of a motion for judgment on the pleadings. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352, 1354-55 (Fed. Cir. 2014) (affirming a Rule 12(c) judgment on the pleadings); *In-Depth Test*, 2018 WL 6617142, at *1, *4-7 (granting motion for judgment on the pleadings finding patent ineligibility). In those situations, claim construction is not required to conduct a § 101 analysis. *See Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

B.     **Patent Eligibility under 35 U.S.C. § 101**

The Supreme Court in *Alice* set forth the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id*. If the Court determines that the claims are directed to an abstract idea, it must then "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. (internal quotations and citation omitted). This second step is "a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. at 217-18 (internal quotations and citation omitted). A claim reciting merely "well-understood, routine [and] conventional activities previously known to the industry" cannot provide an inventive concept. *Id*. at 2359 (internal quotations and citation omitted).

IV.    **ARGUMENT**

A.     **Under *Alice* Step 1, The Asserted Claims Are Directed To Abstract Ideas**

1.     **Automatically uploading chosen pictures only when certain conditions are met is an abstract idea**

The Federal Circuit has confirmed that an abstract idea can be described at multiple levels of abstraction. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) ("An abstract idea can generally be described at different levels of abstraction."). Consistent with this precedent, the Federal Circuit has found patents unpatentable based on abstract ideas described at various levels of abstraction. For example, at a higher level of abstraction, the Federal Circuit has found unpatentable claims directed to abstract ideas such as "gathering and analyzing information of a specified content, then displaying the results," *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016), or "collecting,

displaying, and manipulating data." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("*Capital One II*"). On the other end of the spectrum, the Federal Circuit has confirmed the unpatentability of claims using a more granular statement of the abstraction, such as the eleven-step abstraction in *Ultramercial*. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) ("An examination of the claim limitations of the [] patent shows that claim 1 includes eleven steps for displaying an advertisement in exchange for access to copyrighted media. . . . . [t]his ordered combination of steps recites an abstraction—an idea, having no particular or concrete or tangible form.").

The asserted claims of the patents-in-suit are clearly directed to an abstract idea because they only recite high-level desired functional results using conventional hardware and undisclosed software programming. At a high level, the focus of the asserted claims is directed to an abstract idea of automatically uploading chosen pictures when certain conditions are met. At the next level of abstraction, the abstract idea can be described as automatically uploading chosen pictures when certain conditions are met, such as only during periods without "potential cellular network access fees" or "potentially increased cellular network access fees."

Regardless of the level of abstraction applied to the claims, the claims here are squarely within the category of claims "that do not focus on an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018). The claims only recite high-level functional results: user input is received, processed to determine whether conditions are met (whether online, whether pictures are selected, whether fees will be charged, whether cheaper fees will be charged), and transmit the pictures to a remote place. The asserted claims here "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem." *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). They instead purport to address a *human* problem of using the system

when cheaper, which is not limited to computers, cameras, and/or Internet. The claims, in other words, do not address a technological problem – they address a human problem that happens to also occur when computers, cameras, and Internet are used as tools to store, retrieve, and transmit information (*i.e.*, pictures).

It should come as no surprise that the claims' "essentially result-focused, functional" language fails to provide "the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it." *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1296-97 (Fed. Cir. 2020). As shown above in section II, the asserted claims recite a controller that is **configured to** transfer selected pictures when conditions are met, such as "without potential cellular network access fees" or "without potentially increased cellular network access fees." *See In-Depth Test LLC v. Maxim Integrated, Products, Inc.*, 2018 WL 6617142, at *6 (D.Del. Dec. 18. 2018) (finding that the patent is not directed to improvements in computer functionality when it "simply claims a conventional computer that . . . is 'configured'" to perform certain functions). Indeed, there are no algorithm or any details disclosed in the specification to determine when there is no potential cellular network charges or no potentially increased cellular network charges; there are no algorithm disclosed in the specification to automatically connect the camera to the cellular network, or to automatically transfer the pictures under the conditions recited in the claims. This lack of disclosure in the specification confirms that the claims are purely functional and abstract. As a result, the patents-in-suit "merely claims" the recited "functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance," rendering the claims ineligible at step one. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020).

The asserted claims are analogous to claims in numerous previous cases found to be directed to abstract ideas.

