IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CUTTING EDGE VISION, LLC<br><br>    Plaintiff,<br><br>v.<br><br>TCL TECHNOLOGY GROUP CORPORATION, TCL ELECTRONICS HOLDINGS LIMITED, TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, and TCL COMMUNICATION LIMITED<br><br>    Defendants. | Case No. 6:22-CV-00285-ADA-DTG<br><br>JURY TRIAL DEMANDED |

**EXHIBIT A**

**PLAINTIFF CUTTING EDGE VISION'S RULE 12(C) STATEMENT OF MATERIAL FACTS FROM THE PUBLIC RECORD, SUBMITTED IN OPPOSITION TO DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Cutting Edge Vision. LLC ("CEV"), submits this statement of material facts from the public record consisting of CEV's Amended Complaint (Dkt. #55), U.S. Patent 10,063,761, U.S. Patent 11,153,472, and the public patent prosecution histories from the United States Patent Office for Application Serial No. 14/950,370 (U.S. Patent 10,063,761) ("'761 F.H."), Application Serial No. 16/663,742 (U.S. Patent 11,153,472) ("'472 F.H."), and Application Serial No. 15/188,736 (U.S. Patent 9,936,116) ("'116 F.H").

1. Cutting Edge Vision, LLC is the assignee of a portfolio of fourteen patents issued to Jeffrey C. Konicek for the inventions claimed therein relating to camera and camera-enabled mobile device technologies. First Amended Complaint (Dkt. #55) ¶20.

2. The CEV patents in the portfolio currently asserted in this case to be infringed by TCL are: (a) Claims 1-4 and 16 of U.S. Patent 10,063,761, entitled "Automatic Upload of Pictures from a Camera," filed November 24, 2015, issued August 28, 2018; and (ii) Claims 1, 2, 5, and 6 of U.S. Patent 11,153,472, entitled "Automatic Upload of Pictures from a Camera," filed October 25, 2019, issued October 19, 2021. First Amended Complaint (Dkt. # 55) ¶¶32-46.

3. CEV has licensed its Patents, including the two patents in suit, to eleven of the world's leading mobile phone manufacturers including (1) Samsung Electronics Co., Ltd.; (2) LG Electronics Inc.; (3) Sony Mobile Communications Inc.; (4) Microsoft Corporation; (5) ZTE; (6) OnePlus Technology (Shenzhen) Co., Ltd.; (7) Kyocera Corporation; (8) HTC Corporation; (9) ASUSTeK Computer Inc.; (10) BLU Products Inc., and (11) Sonim Technologies Inc. First Amended Complaint (Dkt. #55) ¶¶ 1, 22, 23.

4. The '472 Patent specification describes at 14:32-41,[1]

> "The aspect of the invention allowing for automatic connection to a LAN or the internet is also contemplated for use with cell phone cameras. This aspect of the invention ameliorates "the prior art storage space limitations which severely hampers the utility of the cell phone camera.
>
> Cellular service providers typically charge a fee for internet access or emailing and so an automatic feature to connect to the net or send email for the purposes of transmitting pictures can improve revenue generation for these companies."

5. The '472 Patent specification describes at 12:27-31,

> "[T]he inventive camera system is equipped with software and hardware coupled to the camera controller allowing independent communication with a computer network for the primary purpose of communicating its pictures over the internet…. [T]he invention contemplates the use of wired LAN, cellular data networks, etc. as the interconnection technology (FIG. 3, element 46 b) used by the inventive camera system."

---

[1] The portions of the '472 Patent specification cited herein are also found in the '761 Patent specification.

6. The '472 Patent specification describes at 12:62-13:1,

> "In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed to automatically initiate a connection to the internet, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc)."

7. The '472 Patent specification describes at 13:3-7,

> "Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc."

8. The '472 Patent specification describes at 13:16-30,

> "In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention.
>
> For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet- connected home computer (when he is on vacation, for instance), etc.
>
> In this way, valuable pictures are immediately backed-up and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced."

9. The '472 Patent specification describes at 16:58-63:

> "[A]utomatically connecting to the internet when a set of predetermined rules or conditions (such as time, date, *status of equipment*, etc) is met would be useful for the download/upload of information from/to the internet, like music, video, etc. for processing, storage, transmission to another party, etc."

