# EXHIBIT F

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/663,742 | 10/19/2021 | 11153472 | Torpere-F04-514 | 3076 |

107554        7590        09/29/2021

JUSTIN LESKO
LAW OFFICES OF LISA & LESKO, LLC
C/O INTELLEVATE, LLC.
900 Second Ave S. Suite 600
MINNEAPOLIS, MN 55402

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Cutting Edge Vision LLC, Scottsdale, AZ;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

CEV-0001848

| | | | | | |
|---|---|---|---|---|---|
| | | **INFORMATION DISCLOSURE STATEMENT BY APPLICANT Substitute for Form PTO-SB/08** | Application Number: | 16/663,742 | |
| | | | Filing Date: | October 25, 2019 | |
| | | | First Named Inventor: | Jeffrey Konicek | |
| | | | Art Unit: | 2852 | |
| | | | Examiner Name: | Rodney E. Fuller | |
| | | | Attorney Docket Number: | Torpere-F04-514 | |

| | | | | | |
|---|---|---|---|---|---|
| | A351 | 5715834 | | Feb-1998 | Bergamasco et al. | |
| | A352 | 5724619 | | Mar-1998 | Hamada et al. | |
| | A353 | 5729659 | | Mar-1998 | Potter | |
| | A354 | 5734425 | | Mar-1998 | Takizawa et al. | |
| | A355 | 5740484 | | Apr-1998 | Miyazaki et al. | |
| | A356 | 5742233 | | Apr-1998 | Hoffman, et al | |
| | A357 | 5745717 | | Apr-1998 | Vayda et al. | |
| | A358 | 5749324 | | May-1998 | Moore | |
| | A359 | 5751260 | | May-1998 | Miller et al. | |
| | A360 | 5752094 | | May-1998 | Tsutsumi, et al | |
| | A361 | 5757428 | | May-1998 | Takei | |
| | A362 | 5760917 | | Jun-1998 | Sheridan | |
| | A363 | 5771414 | | Jun-1998 | Bowen | |
| | A364 | 5771511 | | Jun-1998 | Kummer, et al | |
| | A365 | 5774754 | | Jun-1998 | Ootsuka | |
| | A366 | 5774851 | | Jun-1998 | Miyashiba et al. | |
| | A367 | 5779483 | | Jul-1998 | Cho | |
| | A368 | 5788688 | | Aug-1998 | Bauer, et al | |
| | A369 | 5797122 | | Aug-1998 | Spies | |
| | A370 | 5805251 | | Sep-1998 | Ozawa | |
| | A371 | 5809591 | | Sep-1998 | Capaldi, et al | |
| | A372 | 5812978 | | Sep-1998 | Nolan | |
| | A373 | 5815750 | | Sep-1998 | Ishiguro | |
| | A374 | 5819183 | | Oct-1998 | Voroba et al. | |
| | A375 | 5828376 | | Oct-1998 | Solimene et al. | |
| | A376 | 5829782 | | Nov-1998 | Breed et al. | |
| | A377 | 5832077 | | Nov-1998 | Ciurpita | |
| | A378 | 5832440 | | Nov-1998 | Woodbridge et al. | |
| | A379 | 5841950 | | Nov-1998 | Wang, et al | |
| | A380 | 5848146 | | Dec-1998 | Slattery | |
| | A381 | 5850058 | | Dec-1998 | Aoshima et al. | |
| | A382 | 5850211 | | Dec-1998 | Tognazzini | |
| | A383 | 5850218 | | Dec-1998 | LaJoie et al. | |
| | A384 | 5855000 | | Dec-1998 | Waibel et al. | |
| | A385 | 5867817 | | Feb-1999 | Catalo et al. | |
| | A386 | 5870709 | | Feb-1999 | Bernstein | |
| | A387 | 5871589 | | Feb-1999 | Hedge | |
| | A388 | 5874947 | | Feb-1999 | Lin | |
| | A389 | 5875108 | | Feb-1999 | Hoffberg et al. | |
| | A390 | 5877772 | | Mar-1999 | Nomura et al. | |
| | A391 | 5877803 | | Mar-1999 | Wee et al. | |
| | A392 | 5877809 | | Mar-1999 | Omata et al. | |
| | A393 | 5878922 | | Mar-1999 | Boring | |
| | A394 | 5884265 | | Mar-1999 | Squitteri et al. | |

Change(s) applied
to document
/J.E.B./
9/16/2021

7

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /R.E.F/

CEV-0001849

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/663,742 | 10/25/2019 | Jeffrey C. Konicek | Torpere-F04-514 | 3076 |

| 107554          7590          09/03/2021 | |
|---|---|
| JUSTIN LESKO | |
| LAW OFFICES OF LISA & LESKO, LLC | |
| C/O INTELLEVATE, LLC. | |
| 900 Second Ave S. Suite 600 | |
| MINNEAPOLIS, MN 55402 | |

| EXAMINER |
|---|
| FULLER, RODNEY EVAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2852 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/03/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

justinlesko@patentit.com

PTOL-90A (Rev. 04/07)

CEV-0001850

| *Corrected*<br>*Notice of Allowability* | Application No.<br>16/663,742 | Applicant(s)<br>Konicek, Jeffrey C. | |
|---|---|---|---|
| | Examiner<br>RODNEY FULLER | Art Unit<br>2852 | AIA (FITF) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>an interview with applicant on 08/30/2021</u>.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>21-28</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐All   b) ☐ Some*   c) ☐ None of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

       * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
   Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☑ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08),
   Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit
   of Biological Material _____ .
4. ☑ Interview Summary (PTO-413),
   Paper No./Mail Date. <u>20210831</u>.

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☑ Other <u>Applicant's Comments on IDS</u>.

/RODNEY E FULLER/
Primary Examiner, Art Unit 2852

CEV-0001851

| *Applicant-Initiated Interview Summary* | Application No. 16/663,742 | | Applicant(s) Konicek, Jeffrey C. | |
|---|---|---|---|---|
| | Examiner RODNEY FULLER | Art Unit 2852 | AIA (First Inventor to File) Status No | Page 1 of 1 |

| All Participants (applicant, applicants representative, PTO personnel) | Title | Type |
|---|---|---|
| RODNEY FULLER | Primary Examiner | Telephonic |
| Justin Lesko | Attorney | |

**Date of Interview:** <u>30 August 2021</u>

**Issues Discussed:**

**Other**

The applicant called regarding references not cited and marked through in the IDS dated 08/20/2021. The applicant clarified that (1) one reference was missed by the examiner, (2) several foreign references were provided with the PCT publications, and (3) one reference was inadvertently not submitted by the applicant. The associated references have been reviewed by the examiner and cited in the attached PTO-892. Reference JPH11511301 was provided by the applicant. U.S. Patent No. 5,721,783 is the US equivalent to JPH11511301 and has also been cited on the PTO-892.