In *Yu v. Apple Inc.*, the Federal Circuit addressed a claim reciting "an improved digital camera comprising: a first and a second image sensor … two lenses … an analog-to-digital converting circuitry … an image memory … a digital image processor … producing a resultant digital image." 1 F. 4th 1040 (Fed. Cir. 2021). The Federal Circuit held that the claims were directed to an unpatentable abstract idea of "taking two pictures (which may be at different exposures) and using one picture to enhance the other in some way" because the claim is "'directed to a result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery' rather than 'a specific means or method that improves the relevant technology.'" *Id*. at 1043. The recited two image sensors, two lenses, an analog-to-digital converting circuitry, an image memory, and a digital image processor were well-known and conventional and simply provide a generic environment in which to carry out the abstract idea. *Id*. at 1043-44.

In *TLI Communications Patent Litigation*, the Federal Circuit addressed claims reciting record, store, and deliver digital pictures to a central server. 823 F.3d 607, 610 (Fed. Cir. 2016). Exemplary claim 17 of the asserted patent there recited "***recording*** images using a digital pick up unit [i.e., a camera] in a telephone unit [e.g., a mobile device]," "***storing*** the images recorded by the digital pick up unit in a digital form as digital images," and "***transmitting*** data including at least the digital images and classification information to a server . . ." *Id*. (emphasis added). The Federal Circuit held that the claims were directed to an unpatentable abstract idea, *i.e.*, "classifying and storing digital images in an organized manner." *Id*. at 611.

In *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, the Federal Circuit addressed claims reciting a method of using a mobile device to obtain and play back media content stored on a network based server. 838 F.3d 1266, 1268 (Fed. Cir. 2016). The Federal Circuit, relying on *TLI Communications*, held that the claims were directed to the unpatentable abstract idea of "delivering user-selected media content to portable devices . . ." *Id*. at 1269. The Federal

9

Circuit emphasized that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea . . . ." *Id.* The claims of the patents-in-suit are also functional and analogous to the *Affinity Labs* claims — except that instead of reciting the download and playback of media content from a central server using a mobile device, they recite the recording, storing, and transferring pictures to a remote server from a camera device. The direction that the media content is sent, however, does not change the fundamentally abstract nature of the idea.

In *USC IP Partnership, L.P. v. Facebook, Inc.*, this Court considered patent claims directed to the abstract idea of "collecting, analyzing and using intent data" at a high level and directed to the abstract idea of "providing recommended information to a visitor based on his or her current intent" on a more granular level. 576 F.Supp.3d 446, 454 (W.D. Tex. 2021). This Court held that those claims were directed to the abstract idea of "collecting, analyzing and using intent data," observing that the claims "only recite high-level functional language without explaining how the claimed invention improve the functionality of the computer or the Internet." *Id.* at 455. This Court further observed that there was "no explanation of how 'processing' steps are performed or how it causes the intent engine to determine an 'inferred intent' or 'at least one recommended webpage,'" and that the "specification similarly offers little explanation of how these claimed functions are carried out and how they improve the performance of the network platform." *Id.* at 456. As shown in section II.B above, as in *USC*, the specification of the patents-in-suit also offers little explanation of how the claimed limitation, such as uploading during periods without "potential network access fees" or "potentially increased network access fees," are carried out.

Lastly, none of the dependent claims changes the conclusion that the claims are directed to abstract ideas as they describe merely minor variations of the abstract idea. *See supra* §II.A; *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 n.1 (Fed. Cir. 2018) (additional limitations in dependent claims adding elements directed to types of information processed did

not change abstract idea); *SAP*, 898 F.3d at 1168 ("As many cases make clear, even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract.")

### 2. The claims do not improve computer technology

The Federal Circuit has emphasized that a key inquiry when addressing patentability under Section 101 is whether the claims are directed to an improvement in computer functionality or merely use computers as tools. *See TLI Commc'ns*, 823 F.3d at 612.

Here, the claims of the patents-in-suit are not directed to any improved computer technology. The claims do not recite any new computer, hardware component, picture format, data structure, or communication protocol that improves in any way on existing technology. The claims do not recite any new means of storing, choosing, or transmitting pictures. *See TLI Commc'ns*, 823 F.3d at 612 ("storing, receiving, and extracting data" using servers is conventional, and claims merely describe "generalized steps to be performed on a computer using conventional computer activity"); *WhitServe LLC v. Dropbox, Inc.*, 854 Fed. Appx. 367, 372 (Fed. Cir. 2021) (claims "rely on the ordinary storage and transmission capabilities of computers within a network . . .").