10. '472 Patent Claim 1 recites:

> A camera system comprising:
>
> * * *
>
> (f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:
>
> > (i) receive, via the touch sensitive display, a user selection of an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;
> >
> > (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all three of the following conditions are met:
> >
> > > (1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,
> > >
> > > (2) the system is connected to the internet via the cellular interface; and
> > >
> > > (3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service.

11. '472 Patent Claim 5:

> A camera system comprising:
>
> * * *
>
> (f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to: ...
>
> > (i) display on the touch sensitive display a user-selectable input that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;
> >
> > (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local

memory, during any period detected by the controller in which all the following conditions are met:

    (1) the controller has received from the display a selection of the user-selectable input that instructs the camera system to confine automatic picture uploads to periods without potentially increased cellular network access fees;

    (2) the controller has confirmed that the camera system is within a period without potentially increased cellular network access fees, as determined using data from the cellular interface;

    (3) the system has a connection to the internet via the cellular interface; and

    (4) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of image sensor-captured pictures to be uploaded to the picture hosting service.

12.    '761 Patent Claim 1:

A camera system comprising:

\* \* \*

(f) a controller configured to:

(i) receive, via the touch sensitive display, a user selection of an upload option that instructs the device to confine automatic picture upload to periods without potential cellular network access fees;

(ii) automatically connect to a remote picture hosting service and cause an upload of one or more pictures stored in the non-volatile memory to the remote picture hosting service via the cellular interface, after receiving:

    (1) data from the cellular interface used by the controller to determine that the upload is allowed based on the selected upload option,

    (2) an indication that the system is connected to the internet via the cellular interface; and

    (3) an indication from the local memory that a user has elected an option to designate at least one picture from the group of pictures stored in the local memory to be uploaded to the remote picture hosting service.

13. On October 25, 2019, with its initial filing of the claims and application that eventually issued as the '472 Patent, CEV submitted an Information Disclosure Statement ("the 10/25/2019 IDS"). '472 F.H. at CEV-0011561-576.

14. In the 10/25/2019 IDS, CEV distinguished "Applicants claims" from prior art timer-based uploads:

> "Applicant's claims clearly distinguish timer based uploads where the user picks a time for the system to upload pictures, and the system uploads pictures at that set, selected time, as purportedly described in Colby, Kusaka 1, and Kawaoka. See, e.g., Colby at [0046] (stating "Other embodiments include modes wherein images are transmitted… at a specific time of day"); Kusaka 1 at [0432] and [0478] (describing that '[t]he CPU 50 stores in memory the selected time block, engages a means for time count such as the timer 74 to count the time and automatically executes the transmission of the specified image information to the outside by detecting that the current time point has entered a selected time block'); and Kawaoka at [0100] (stating '[t]he transmission allowance conditions-judging unit 170 obtains time from the timer 86 through the time-obtaining section 160. Then, the transmission allowance conditions-judging unit 170 judges whether or not to transmit images based on the obtained time.')"
> .

'472 F.H. at CEV-0011568.

15. In that same 10/25/2019 IDS, CEV again distinguished its claims from other existing upload methods:

> "As an alternative to the timer based uploads, Kawaoka also purportedly describes calculating the upload cost based on the file size or the amount of time the upload is expected to take and previously stored cost per minute estimates. The system determines whether to upload based on that internal calculation. Again, this more conventional method does not use current data from the cellular interface to determine whether or not the device is currently in a period of potentially increased cellular network access fees - the system has a stored cost parameter and makes basic calculations based on it...."

'472 F.H. at CEV-0011569.

16. In that same 10/25/2019 IDS, CEV also stated:

    "None of the references of record discloses or suggests 'an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees.' Furthermore, none of the references describes, as a condition for upload, that the controller determines 'the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface' and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met. Thus, all of the pending claims are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family.

    The automatic upload recited in each of the independent claims is also conditioned upon pictures being designated – the controller is configured to enable upload of the designated group of pictures if pictures are designated and the other conditions are met. This feature of the claims further distinguishes systems that only provide for uploading all stored pictures, as well as systems that upload each and every picture immediately in response to the picture being taken."

    '472 F.H. at CEV-0011567.