☑ Attachment

| /RODNEY E FULLER/ Primary Examiner, Art Unit 2852 | |
|---|---|

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

CEV-0001852

| | *Notice of References Cited* | Application/Control No. 16/663,742 | | Applicant(s)/Patent Under Reexamination Konicek, Jeffrey C. | |
|---|---|---|---|---|---|
| | | Examiner RODNEY FULLER | | Art Unit 2852 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-5721783-A | 02-1998 | Anderson; James C. | H04B1/385 | 381/328 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| * | N | EP2650759 | 10-2013 | EP | Blomqvist, et al. | |
| * | O | EP1284080 | 11-2006 | EP | Heurtaux | |
| * | P | EP1604350 | 12-2005 | EP | Roth, et al. | |
| * | Q | EP1704710 | 09-2006 | EP | Walker, et al. | |
| | R | JPH11511301 | 09-1999 | JP | Anderson | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20210831

CEV-0001853

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | | |
|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | |
| Serial. No. | : | 16/663,742 | Confirmation No. | : 3076 |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. | : 2852 |
| Filed | : | October 25, 2019 | Examiner | : Rodney E. Fuller |

| | | |
|---|---|---|
| Docket No. | : | Torpere-F04-514 |
| Customer No. | : | 107554 |

**INFORMATION DISCLOSURE STATEMENT & REMARKS**

Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dear Examiner:

Pursuant to 37 C.F.R. §§ 1.97 and 1.98, Applicant provides the information below and listed on the attached Substitute Form SB-08. This IDS is filed before a first office action on the merits. Accordingly, no fee is required. As stated in.§ 1.97, the filing of this IDS is not and shall not be construed as an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b). Applicant further notes that the citation of the references is not an admission that the references constitute "prior art." *See* 37 C.F.R. § 1.97(h) and MPEP § 2129. Applicant expressly reserves the right to antedate the cited references, as appropriate.

The references numbered 1-10 below were raised in recent negotiations by prospective licensees of this application and related patents within the same family (this application and the related patents are referred to collectively as the "CEV Patents"). If the prospective licensee cited a specific portion of the reference, that portion of the reference is also identified below. The footnotes identify the claims of the CEV Patents that were alleged by the prospective licensee to have elements disclosed in the cited reference.

1. WO 2002-102072 to Kusaka;[1]
2. U.S. Patent 8,224,776 to Anderson et al. ("Anderson 2");[2]

---

[1] Alleged to disclose elements of CEV Patent 10,063,761 – Claim 1.

[2] Alleged to disclose elements of CEV Patents: 7,687,827 – Claims 1, 2; 8,831,418 – Claim 25; 8,923,692

1

CEV-0011169

3.  U.S. Pub. No. 2006/0031126 to Ma et al. ("Ma");[3]

4.  U.S. Pub. No. 2002/0103813 to Frigon ("Frigon");[4]

5.  U.S. Patent 5,844,599 Hildin ("Hildin");[5]

6.  U.S. Patent 6,005,610 to Pingali ("Pingali");[6]

7.  U.S. Patent 5,959,667 to Maeng ("Maeng");[7]

8.  JP H07-84302 to Kawamura ("Kawamura 1") (FIG.3, oscillatory wave detecting sensor 19, microphone 20, earpiece 21, audio circuit 25, paragraphs [0027] and [0030]);[8]

9.  JP H07-84311 to Kawamura ("Kawamura 2") (FIG.3, sound input microphones 20, 21, audio circuits 39, 40, paragraph [0023]);[9]

10. JP H04-316035 to Yoshimura et al.[10]

**1.  Item 1**

Item 1 is a PCT Publication written in Japanese, and it is a parent application of English language U.S. Pub. No. 2004/0145660 to Kusaka et al. ("Kusaka 1") (Cite No. B069 in Applicant's October 25, 2019 IDS).  Applicant refers the Examiner to the October 25, 2019 IDS remarks in this Application that address in detail Applicant's claimed distinctions over Kusaka 1, which Applicant believes are equally applicable to Item 1.

**2.  Items 2-4**

As to Item 2 (Anderson 2), Applicant already cited herein and distinguished a related reference (WO 2002/008860 to Anderson, Cite No. B040 in Applicant's October 25, 2019 IDS).

---

– Claims 11, 16; 8,897,634 – Claim 1.

[3] Alleged to disclose elements of CEV Patents: 7,687,827 – Claim 1; 8,831,418 – Claims 21, 29; 8,923,692 – Claim 1.

[4] Alleged to disclose elements of CEV Patents: 7,687,827 – Claim 1; 8,831,418 – Claims 21, 29; 8,923,692 – Claim 1.

[5] Alleged to disclose elements of CEV Patent 7,687,827.

[6] Alleged to disclose elements of CEV Patent 7,687,827.

[7] Alleged to disclose elements of CEV Patent 7,687,827.

[8] Alleged to disclose elements of CEV Patent 7,687,827 – Claim 1.

[9] Alleged to disclose elements of CEV Patent 7,687,827 – Claim 1.

[10] Alleged to disclose elements of CEV Patent 7,687,827.

CEV-0011170

The disclosures of the two references are very similar, but nevertheless, Applicant addresses Anderson 2, along with Ma and Frigon, below.

The pending claims are in condition for allowance over Anderson 2, Ma, and Frigon. Pending claim 21 element (f)(i) recites:

> "a controller… configured to… receive, via the touch sensitive display, a user selection of ***an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees***."

(emphasis added). And claim 21 (f)(ii) recites:

> "a controller… configured to… ***automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service***, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during ***any period detected by the controller in which all three of the following conditions are met***:
>
> (1) ***the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees***, as determined using data from the cellular interface,
>
> (2) the system is connected to the internet via the cellular interface; and
>
> (3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service."

(emphasis added). Elements (f)(i) and (f)(ii) of independent claim 25 include similar limitations.

Like the other references of record in this Application, Items 2-4 all fail to disclose or obviate "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees." Furthermore, none of these references describes, as a condition for upload, the controller determining "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met.

Anderson 2 (Item 2) does not address periods of potentially increased cellular network access fees or how uploads should be handled during such periods. With respect to fees, Anderson 2 at 5:56-67 says that a photo sharing service can share revenue with a wireless service provider, but nothing about varied network access fees or avoiding uploads during expensive fee periods. Moreover, Anderson 2 requires the user to manually initiate an upload with a "send"

3

CEV-0011171

button or otherwise establish the internet connection manually, so the device in Anderson 2 does not automatically connect and upload, as recited by Applicant's claims. Anderson at 9:55-62, Figure 4A.

Ma (Item 3) teaches to avoid altogether the cellular network because of fees and other purported complications associated with cellular uploading. *See e.g.*, Ma at [0056] (stating "[t]he invention obviates the use of a cellular phone system to upload photos….Cellular telephone services, used by mobile phones, also require complex telecommunication protocols including dialing up the system, transmitting cellular phone signals and other processes that take time, resources, cost money in air time and fees, and are generally cumbersome for a user who simply wants to upload photograph information…."). Thus, the device in Ma uses an internet-connected Kiosk to upload instead of the cellular network. *See e.g.*, Ma at [0024]. Accordingly, because Ma avoids cellular uploads, Ma does not disclose or obviate (1) "a controller [of the camera]… configured to… ***automatically*** connect …***via the cellular interface***," (2) "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees," or (3) determining "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees;" as recited in Applicant's claim 21.