The hardware recited in the claims — "camera," "lens," "sensor," "memory," "touch sensitive display," and "cellular interface" — is purely conventional. *See, e.g.*, '761 patent at 7:13-15. The claims also do not disclose using any of the conventional hardware in any way other than how they have always been used. For example, the claims do not disclose any new or improved means of connecting these components, any improved type of network connection, or any new way to store, choose, or transmit pictures. The communication by and between these components (*e.g.*, "indication" or "data") is also described in purely functional terms. *See TLI Commc'ns*, 823 F.3d at 612 ("[T]he specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in

11

purely functional terms").

Thus, the claims of the patents-in-suit are the quintessential example of claimed ideas that merely use generic computers and components as tools. *See Finjan Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) (claims directed to unpatentable abstract idea where none of alleged computer improvements "'enables a computer . . . to do things it could not do before'"); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) ("'[T]he focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.'").

### B. Under *Alice* Step 2, the Claims of the Asserted Patents Recite No Inventive Concept

The limitations of asserted claims of the patents-in-suit, considered individually and as ordered combinations, do not recite any inventive concept.

As demonstrated above, claims of the patents-in-suit do not recite any improved computer, hardware component, picture format, data structure, communication protocol, or any other improvement to computer technology. *See supra* §IV.A2. Rather, they recite using well-known and conventional hardware components (*e.g.*, "camera," "lens," "sensor," "memory," "touch sensitive display," and "cellular interface") to perform "well-understood, routine, conventional activities previously known in the industry." *See supra* §§II.A-B; *Alice*, 573 U.S. at 225; *Affinity Labs of Tex., LLC v. Directv, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (finding no inventive concept where the claim "simply recite[d] the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea"); *Elec. Power Grp.*, 830 F.3d at 1355–56 ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to past the test of an inventive concept in the application of an abstract idea").

In *USC*, this Court found that the claims did not recite anything "significantly more"

than the abstract idea itself, stating "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network and display technology for gathering, sending and presenting the desired information." 576 F.Supp.3d at 456-457. The same is true here. The asserted claims require only off-the-shelf, conventional [digital camera], network and display technology for gathering [and] sending the desired [chosen] information [pictures]. In this regard, the claims recite standard off-the-shelf hardware used to implement the abstract idea of automatically transferring pictures over a cellular network when certain conditions are met, such as when data charges are cheap.

Further, nothing about the "ordered combination" of claim elements "transform[s]" the nature of the claims into a patent-eligible invention. *Alice*, 573 U.S. at 217. The sequence in the claims is what one would expect to follow to implement the abstract ideas in a logical and practical way. Nor can there be any argument that the purported novelty of the combination or sequence of steps in the claims of the patents-in-suit resolves the deficiencies under § 101. *See Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea") (emphasis in original); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We do not agree with *Ultramercial* that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete"); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 260 (E.D. Pa. 2016) ("A novel combination of steps alone cannot alone render an abstract idea patentable."), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017).

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully submit that their motion for judgment on the pleadings should be granted and this Court should hold that the asserted claims are patent ineligible under 35 U.S.C. § 101.

Dated: April 13, 2023    Respectfully submitted,

By: _/s/ Mark D. Siegmund___
**Cherry Johnson Siegmund James, PLLC**
Mark D. Siegmund
Gregory Phillip Love
400 Austin Ave., 9th Floor
Waco, Texas 76701
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

**RIMON P.C.**
Thomas Fawell
Texas State Bar No. 24118098
700 Milam Street, Suite 1300
Houston, TX 77002
Telephone/Facsimile: (832) 404-2051

Jason Liang Xu (*PHV admitted*)
DC Bar No. 980531
1990 K Street NW, Suite 420
Washington, D.C. 20006
Telephone/Facsimile: (202) 470-2141

Eric Cohen (*PHV admitted*)
2530 Meridian Parkway, #300
Durham, North Carolina 27713
Telephone/Facsimile: (919) 241-7495

*Counsel for Defendants TCL Technology Group Corporation, TCL Electronics Holdings Limited, TCL Communication Technology Holdings Limited, and TCL Communication Limited*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a copy of the above-referenced document on April 13, 2023, via electronic mail upon all counsel of record.

*/s/ Mark D. Siegmund*
Mark D. Siegmund