17. On the same day with its initial filing of the application that issued as the '472 Patent,

    CEV stated in its preliminary amendment presenting the claims:

    "Applicant has also taken care to prepare the claims in compliance with 35 U.S.C. § 101 requiring claims to be directed to specific patentable subject matter. Applicant requests that the Examiner inform Applicant if he believes any claim is directed to any unpatentable subject matter so that appropriate amendments can be made."

    '472 F.H. at CEV-0015419.

18. In a different IDS filed on March 11, 2020, CEV stated:

    "Ma … teaches to avoid altogether the cellular network because of fees and other purported complications associated with cellular uploading. See e.g., Ma at [0056] (stating '[t]he invention obviates the use of a cellular phone system to upload photos….Cellular telephone services, used by mobile phones, also require complex telecommunication protocols including dialing up the system, transmitting cellular phone signals and other processes that take time, resources, cost money in air time and fees,

and are generally cumbersome for a user who simply wants to upload photograph information….'). Thus, the device in Ma uses an internet-connected Kiosk to upload instead of the cellular network. See e.g., Ma at [0024]."

19. The claims that CEV presented and discussed in the October 25, 2019 IDS issued as the claims of the '472 Patent, and the Examiner did not issue a Section 101 rejection. '472 F.H. at CEV-0001850-851.

20. The application that issued as CEV's '116 Patent was pending at the same time with and examined by the same Examiner that examined the application that issued as CEV's '761 Patent. '116 F.H. at 0031251-255, '761 F.H. at CEV 0030604-608

21. CEV conducted an examiner interview on December 7, 2017 during the prosecution of CEV's '116 Patent, and in a written summary of that interview (dated December 11, 2017) stated:

> "The Examiner asked whether the current claims are patentable over Colby [Pub. No. 2003/0030731), which purportedly allows a user to "designate a time of day" for picture uploads. Applicant distinguished the present claim from a 'timer.'
>
> Specifically, Applicant used the hypothetical example of an egg timer vs. a device that determines when an egg is actually finished. In a timer scenario, cook time is set – and the device will stop cooking the egg at a designated time, regardless of whether the egg is 'done.' On the other hand, a device that actually determines whether an egg is 'done' monitors the specific condition of the egg and only stops cooking it when the conditions are right.
>
> Applicant's invention is comparable to the latter example and offers many explicit benefits over a simple timer.
>
> For example, a simple timer for a picture upload (i.e., setting the upload for 8 PM) would still result in charges to a user's account if the user is 'roaming' at the designated time that the upload begins.
>
> In short, a timer does not adequately prevent roaming or other network charges that can be incurred during photo uploads.

> Applicant also pointed out that the Colby reference fails to disclose or suggest the claims for many other reasons, and urged the Examiner to review the claims as a whole in determining their patentability."

'116 F.H. at CEV-0031291.

22. After the interview with the Examiner in the application that led to the '116 Patent, the examiner allowed the claims of the '116 Patent and also allowed the claims of the '761 patent. '116 F.H. at 0031251-255, '761 F.H. at CEV 0030604-608.

Respectfully submitted on April 27, 2023, by:

        /s/ Justin Lesko

Justin J. Lesko
IL Bar No. 6306428
*Admitted Pro Hac Vice*
Law Offices of Lisa & Lesko, LLC
55 East Monroe Street, Suite 3800
Chicago, IL 60603
Tel.: (774) 484-3285
JustinLesko@patentit.com

Steven G. Lisa
IL Bar No. 6187348
*Admitted Pro Hac Vice*
Law Offices of Lisa & Lesko, LLC
55 East Monroe Street, Suite 3800
Chicago, IL 60603
Tel.: (480) 442-0297
SteveLisa@patentit.com

Eamon Kelly
IL Bar No. 6296907
*Admitted Pro Hac Vice*
SPERLING & SLATER, LLC
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
Tel.: (312) 641-3200
Fax: (312) 641-6492

ekelly@sperling-law.com

*Lead Counsel for Plaintiff*

David N. Deaconson
Texas Card Bar #05673400
PAKIS, GIOTES, PAGE & BURLESON, P.C.
P.O. Box 58
Waco, TX 76703-0058
(254) 297-7300 Phone
(254) 297-7301 Facsimile
deaconson@pakislaw.com

*Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 27th day of April 2023.

                                                               /s/ Justin Lesko
                                                                 Justin Lesko