In addition, Ma's uploads are not initiated ***automatically*** by the camera's controller in response to detecting an internet signal. The Ma user physically takes his camera to a specific physical location of a terminal, ***manually*** logs in to that terminal, and that terminal (not the camera) is programmed to transmit photos to certain "predetermined locations." *See e.g.*, Ma at [0081] (stating "[a]n interface terminal may be located in a central location where a user may have access, and the user can go to the location of the interface terminal to upload the desired data….Such an interface terminal may include a keyboard and a screen, possibly a touchscreen without a keyboard, ***which allows a user to input the user information into the system***, upload the data, and allow the unique system to automatically transmit the data to predetermined locations, such as emailing photos to predetermined email addresses.").

Frigon (Item 4) is completely silent on cellular network access fees and potentially increased cellular network access fees. Accordingly, Frigon also not disclose or obviate (1) "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees," or (2) as a condition for upload, the

4

CEV-0011172

device determining "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees" as recited in Applicant's claim 21.

Additionally, Frigon does not say that the client computer includes a camera for capturing pictures that are shared. Further, the controller of Frigon's client computer does not automatically connect and upload based on conditions (such as an internet connection condition). The client computer connects in response to manual *user* clicks. Frigon states at [0068]:

> When the user has completed identifying people in the photo 34 and, if desired, their coordinates, the browser on the user computer 100 sends the user identifier, the image identifier, and any coordinates, all of which are embedded in the form, back to the host computer 200. This can be done automatically *after the user clicks a certain number of times* or *manually after the user clicks the Submit button 38*.

For at least the above reasons, the currently pending claims clearly distinguish Anderson 2, Frigon, and Ma (Items 2-4 from the list above).

**3. Items 5-10**

The prospective licensees cited Items 5-10 for elements of CEV Patent 7,687,827 describing a camera having "at least two microphones" and "a voice-recognition unit" that "is configured to apply a voice-recognition algorithm based on the energy detected at each of two microphones." The present claims do not recite two microphones or voice recognition. Moreover, the prospective licensees that provided Items 5-10 did not assert that these references disclose or render obvious any "automatic upload" features of the claims. Applicant has reviewed the U.S. patents and the machine translations of the Japanese references to confirm the same – it does not appear that Items 5-10 contain any disclosure related to automatic picture upload. Accordingly, Applicant does not believe Items 5-10 are relevant to the important features of the pending claims but advises the Examiner to independently review the references.

The Japanese publications (Items 8-10) are written in Japanese, and the prospective licensee did not provide English translations. The English translations available to Applicant are "machine translations" generated by the Japanese Patent Office. The "machine translations" are not certified translations completed by a qualified translator, but rather, should be treated as rough translations created by a computer translation system. The machine translations also do not include any translation of the figures and, because they are computer generated, they include text and grammar that is nonsensical in places.

5

Therefore, the Examiner is advised that Applicant's explanation is based on the machine translations, and those translations may be incomplete and possibly inaccurate in places.[11] Applicant cites on the attached Form SB-08 and provides the English machine translations of Items 8-10 as NPL.

### 4. Conclusion

In view of the above, Applicant believes that all of the pending claims are in condition for allowance over the art. If the Examiner has any questions, please contact the undersigned at your convenience.

Respectfully Submitted,

/Justin J. Lesko /

**Dated:** March 11, 2020

Justin J. Lesko
Reg. No. 69,643
The Law Offices of Lisa & Lesko, LLC
55 E. Monroe St. Ste. 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

---

[11] Should Applicant receive certified translations, Applicant will file additional remarks or modify the positions taken in these remarks in view of the full translation as necessary.

CEV-0011174

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | | |
|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | |
| Serial. No. | : | TBD | Confirmation No. : | TBD |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. : | TBD |
| Filed | : | October 24, 2019 | Examiner : | TBD |

Docket No.   :   Torpere-F04-514
Customer No.   :   107554

---

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

**PRELIMINARY AMENDMENT**

Dear Sir:

    **Amendments to the Specification** begin on page 2 below.

    **Amendments to the Drawings** begin on page 3 below.

    **Amendments to the Claims** begin on page 4 below.

    **Applicant's Remarks** begin on page 7 below.

CEV-0015411

## AMENDMENTS TO THE SPECIFICATION

Applicant herewith submits a substitute specification including 1) a new TITLE of the invention, 2) a cross-reference to related applications, and 3) a brief description of the several views of the drawings as required by 37 CFR 1.74 and 1.77(b)(7). The substitute specification is submitted with markings and accompanied by a clean version without markings in compliance with 37 CFR 1.52, 1.121(b)(3) and 1.125. In accordance with 37 CFR 1.125(b), Applicant believes that the substitute specification contains no new matter.

2

## AMENDMENTS TO THE DRAWINGS

Please replace Figures 1, 2, 3, 4, and 5a-c with replacement Figures 1A, 1B, 2, 3, 4, 5A, 5B, and 5C. The replacement figures are included on sheets 1/8 through 8/8 submitted herewith and identified as "Replacement Sheets." Applicant believes that the replacement sheets contain no new matter.

3

CEV-0015413

**AMENDMENTS TO THE CLAIMS**

This listing of claims will replace all prior versions, and listings, of claims in the application.

1 – 20. (Canceled).

21. (New) A camera system comprising:

(a) a lens;

(b) a cellular interface;

(c) an image sensor that is coupled to the lens and operable to capture pictures;

(d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;

(e) a touch sensitive display;

(f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:

(i) receive, via the touch sensitive display, a user selection of an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;

(ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all three of the following conditions are met:

(1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,

(2) the system is connected to the internet via the cellular interface; and

(3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service.

22. (New) The camera system of claim 21, wherein the picture hosting service includes printing services.

4

23.  (New) The camera system of claim 21, wherein the controller is configured to automatically connect to the picture hosting service and enable the upload immediately at any time the three conditions are met.

24. (New) The camera system of claim 21, wherein the controller is configured to automatically independently connect to the picture hosting service and enable the upload.

25. (New) A camera system comprising:

(a) a lens;

(b) a cellular interface;

(c) an image sensor that is coupled to the lens and operable to capture pictures;

(d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;

(e) a touch sensitive display;

(f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:

(i) display on the touch sensitive display a user-selectable input that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;

(ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all the following conditions are met:

(1)  the controller has received from the display a selection of the user-selectable input that instructs the camera system to confine automatic picture uploads to periods without potentially increased cellular network access fees;

(2) the controller has confirmed that the camera system is within a period without potentially increased cellular network access fees, as determined using data from the cellular interface;

(3) the system has a connection to the internet via the cellular interface; and

5

CEV-0015415

(4) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of image sensor-captured pictures to be uploaded to the picture hosting service.

26. (New) The camera system of claim 25, wherein the picture hosting service includes printing services.

27. (New) The camera system of claim 25, wherein the controller is configured to automatically connect to the picture hosting service and enable the upload at any time the conditions are met.

28. (New) The camera system of claim 25, wherein the controller is configured to automatically independently connect to the picture hosting service and enable the upload.

.

6

CEV-0015416

**REMARKS**

In this preliminary amendment, Applicant has amended the title of the invention and the specification to cross-reference related applications. Applicant has also amended the drawings to show the features of the invention specified in the claims. In the claims, Applicant cancels claims 1 – 20 and adds new claims 21 – 28 (2 independent claims and 6 dependent claims).

Independent claims 21 and 25 are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of related U.S. Patent Nos. 9,936,116 and 10,063,761 in this family. For example, claim 21 element (f)(i) recites:

"a controller… configured to… receive, via the touch sensitive display, a user selection of *an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees*."

(emphasis added). And claim 21 (f)(ii) recites:

"a controller… configured to… *automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service*, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during *any period detected by the controller in which all three of the following conditions are met*:

(1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,

(2) the system is connected to the internet via the cellular interface; and

(3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service."

(emphasis added). Elements (f)(i) and (f)(ii) of independent claim 25 include similar limitations.

The claimed invention allows uploads to be turned off during periods with potentially increased cellular network access fees, yet the camera will *automatically* (1) connect and (2) enable upload to the picture hosting service of the group of pictures designated for upload in any period (*i.e.*, without regard to a specified time) *without* such fees. The system avoids potentially increased cellular network access fees, such as fees associated with data roaming, but without the need for the user to set a timer or decide in advance a specific time for upload. When the conditions are met, the camera takes advantage of the opportunity to upload to the picture hosting service on the internet by immediately backing up valuable pictures. Applicant's disclosure at Paragraph 38 describes advantages of such a system while traveling:

7

In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed *to automatically initiate a connection to the internet*, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc). Once the transmittal of the pictures is complete, the inventive camera system preferably terminates the connection. Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., *so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc*....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (*when he is on vacation*, for instance), etc. *In this way, valuable pictures are immediately backed-up* and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

As explained in the information disclosure statement provided herewith, none of the references of record discloses or suggests "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees." Furthermore, none of the references describes, as a condition for upload, that the controller determines "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met. Thus, all of the pending claims are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family.

The remaining dependent claims are allowable as depending from the allowable independent claim and for their own additional limitations.

Applicant believes that no new matter has been added. In addition, Applicant has taken care to prepare the claims in a manner that does not fall within 35 U.S.C. Section 112, Para. 6. Specifically, Applicant has undertaken to draft the claims in a manner that recites structure, material, or acts in support of the various operations. Applicant requests that the Examiner inform Applicant if he believes that any claim falls within 35 U.S.C. Section 112, Para. 6, so that appropriate amendments can be made.

CEV-0015418

Applicant has also taken care to prepare the claims in compliance with 35 U.S.C. § 101 requiring claims to be directed to specific patentable subject matter. Applicant requests that the Examiner inform Applicant if he believes any claim is directed to any unpatentable subject matter so that appropriate amendments can be made.

Applicant also expressly reserves the right to swear behind and antedate art references (including those references identified in the various Information Disclosure Statements filed herein) pursuant to 37 C.F.R. § 1.131.

In view of the above, Applicant believes that claims 21-28 are in condition for allowance. If the Examiner has any questions or believes an interview would expedite prosecution of this case, please contact the undersigned.

Respectfully Submitted,

/Justin J. Lesko/

Justin J. Lesko
Reg. No. 69,643

Dated: October 25, 2019

Law Offices of Steven G. Lisa, Ltd.
55 East Monroe Street Suite 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

9

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | |
| Serial. No. | : | 16/663,742 | Confirmation No. : | 3076 |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. : | TBD |
| Filed | : | October 25, 2019 | Examiner : | TBD |

| | | |
|---|---|---|
| Docket No. | : | Torpere-F04-514 |
| Customer No. | : | 107554 |

## INFORMATION DISCLOSURE STATEMENT & REMARKS

Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dear Sir:

Pursuant to 37 C.F.R. § 1.97 and § 1.98, to the assist the Examiner in carrying out his duty under MPEP § 707.05 to review the parent and related cases for potentially relevant art, Applicant has provided the information set forth below, which includes the last known Examiner and art unit for all known potentially-relevant and related cases so that the current Examiner may contact prior Examiners if desired. In addition, Applicant has compiled the following:

1. **Table 1**, below, which details potentially-relevant and directly or indirectly related applications (along with all patents issued therefrom).

2. **Table 2**, below, which details references affirmatively cited by Examiners in support of a rejection in each application identified in Table 1.

3. **A Comprehensive Information Disclosure Statement**, Substitute Form SB/08 attached, which lists all references identified in the portfolio set forth in Table 1.

As stated in 37 C.F.R.§ 1.97, the filing of this IDS is not and shall not be construed as an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b). Applicant further notes the references cited in this IDS may not qualify as prior art, and Applicant expressly reserves the right to antedate the cited references, as appropriate.

1

CEV-0011561

**TABLE 1**
**RELATED APPLICATIONS (AND PATENTS ISSUED THEREFROM)**

For the Examiner's convenience, and to assist him in complying with requirements of MPEP § 707.05 ("In all continuation and continuation in part applications, the parent applications should be reviewed for pertinent prior art"), Table 1 identifies all applications (and patents issued therefrom) filed by Applicant that may be considered directly or indirectly related to the current application, along with the Examiner's name and his/her art unit (at the time he/she handled the application):

| Table 1 | | | | |
|---|---|---|---|---|
| **Application Filing Date** | **Serial Number** | **Type** | **Status/ Patent Number** | **Examiner and Art Unit** |
| 10/17/2005 | 11/163,391 | Non-Provisional Utility | 7,697,827 (04/13/2010) | Rodney Fuller, 2862 |
| 02/22/2010 | 12/710,066 | Non-Provisional Utility | 7,933,508 (04/26/2011) | Rodney Fuller, 2862 |
| 04/15/2011 | 13/087,650 | Non-Provisional Utility | 8,467,672 (06/18/2013) | Rodney Fuller, 2862 |
| 12/17/2012 | 13/717,681 | Non-Provisional Utility | 8,831,418 (09/09/2014) | Rodney Fuller, 2852 |
| 03/06/2014 | 14/199,855 | Non-Provisional Utility | 8,824,879 (09/02/2014) | Rodney Fuller, 2852 |
| 03/10/2014 | 14/203,129 | Non-Provisional Utility | 8,818,182 (08/26/2014) | Rodney Fuller, 2852 |
| 06/26/2014 | 14/315,544 | Non-Provisional Utility | 8,897,634 (11/25/2014) | Rodney Fuller, 2852 |
| 08/06/2014 | 14/453,511 | Non-Provisional Utility | 8,923,692 (12/30/2014) | Rodney Fuller, 2852 |
| 09/25/2014 | 14/495,976 | Non-Provisional Utility | 8,917,982 (12/23/2014) | Rodney Fuller, 2852 |
| 11/12/2014 | 14/539,687 | Non-Provisional Utility | 9,485,403 (11/01/2016) | Rodney Fuller, 2852 |
| 02/05/2015 | 14/614,515 | Non-Provisional Utility | Pending | Rodney Fuller, 2852 |
| 11/24/2015 | 14/950,338 | Non-Provisional Utility | 10,257,401 (04/09/2019) | Rodney Fuller, 2852 |
| 11/24/2015 | 14/950,370 | Non-Provisional Utility | 10,063,761 (08/28/2018) | Rodney Fuller, 2852 |
| 06/21/2016 | 15/188,736 | Non-Provisional Utility | 9,936,116 (04/03/2018) | Rodney Fuller, 2852 |

2

CEV-0011562

**TABLE 2**
**REFERENCES RELIED UPON BY PRIOR EXAMINERS**
**IN RELATED APPLICATIONS**

Applicant has reviewed the file histories listed in Table 1 in order to identify and compile a listing of any reference that was affirmatively cited and relied upon by an Examiner in making a rejection. Those references are listed in Table 2 below. *Applicant cautions the Examiner that Applicant does not have official certified copies of the file histories for all of the applications listed in Table 1 and is relying on the documents available on PAIR. Accordingly, it is possible that Applicant may not have copies of all substantive office actions, and the Examiner is encouraged to review the related applications for completeness.*

| Table 2 | | | |
|---|---|---|---|
| **Reference** | **Date of Reference** | **Application(s) Containing Rejection(s)** | **Examiner(s) Issuing Rejection(s)** |
| U.S. 2005/0128311 – Rees et al. | Jun-05 | 11/163,391, 14/950,338, 15/188,736 | Rodney E.Fuller |
| U.S. 2006/0239672 – Yost et al. | Oct-06 | 11/163,391 | Rodney E. Fuller |
| U.S. 5,970,258 – Suda et al. | Oct-99 | 12/710,066 | Rodney E.Fuller |
| U.S. 5,245,381 – Takagi et al. | Sep-93 | 13/087,650 | Rodney E.Fuller |
| U.S. Pub. 2004/0196399 – Stavely | Oct-04 | 13/087,650 | Rodney E.Fuller |
| U.S. 6,795,558 – Matsuo | Sep-04 | 13/087,650 | Rodney E.Fuller |
| U.S. Pub. 2005/0001024 – Kusaka et al. | Jan-05 | 13/717,681 14/203,129 | Rodney E.Fuller |
| U.S. Pub. 2004/0192421 – Kawahara | Sep-04 | 13/717,681 | Rodney E.Fuller |
| U.S. Pub. 2003/0090572 – Belz et al. | May-03 | 13/717,681 | Rodney E.Fuller |
| U.S. Pub. 2005/0195309 – Kim et al. | Sep-05 | 14/199,855 14/203,129 | Rodney E.Fuller |
| U.S. 5,027,149 – Hoshino et al. | Jun-91 | 14/199,855 14/203,129 | Rodney E.Fuller |
| U.S. Pub. 2007/0081090 – Singh | Apr-07 | 14/203,129 | Rodney E.Fuller |
| U.S. Pub. 2006/0099995 – Kim et al. | May-11 | 14/203,129 | Rodney E.Fuller |
| U.S. 5,570,151 – Terunuma et al. | Oct-96 | 14/539,687 | Rodney E.Fuller |
| U.S. Pub. 2002/0008765 – Ejima et al. | Jan-02 | 14/539,687 | Rodney E.Fuller |
| U.S. 4,081,623 – Vogeley | Mar-1978 | 14/539,687 | Rodney E.Fuller |
| U.S. Pub. 2005/0168579 - Imamura | | 14/950,338, 15/188,736, 14/950,370 | Rodney E.Fuller |
| U.S. Pub. 2008/0096587 - Rubinstein | | 14/950,338, 15/188,736 | Rodney E.Fuller |
| U.S. 5,923,908 – Schrock et al. | | 14/950,338, | Rodney E.Fuller |

3

CEV-0011563

| | | 15/188,736, 14/614,515 | |
|---|---|---|---|
| U.S. Pub. 2006/0041632 – Shah et al. | | 14/950,338, 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0189349 – Montulli et al. | | 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0097993 – Hietala et al. | | 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0061663 – Park | | 14/614,515 | Rodney E.Fuller |
| U.S. Pub. 2006/0223503 – Muhonen et al. | | 14/614,515 | Rodney E.Fuller |
| U.S. 5,548,335 – Mitsuhashi et al. | | 14/614,515 | Rodney E.Fuller |
| U.S. Pub. 2006/0189348 – Montulli et al. | | 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0114338 – Rothschild | | 15/188,736, 14/950,370 | Rodney E.Fuller |
| U.S. Pub. 2002/0005907 – Alten | | 14/614,515 | Rodney E.Fuller |
| U.S. Pub. 2003/0101052 – Chen et al. | | 14/950,338 | Rodney E.Fuller |
| U.S. 6,256,060 – Wakui | | 14/614,515 | Rodney E.Fuller |

## COMPREHENSIVE INFORMATION DISCLOSURE STATEMENT

The attached Substitute Form SB/08 is a comprehensive list of the references of record in the portfolio of patents and applications shown in Table 1, and also includes the prior office actions in related cases, Applicant's responses to those office actions, and the file histories of related cases. Applicant herewith files copies of the cited non-patent literature and the foreign references. Cite No. D004 is not included because Applicant does not have a copy of the reference.

Applicant further discusses the potential relevance of several references in the remarks below, including references cited by the Examiner during prosecution of related cases and references provided by prospective licensees.

### A. References Relied Upon by Examiners or Cited by Prospective Licensees

The following references were cited or relied upon by the Examiner in related cases for features relating to "automatic upload" of pictures to a remote pictures hosting site:

- U.S. Pub. 2006/0114338 – Rothschild (Cite No. B051);
- U.S. Pub. 2006/0189348 to Montulli et al. ("Montulli 1") (Cite No. B050);
- U.S. Pub. 2006/0189349 to Montulli et al. ("Montulli 2") (Cite No. B039);[1]

---

[1] Also alleged by a prospective licensee to disclose elements of related Patent: 10,063,761.

CEV-0011564

- U.S. Pub. 2003/0030731 to Colby (Cite No. B044);
- U.S. Pub. No. 2005/0001024 to Kusaka et al. ("Kusaka 2") (Cite No. B012);

Applicant received the following references from prospective licensees during prosecution of related cases, and Applicant also addressed these references in IDS filings in related cases:

- U.S. Provisional Application No. 60/718,155 to Feinberg et al. ("Feinberg") (Cite No. D052);
- Network Smart Capture Ver.1.2 (date unknown) (Cite No. D054);[2]
- Partial English Translation of Network Smart Capture Ver.1.2 (date unknown) ("Network Smart Capture") (Cite No. D055);

Applicant also recently received the following references from prospective licensees:

- U.S. Pub. No. 2004/0145660 to Kusaka et al. ("Kusaka 1") (Cite No. B069);[3]
- U.S. Pub. No. 2001/0010543 to Ward (Cite No. B067);
- U.S. Pub. No. 2004/0201738 to Moores (Cite No. B068);
- U.S. Pub. No. 2002/0051074 to Kawaoka (Cite No. B072);
- U.S. Pub. No. 2004/0070670 to Foster (Cite No. B074);
- PCT Pub. No. WO 2002/008860 to Anderson (Cite No. C040);
- U.S. Patent No. 5,737,491 to Allen et al. (Cite No. A083);[4]
- U.S. Pub. No. 2001/0030773 to Matsuura et al. (Cite No. B076);[5]
- U.S. Pub. No. 2004/0005915 to Hunter (Cite No. B077);[6]
- U.S. Pub. No. 2005/0001902 to Brogan et al. (Cite No. B078);[7]
- U.S. Pub. No. 2004/0061783 to Choi (Cite No. B079);[8]
- PCT Pub. No. WO 2004/052035 to Jung et al. (Cite No. C041);[9]

---

[2] Alleged to disclose elements of related Patent: 8,831,418 – Claim 21.

[3] Kusaka 1 was alleged to disclose elements of related Patents: 8,831,418 – Claim 21; 8,923,692 – Claim 1; 8,897,634 – Claim 1; and 10,063,761 – Claim 1. The prospective licensee also asserted that Rothschild combined with any of Kusaka 1, Ward, or Moores discloses features of the following related Patents: 8,831,418 – Claims 21, 23, 24; 8,923,692 – Claims 1, 3, 4; 8,897,634 – Claim 1.

[4] Alleged to disclose elements of related Patents: 8,923,692 and 10,257,401.

[5] Alleged to disclose elements of related Patents: 8,923,692, 10,063,761, and 10,257,401.

[6] Alleged to disclose elements of related Patents: 8,923,692 and 10,257,401.

[7] Alleged to disclose elements of related Patent: 10,063,761.

[8] Alleged to disclose elements of related Patent: 10,063,761.

CEV-0011565

- U.S. Patent No. 6,167,469 to Safai et al. (Cite No. A084).[10]

All of the pending claims of this application include important features that distinguish the above references. It is important to keep in mind that applicant's claimed inventions relate to cameras that are specially adapted for travel so that picture uploads on the go can occur automatically and at any time conditions are met, while avoiding potentially increased cellular network access fees associated with travel, such as data roaming fees.

Independent claims 21 and 25 (and their dependencies) are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family. For example, claim 21 element (f)(i) recites:

> "a controller… configured to… receive, via the touch sensitive display, a user selection of *an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees*."

(emphasis added). And claim 21 (f)(ii) recites:

> "a controller… configured to… *automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service*, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during *any period detected by the controller in which all three of the following conditions are met*:
>
> (1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,
>
> (2) the system is connected to the internet via the cellular interface; and
>
> (3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service."

(emphasis added). Elements (f)(i) and (f)(ii) of independent claim 25 include similar limitations.

The claimed invention allows uploads to be turned off during periods with potentially increased cellular network access fees, yet the camera will *automatically* (1) connect and (2) enable upload to the picture hosting service of the group of pictures designated for upload in any period (*i.e.*, without regard to a specified time) *without* such fees. The system avoids potentially increased cellular network access fees, such as fees associated with data roaming, but without the need for the user to set a timer or decide in advance a specific time for upload. When the

---

[9] Alleged to disclose elements of related Patent: 10,063,761.

[10] Alleged to disclose elements of related Patent: 9,936,116.

CEV-0011566

conditions are met, the camera takes advantage of the opportunity to upload to the picture hosting service on the internet by immediately backing up valuable pictures. Applicant's disclosure at Paragraph 38 describes advantages of such a system while traveling:

> In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed **to automatically initiate a connection to the internet**, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc). Once the transmittal of the pictures is complete, the inventive camera system preferably terminates the connection. Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., **so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc**....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (**when he is on vacation**, for instance), etc. **In this way, valuable pictures are immediately backed-up** and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

None of the references of record discloses or suggests "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees." Furthermore, none of the references describes, as a condition for upload, that the controller determines "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met. Thus, all of the pending claims are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family.

The automatic upload recited in each of the independent claims is also conditioned upon pictures being designated – the controller is configured to enable upload of the designated group of pictures if pictures are designated and the other conditions are met. This feature of the claims further distinguishes systems that only provide for uploading all stored pictures, as well as systems that upload each and every picture immediately in response to the picture being taken.

Applicant further discusses below the deficiencies of the references of record that

CEV-0011567

describe picture uploading.

### 1. Applicant's claims distinguish uploads that take place at a set time

Colby, Kusaka 1, and Kawaoka each purportedly attempt to address the costs associated with network access fees, but Applicant's claims provide significant advantages over the systems described in these references.

Applicant's claims clearly distinguish timer based uploads where the user picks a time for the system to upload pictures, and the system uploads pictures at that set, selected time, as purportedly described in Colby, Kusaka 1, and Kawaoka,. *See, e.g.*, Colby at [0046] (stating "Other embodiments include modes wherein images are transmitted… ***at a specific time of day***"); Kusaka 1 at [0432] and [0478] (describing that "[t]he CPU 50 stores in memory the selected time block, engages a means for time count such as the timer 74 to count the time and automatically executes the transmission of the specified image information to the outside by ***detecting that the current time point has entered a selected time block***"); and Kawaoka at [0100] (stating "[t]he transmission allowance conditions-judging unit 170 ***obtains time from the timer 86 through the time-obtaining section 160***. Then, the transmission allowance conditions-judging unit 170 judges whether or not to transmit images ***based on the obtained time***.").

Applicant refers the Examiner to Applicant's December 11, 2017 interview summary in related Application No. 15/188,736 (now U.S. Patent No. 9,936,116). That summary explains the distinction over Colby, which also applies the Kusaka 1 and Kawaoka references (thus, Applicant believes these references are cumulative). Following the interview, the Examiner issued a notice of allowance. The summary reads in-part:

> The Examiner asked whether the current claims are patentable over Colby (Pub. No. 2003/0030731), which purportedly allows a user to "designate a time of day" for picture uploads. Applicant distinguished the present claims from a "timer." Specifically, Applicant used the hypothetical example of an egg timer vs. a device that determines when an egg is actually finished. In a timer scenario, cook time is set – and the device will stop cooking the egg at a designated time, regardless of whether the egg is "done." ***On the other hand, a device that actually determines whether an egg is "done" monitors the specific conditions of the egg and only stops cooking it when the conditions are right. Applicant's invention is comparable to the latter example and <u>offers many explicit benefits over a simple timer</u>. For example, a simple timer for picture upload (i.e., setting the upload for 8 PM) would still result in charges to a user's account if the user is "roaming" at the designated time that the upload begins. In short, a timer does not adequately prevent roaming or other network charges that can be***

8

CEV-0011568

> ***incurred during photo uploads****…*.

Indeed, there are numerous advantages to Applicant's claimed inventions compared to time-based uploads. With timer-based uploads, if there is no internet connection at the single defined time, upload will fail (current connection status is not even considered). The requirement to upload only at the single defined time, as opposed to uploading over the internet whenever an appropriate connection becomes available, prevents the opportunity to upload images during any intervening periods that arrive where internet is available and the camera contains a group of designated pictures. In contrast, with Applicant's claimed invention, during any of the (yet to be determined) multiple periods without potentially increased fees, the automatic upload of designated pictures will take place. The specific time of day for upload is not predefined. Thus, for example, a traveler that is roaming can continue over several days to take multiple pictures and designate them for upload, and whenever the camera detects that it is within one (or more) of the periods where there are not potentially increased cellular network access fees – regardless of time of day – the camera will automatically upload the pictures at that time.

As an alternative to the timer based uploads, Kawaoka also purportedly describes calculating the upload cost based on the file size or the amount of time the upload is expected to take and previously stored cost per minute estimates. The system determines whether to upload based on that internal calculation. Again, this more conventional method does not use current data from the cellular interface to determine whether or not the device is currently in a period of potentially increased cellular network access fees - the system has a stored cost parameter and makes basic calculations based on it. *See, e.g.*, Kawaoka at [0013], and [0102] stating:

> "[0102] …The transmission allowance conditions-judging unit 170 ***calculates the cost for transmitting data based on the obtained data amount****…*. If transmission cost is calculated based on communication time, the cost becomes equal to the communication cost per unit time times data amount divided by the data communication speed, ***using previously registered data communication speed and communication cost per unit time****.* If the calculated transmission cost falls within a predetermined amount, the image transmission is allowed. However, if the data amount is above the predetermined amount, the data amount of images to be transmitted may be transmitted only after being compressed to a data amount that falls within the predetermined amount. Therefore, communication cost may be saved. Further, information relating to the communication cost maybe updated via the telephone communication line."

9

CEV-0011569

As a further distinction, the uploads in Kawaoka are not to a picture hosting site on the internet and the uploads do not occur over the internet. Thus the camera of Kawaoka does not monitor internet connection status (it only monitors connection status over the phone communication line, generally, or connection status from the camera to an intermediary phone that acts as the uploader). *See e.g.*, [0107], discussing using phone numbers to complete uploads.

For at least the above reasons, Applicant's claims clearly distinguish Colby, Kusaka 1, and Kawaoka.

### 2. The remaining references do not address potentially increased cellular network access fees

Based on Applicant's review, it appears that the majority of the references say ***absolutely nothing*** about "network access fees" or "cellular network access fees," and therefore, these references certainly do not disclose or suggest Applicant's claimed system for confining uploads and automatically connecting and enabling upload during periods without potentially increased cellular network access fees. For at least this reason and others (with examples provided below), Applicant's claims are also allowable over the following references, whether considered individually or as a combination:

- **Rothschild** – Applicant and the Examiner addressed Rothschild on the record extensively during prosecution of Application Nos. 15/188,736 (now US Patent No. 9,936,116) and 14/950,370 (now US Patent No. 10,063,761). The Examiner initially relied upon Rothschild in rejections but later withdrew them. Applicant's current claims distinguish Rothchild for the same reasons as the claims of the '116 and '761 patents (because Rothschild fails to address potentially increased cellular network access fees), and more. For example, with respect to timing, Rothschild only automatically uploads "when" (e.g., ***at the specific time***) the user ***manually connects the camera to his intermediary local computer***, and it is Rothschild's ***intermediary computer*** (not the camera) that completes the upload. Rothschild at [0053] and [0056]. The upload to the internet in Rothschild is ***not*** by the camera at all, nor is it triggered automatically based on internet connection status of the camera.

- **Ward** – In addition to its failure to address network access fees, the Ward upload is ***manually*** initiated by a user pressing a "send" button. *See, e.g.*, Ward at [0016]-[0019].

10

Moreover, Ward says explicitly that **the user must "ensure[] that the camera is connected to the appropriate service"** (*e.g.*, cellular phone service) prior to initiating upload. These operations are what Applicant's claims distinguish and improve upon. In contrast to Ward, with Applicant's claims, the controller automatically uploads designated pictures as claimed during detected periods without potentially increased cellular network access fees in which the connection is available.

- **Moores** – Moores fails to mention any cellular uploads (let alone paccess fees) because "802.11 protocol is used for all wireless communications." Moores at [0034]. In addition, a picture or series of pictures is taken in response to an RFID tag being scanned or other user-triggered event, and the captured pictures are uploaded over a LAN to the server as they are taken (*not* based on upload conditions). *Id.* at [0028]-[0029].

- **Network Smart Capture** – In addition to failing to address cellular network access fees, the upload in "Network Smart Capture" is not automatic based on network conditions. Instead, "Fixed point observation mode" (p. 1) purports to take and upload photographs in response to the motion of a pet. It does not even address the same problems identified by Applicant, **because internet on the home network is assumed** at the time motion is sensed and all photos are uploaded during capturing.

- **Kusaka 2** –Applicant distinguished Kusaka 2 on the record during prosecution of Application Nos. 13/717,681 (now U.S. Patent No. 8,831,418) and 14/203,129 (now U.S. Patent No. 8,818,182). In each case, **the rejections in view of Kusaka 2 were overcome**, and the cases were allowed. In Kusaka 2, at the **time pictures are taken**, they are either stored on a memory card in "recording mode for memory cards" or on a server in "download recording mode." *See, e.g.*, Kusaka 2 at [0470]. Thus, Kusaka fails to address network access fees, and also does not provide the user an option to designate captured photos for upload.

- **Feinberg** – Feinberg says nothing about access fees, and moreover, Feinberg describes uploading using an "Eye-Film" device that is **separate** from the camera and acts as an intermediary with a wireless interface for connecting to the internet. *See, e.g.*, Feinberg at [0027].

- **Anderson** – Anderson at 7:22-23 says that a photo sharing service can share revenue with a wireless service provider, but Anderson does not address periods of potentially

11

increased cellular network access fees or how uploads should be handled during such periods. Moreover, Anderson's uploads are all user-initiated, manual uploads.

- **Foster** – Foster says absolutely nothing about potentially increased network access fees or confining uploads to periods without potentially increased network access fees, because it uploads pictures to a wireless access point, not over a cellular network. Moreover, Foster uploads *all* images from the camera repository to the remote system – with its GUI, a user can see the images or select images to store on a PC or print, but the GUI does not provide a menu option to designate which photos will be cached. *See, e.g.*, Foster at [0022].

- **Montulli 1 and Montulli 2** – Both Montulli 1 and Montulli 2 fail to disclose or suggest automatically enabling upload via a cellular interface of the camera to a picture hosting service on the internet, and therefore, they fail to address periods of potentially increased cellular network access fees that can be associated with cellular data uploads. In fact, the one instance of cellular transfer in these references is not over the internet at all – instead, the phone transfers photos to a home-based server by calling "the server's modem and transmit[ting] data to the server over the POTS network." Montulli 1 at [0024], Montulli 2 at [0021].

- **Allen** – Allen's uploads are manually initiated, for example, by the user speaking a "transmit" voice command – therefore, Allen fails to disclose automatic uploading at all, let alone the specific features of Applicant's claims. *See, e.g.*, Allen at 4:52-54.

- **Choi** – Choi also does not describe any automatic uploads over the internet, and instead purports to discuss manipulating files by voice commands while a camera is transmitting pictures to a computer. *See, e.g.*, Choi at [0043].

- **Brogan** – Brogan purports to describe a transmission by Bluetooth or WIFI (neither involving potentially increased cellular network access fees) that is manually initiated with a "transmit" soft button or physical button.

- **Safai** – Safai purportedly describes a process of uploading that requires multiple manual steps by the user, including manually selecting the photos and recipients, manually connecting the camera to a phone line, manually dialing through a modem to a remote recipient, and manually press a "send" button. *See e.g.*, Fig. 4E and 12:1-21.

- **Jung** – Because Jung does not describe cellular uploads at all, Jung fails to address

12

potentially increased network access fees and also fails to describe a camera automatically enabling uploads over the internet via a cellular interface.

- **Matsuura** – Matsuura requires connecting the camera to a proprietary, intermediary terminal for uploading – automatic uploads to the internet via an interface of the camera are not enabled.

- **Hunter** – In Hunter, a cell phone that is separate from the camera causes pictures to be sent across a telephone communication network in response to incoming or outgoing calls. *See, e.g.*, Hunter at [0041]. Thus, Hunter does not automatically enable upload during certain periods (or based on whether an internet connection is available) – it responds to specific user-triggered events.

### B. Undated Non-Patent literature

A prospective licensee (now a licensee) provided the following undated non-patent literature references:

- Network Smart Capture Ver.1.2 (date unknown) (Cite No. D054);
- Partial English Translation of Network Smart Capture Ver.1.2 (date unknown) ("Network Smart Capture") (Cite No. D055);
- Smart Commander Guide to Voice Recognition (date unknown) ("Smart Commander") (Cite No. D053);
- Smart Capture Smart Commander (date unknown) (Cite No. D056); and
- Partial English Translation of Smart Capture Smart Commander (date unknown) ("Smart Capture") (Cite No. D057);

The prospective licensee asserted that "Smart Commander Guide to Voice Recognition" and "Smart Capture Smart Commander" were publicly available in Japan in 1999, and "Network Smart Capture Ver. 1.2" was publicly available in Japan in 2002. Thus, out of an abundance of caution, Applicant cites and provides these references herewith. However, Applicant does not admit that any of these references were publicly available prior to Applicant's effective filing date, nor admit that any of these references were ever "publicly available" as prior art within the meaning of 35 U.S.C. 102 or pre-AIA 35 U.S.C. 102.

13

CEV-0011573

## C. **Foreign References and English Translations**

The Japanese references listed below were raised in negotiations by prospective licensees. The footnotes identify the claims of the related Patents that were alleged by the prospective licensee to have elements disclosed in the cited reference.

- JP 2000-214525 to Yoji ("Yoji") (Cite No. C021);[11]
- JP 2005-181365 to Imamura et. al (Cite No. C029);[12]
- JP H09-186954 to Yasuyuki, et al. (Cite No. C030);[13]
- JP 2000-221582 to Yoji ("Yoji 2") (Cite No. C031);[14]
- JP 2000-231151 to Yoji ("Yoji 3") (Cite No. C032);[15]
- JP2000-083186 to Hiroshi ("Hiroshi") (Cite No. C033);[16]
- JP 2002-218092 to Nobuaki (Cite No. C035);[17]
- JP 2000-285413 to Kenji et al. (Cite No. C036);[18]
- JP H11- 212726 to Hideyuki et al. (Cite No. C037);[19]
- JP H11-355617 to Manbu (Cite No. C038);[20]
- JP 2005-134819 to Mineko et al. (Cite No. C039);[21]

The Japanese publications listed above are written in Japanese, and the prospective licensees did not provide English translations. The only English translations available to Applicant are "machine translations" generated by the Japanese Patent Office. The "machine translations" are not certified translations completed by a qualified translator, but rather, should

---

[11] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[12] Alleged to disclose elements of related Patents: 7,687,827 – Claims 1, 2; 8,831,418 – Claim 25; 8,923,692 – Claim 11; 8,897,634 – Claim 1.

[13] Alleged to disclose elements of related Patents: 7,687,827 – Claims 1, 2; 8,831,418 – Claim 25; 8,923,692 – Claim 11; 8,897,634 – Claim 1.

[14] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[15] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[16] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[17] Alleged to disclose elements of related Patents: 8,831,418 – Claim 32; 8,897,634 – Claim 3.

[18] Alleged to disclose elements of related Patents: 8,831,418 – Claim 32; 8,897,634 – Claim 3.

[19] Alleged to disclose elements of related Patents: 8,831,418 – Claim 34; 8,923,692 – Claims 2, 7, 8.

[20] Alleged to disclose elements of related Patent: 8,923,692 – Claims 2, 5, 7, 8.

[21] Alleged to disclose elements of related Patent: 8,923,692 – Claim 11.

14

be treated as rough translations created by a computer translation system. The machine translations also do not include any translation of the figures and, because they are computer generated, they include text and grammar that is nonsensical in places.

Therefore, the Examiner is advised that Applicant can only ascertain the potential relevance of these Japanese publications based on the machine translations, which may be incomplete and possibly inaccurate in places.[22] Applicant cites on the attached Form SB-08 and provides herewith complete copies of these references and their English "machine translations" as NPL.

Applicant also received Japanese Patent No. JP2000-227633 to Yoji (Cite No. C022), which is also not in English. However, at this time, Applicant does not have any English translation of JP 2000-227633, and therefore none is provided herewith. Applicant cites on the attached Form SB-08 the portions of this reference that were specifically called to Applicant's attention. Should Applicant receive a translation, Applicant will submit the translation to the Examiner and file additional remarks in view of the translation as necessary.

With respect to *all* of the above-listed Japanese references, the prospective licensees that provided them ***did not assert*** that these references disclose or render obvious any "automatic upload" features of the claims (the references were primarily alleged to disclose voice recognition features). Applicant has reviewed the machine translations and confirmed the same – based on the translations available to Applicant, it does not appear that these references contain any disclosure related to automatic picture upload.

---

[22] Should Applicant receive certified translations, Applicant will file additional remarks or modify the positions taken in these remarks in view of the full translation as necessary.

CEV-0011575

## <u>CONCLUSION</u>

In view of the above, Applicant believes that all of the pending claims are in condition for allowance. If the Examiner has any questions regarding the above submissions, he is encouraged to contact the undersigned at his convenience.

Respectfully Submitted,

/Justin J. Lesko /

Justin J. Lesko
Reg. No. 69,643

**Dated:** October 24, 2019      The Law Offices of Lisa & Lesko, LLC
55 E. Monroe St. Ste. 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

**Attachments:**
- Substitute Form SB/08
- Copies of Foreign References
- Copies of Non-Patent Literature References (excluding D004)

16

CEV-0011576